UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN A PORTER III,

                                    Plaintiff,

                                                                5:22-cv-1067
v.                                                              (TJM/TWD)

SHAIQUIDA B HAYES,

                                    Defendant.
_____

APPEARANCES:

JOHN A PORTER III
Plaintiff, *pro se*
205 Lawrence Ave
Syracuse, NY 13212

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        The Clerk sent this *pro se* Complaint filed by John A. Porter III ("Plaintiff"), together

with an application to proceed *in forma pauperis* ("IFP Application"), to the undersigned for

review.  (*See* Dkt. Nos. 1, 2.)  Having reviewed Plaintiff's IFP Application, the undersigned

GRANTS the application for purposes of this review.  (*See* Dkt. No. 2.)  The undersigned now

considers the sufficiency of the allegations set forth in the Complaint under 28 U.S.C.

§ 1915(e)(2).  For the reasons discussed below, the undersigned recommends that the Court

DISMISS Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction and for

failure to state a claim.  (Dkt. No. 1; *see also* Fed. R. Civ. P. 12(h)(3); 28 U.S.C.

§ 1915(e)(2)(B)(ii).)  Due to these substantive defects in Plaintiff's Complaint, the undersigned

further recommends that dismissal be without leave to amend.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.      SUMMARY OF THE COMPLAINT[1]

Plaintiff initiated this action against Shaiquida B. Hayes ("Defendant") on October 17, 2022.  (*See* Dkt. No. 1.)  In relevant part, Plaintiff claims Defendant defamed him and stole his identity through the creation of "a fictitious Tik Tok Page using [Plaintiff's] images, likeness and intellectual property" wherein she "listed [Plaintiff's] home address to 92 followers without consent," and "portrayed [him] as a Homosexual man, when in Fact, [he] is not."  *Id.* at 2.  Plaintiff claims these actions defamed his character, placed his family in danger, and caused his business to experience "a drastic decrease in sales."  *See id.*

Based on these allegations, Plaintiff appears to advance two causes of action.  *See id.* at 3-4.  Through the first, he claims Defendant defamed him in violation of 28 U.S.C. § 4101(1).  *See id.* at 4.  Through the second, he claims Defendant stole his identity in violation of 18 U.S.C. § 1028a.  *See id.*  Plaintiff accordingly seeks $30,000,000 in damages.  *See id.*

## II.     STANDARD OF REVIEW

This Court must conduct an initial review of complaints filed *in forma pauperis*.  28 U.S.C. § 1915(e)(2)(B).  When conducting this review, "the court shall dismiss the case at any time if the court determines . . . the action . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted."  28 U.S.C. §§ 1915(e)(2)(B)(i), (ii); *see also Allen v.*

---

[1] The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review.  *See, e.g.*, *LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

*Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021).[2]  The Court must

accordingly construe *pro se* pleadings with the utmost leniency.  *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent

standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed*

*Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

      "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998).  "A claim is based on an indisputably meritless legal theory when either the claim

lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the

complaint." *Id.*

      To survive dismissal for failure to state a claim, a complaint must contain a short and

plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the

claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.*  It

must "give the defendant fair notice of what the claim is and the grounds upon which it rests."

*Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

---

[2] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.   SUFFICIENCY OF THE COMPLAINT

This Court lacks subject-matter jurisdiction over Plaintiff's Complaint because there is no diversity of citizenship and the Complaint fails to state a claim that arises under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. §§ 1331, 1332. The undersigned accordingly recommends that the Court dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim. *See* 28 U.S.C. §§ 1331, 1332; 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

First, jurisdiction is lacking under 28 U.S.C. § 1332 because Plaintiff and Defendant are both citizens of New York. *Compare* 28 U.S.C. § 1332(a) (requiring diversity of citizenship), *with* Dkt. No. 1 at 2 (alleging Plaintiff and Defendant are both citizens of New York). Even if this Court were to liberally construe Plaintiff's Complaint as asserting claims under New York State law, jurisdiction would still be lacking under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1332(a).

Second, jurisdiction is lacking under 28 U.S.C. § 1331 because Plaintiff has failed to state a claim arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. Plaintiff asserts one cause of action for defamation under 28 U.S.C. § 4101(1), and another cause of action for identity theft under 18 U.S.C. § 1028A. (*See* Dkt. No. 1 at 3-4.)

4

However, "28 U.S.C. 4101 does not create a cause of action" for defamation—it defines defamation "in the context of a statute that allows for actions recognizing foreign defamation judgments." *Thomas v. Brasher-Cunningham*, No. 3:19-CV-1981 (VAB), 2020 WL 4284564, at *10 (D. Conn. July 27, 2020); *see also Renxiong Huang v. Minghui.org*, No. 17-CIV-5582 (ER), 2018 WL 3579103, at *5 (S.D.N.Y. July 25, 2018) (explaining "Section 4101 is a definitional statute in service of 28 U.S.C. § 4102 *et seq.*," which "concerns the recognition of foreign defamation judgments"). "Although the tort of defamation is a well-recognized cause of action under state common law, federal law does not create a general cause of action or provide a basis for federal question jurisdiction for defamation." *Steffens v. Kaminsky*, No. 3:20-CV-737 (JAM), 2020 WL 2850605, at *2 (D. Conn. June 2, 2020) (collecting cases); *see also Fleming v. Laakso*, No. 18-CV-1527 (RA) (BCM), 2019 WL 959521, at *5 (S.D.N.Y. Feb. 5, 2019), *report and recommendation adopted*, 2019 WL 952349 (S.D.N.Y. Feb. 26, 2019); *Harris v. Doe*, No. 17-CV-7256 (WFK), 2018 WL 1997976, at *2 (E.D.N.Y. Apr. 27, 2018).

Similarly, "18 U.S.C. § 1028 is purely criminal in nature and creates no private right of action." *Hernandez v. Doe*, No. 16-CV-2375 (KAM) (LB), 2016 WL 4995231, at *2 (E.D.N.Y. Sept. 18, 2016); *see also Clark v. Student Loan Fin. Corp.*, No. 18-CV-9354 (JPO), 2019 WL 4412571, at *2 (S.D.N.Y. Sept. 16, 2019); *Cabrera v. U.S. Dep't Educ.*, No. 6:18-CV-06476 (MAT), 2018 WL 11449477, at *2 (W.D.N.Y. July 5, 2018); *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302-303 (E.D.N.Y. 2004). "There is no private federal cause of action for identity theft." *Cabrera*, 2018 WL 11449477, at *2; *see also Akram v. Akram*, No. CV-22-02699 (KM) (JRA), 2022 WL 2473439, at *2 (D.N.J. July 6, 2022); *Abdul-Sabur v. Wells Fargo Bank, N.A.*, No. 7:19-CV-674, 2020 WL 1670193, at *2 (W.D. Va. Feb. 10, 2020), *report and recommendation adopted*, 2020 WL 1665313 (W.D. Va. Apr. 3, 2020); *Blackstock v. Walgreens*,

No. 4:17-CV-02097 (RBH) (KDW), 2017 WL 4174767, at *2 (D.S.C. Sept. 1, 2017), *report and recommendation adopted*, 2017 WL 4156445 (D.S.C. Sept. 19, 2017).

Plaintiff has accordingly failed to state a claim for defamation or identity theft that arises under the Constitution, laws, or treaties of the United States. *See, e.g., McArthur v. C-Town Super Mkt.*, No. 3:21-CV-972 (SRU), 2022 WL 2981573, at *5 (D. Conn. July 28, 2022) (dismissing the claimant's Section 4101 defamation claim because it "is not cognizable, [and] cannot present a federal question"); *Clark*, 2019 WL 4412571, at *2 (dismissing the claimant's Section 1028 identity theft claim for lack of subject matter jurisdiction because "Section 1028 . . . does not supply a private right of action."); *Harris*, 2018 WL 1997976, at *2 ("Plaintiffs allege a claim for defamation but there is no federal cause of action for defamation because it is an issue of state law, not of federal constitutional law.  Thus, even liberally construed, plaintiffs' complaint does not present a federal question."); *Hernandez*, 2016 WL 4995231, at *2-3 (dismissing the claimant's Section 1028 identity theft claim for lack of subject matter jurisdiction and failure to state a claim).  The undersigned accordingly recommends that the Court dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim.  *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.   AMENDMENT WOULD BE FUTILE

Typically, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-705 (2d Cir. 1991).  However, a complaint that suffers substantive defects cannot be cured by artful pleading.  *See Cuoco*, 222 F.3d at 112.  Such a complaint should accordingly be dismissed without leave to amend because repleading would be futile.  *See id.*

The undersigned concludes amendment would be futile because Plaintiff's claims are not cognizable as private causes of action under federal law.  *See Steffens*, 2020 WL 2850605, at *2 (explaining "federal law does not create a general cause of action or provide a basis for federal question jurisdiction for defamation."); *Cabrera*, 2018 WL 11449477, at *2 ("There is no private federal cause of action for identity theft.").  Having construed Plaintiff's Complaint liberally, *see Sealed Plaintiff*, 537 F.3d at 191, the undersigned recommends that the Court dismiss the Complaint without leave to amend.  *See, e.g.*, *McArthur*, 2022 WL 2981573, at *5 (dismissing the claimant's Section 4101 defamation claim without leave to amend because "repleading would be futile."); *Clark*, 2019 WL 4412571, at *2, 5 (dismissing the claimant's Section 1028 identity theft claim without leave to amend because "amendment would be futile"); *Hernandez*, 2016 WL 4995231, at *2-3 (dismissing the claimant's Section 1028 identity theft claim without leave to amend because "amendment would be futile."); *Clarke v. Leading Hotels of the World, Ltd.*, No. 15-CV-0008 (JMF), 2015 WL 6686568, at *4-5 (S.D.N.Y. Oct. 29, 2015) (dismissing the claimant's Section 1028 claim without leave to amend where "amendment would be futile because the problem with the claim is substantive and better pleading will not cure it.").

## V.     CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim. (Dkt. No. 1.)  The undersigned further recommends that dismissal be without leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITHOUT LEAVE TO AMEND** pursuant to Fed. R. Civ. P. 12(h)(3), 28 U.S.C. §§ 1915(e)(2)(B)(ii), and *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated:  November 7, 2022
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2022 WL 953111
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Valery LATOUCHE, Plaintiff,

v.

ROCKLAND COUNTY; Rockland County Jail;
John Morley, Chief Medical Officer; Department
of Correctional Services; Dr. Jacobson, DDS,
Sing Sing Correctional Facility; Tushar Udeshi,
DDS, Sing Sing Correctional Facility, Defendants.

22-CV-1437 (LTS)
|
Signed 03/29/2022

**Attorneys and Law Firms**

Valery LaTouche, Ossining, NY, Pro Se.

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is currently incarcerated at Sing Sing
Correctional Facility (Sing Sing), brings this *pro se* action
under 42 U.S.C. § 1983, asserting numerous claims that
are wholly unrelated to one another. Plaintiff brings claims
arising from his 2004 arrest, and he challenges his 2005
conviction. Plaintiff also brings claims about his medical
care, which he asserts against: (1) two dentists who allegedly
provided "negligent" dental care in 2016, at Sing Sing; and (2)
the Rockland County Jail, the New York State Department of
Corrections and Community Supervisions (DOCCS),[1] and
DOCCS Chief Medical Officer John Morley in connection
with medical treatment of Plaintiff's hair loss, eczema, and
gynecomastia.

[1] Plaintiff names as a defendant "Department
of Correctional Services," which the Court
understands to refer to the DOCCS, rather than the
New York City Department of Correction.

By order dated March 14, 2022, the Court granted Plaintiff's
request to proceed *in forma pauperis* (IFP), that is, without
prepayment of fees.[2]

[2] Prisoners are not exempt from paying the full filing
fee even when they have been granted permission
to proceed *in forma pauperis*. *See* 28 U.S.C. §
1915(b)(1).

STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts
screen complaints brought by prisoners who seek relief
against a governmental entity or an officer or employee of a
governmental entity. See 28 U.S.C. § 1915A(a). The Court
must dismiss a prisoner's *in forma pauperis* complaint, or any
portion of the complaint, that is frivolous or malicious, fails
to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such
relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v.
Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must
also dismiss a complaint if the court lacks subject matter
jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

BACKGROUND

Plaintiff Valery LaTouche alleges the following facts, which
the Courts accepts as true for purposes of screening the
complaint.

**1. False Arrest**
In 2004, Plaintiff was at a friend's house in New City,
Rockland County, New York. (ECF 1 at 2.) There was a
"police raid," and Plaintiff was "unreasonably seized by a
Ramapo police officer." (*Id.*) He was arrested and charged
with unlawful possession of weapons. Later, at a preliminary

hearing, the charges against Plaintiff were dismissed based on information that he did not reside in the home.

**\*2**  In 2005, Plaintiff was arrested on an "active warrant" arising from the 2004 police raid, which "was used as cause" to detain him in connection with the charges for which he is currently serving a sentence. [3] Plaintiff obtained, in 2021, a certificate of dismissal from the Ramapo Town Court in connection with the weapons possession charges. Plaintiff sues the County of Rockland for false imprisonment and violations of his rights under the Fourth Amendment in connection with this 2004 arrest, for which the charges were dismissed.

[3]     In the report and recommendation addressing Plaintiff's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, the court noted that Plaintiff was arrested because a plainclothes officer believed that there was an outstanding warrant from Clarkstown for his arrest, but he was released when it was determined that the warrant was no longer valid. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013).

### 2. Challenge to 2005 Conviction

Plaintiff asserts claims against Defendant "Rockland County Supreme Court," in connection with Justice Kevin Russo's handling of Plaintiff's post-conviction motions, under New York Criminal Procedure Law § 440.10.

Plaintiff contends that the Rockland County District Attorney, in opposing Plaintiff's December 18, 2018 motion to vacate his conviction, ignored the arguments that Plaintiff was actually innocent and disputed that defense counsel was ineffective in failing to present evidence of Plaintiff's "low intellectual disability." (*Id.* at 4, ¶ 19.) Justice Russo denied Plaintiff's motion under New York Criminal Procedure Law § 440.10(3)(c) based on Plaintiff's failure to have raised these arguments in his earlier § 440.10 motions. (*Id.* at 4, ¶ 20.) Justice Russo also denied the motion for rehearing, and the Appellate Division, Second Department, denied leave to appeal.

Plaintiff also filed applications in state court arguing (1) that his § 440.10 motion should not have been heard by Justice Russo, whose law clerk was a former prosecutor who had previously worked for a judge who is biased against Plaintiff (Justice Kelly); and (2) that the Grand Jury proceedings were

flawed. Plaintiff seeks only damages in this complaint and has not requested any other relief in connection with these claims against the Rockland County Supreme Court.

### 3. Medical Treatment

During Plaintiff's confinement as a pretrial detainee at Rockland County Jail in 2005, he was diagnosed with depression and placed on suicide watch. Plaintiff was prescribed two antidepressant medications: Rameron and Atrax. (*Id.* at 6, ¶ 25.) In May 2005, a doctor at the jail diagnosed Plaintiff with gynecomastia "as a result of his [in]gestion of Rameron." (*Id.* at ¶ 26.) Plaintiff was referred "to a surgeon for a biopsy." (*Id.* at ¶ 27.) Before the biopsy took place, Plaintiff was convicted and taken into DOCCS custody. (*Id.*)

DOCCS initially housed Plaintiff at Downstate Correctional Facility, where he "repeatedly sought medical attention for his gynecomastia." (*Id.*) On an unspecified date, after Plaintiff was transferred to Sing Sing, he asked Doctors Kwan, Bigaud, and Ezeke for medical treatment because he had pain when lying on his chest. Plaintiff had a mammogram, which had a "negative result." (*Id.* at 6.) Plaintiff continued to complain about the gynecomastia, and gave Sing Sing physician Dr. Muthra, who is not named as a defendant in this action, documents from Rockland County Jail that showed his earlier referral for a biopsy. Dr. Muthra explained that the "Albany official" denied Plaintiff's request for a biopsy based on the results of the mammogram and because treatment for the breast enlargement itself is considered a "cosmetic procedure." (*Id.* at 6, ¶ 29.) Plaintiff brings claims against Rockland County Jail, DOCCS, and its Chief Medical Officer John Morley for failing to treat his gynecomastia.

**\*3**  On August 30, 2021, Dr. Muthra told Plaintiff that there was "a spike in his hormonal glands," which can indicate a "possible benign tumor." (*Id.*) Plaintiff was sent to an outside hospital for an MRI. (*Id.* at 7.) At Plaintiff's next medical visit, when he inquired about the MRI results, Dr. Muthra told Plaintiff that his earlier abnormal "blood test w[as] likely a lab error," but that he would continue to monitor Plaintiff's status. (*Id.*)

On an unspecified date, Plaintiff told "his medical provider" at Sing Sing that he had a recurring skin rash, and it was diagnosed as eczema. (*Id.* at 7, ¶ 32.) Plaintiff continued to complain about itching, apparent "ringworm," and hair thinning and bald spots on his scalp and beard. Dr. Muthra prescribed a topical cream (fluocinolone acetonide) for

Plaintiff, and he was given "tar shampoo" and lotion with vitamin E. Plaintiff asked for a biopsy and dermatologist visit, but these requests were denied, and Plaintiff was told that "the Albany official considers his condition to be cosmetic." (*Id.* at ¶ 33.) Plaintiff asserts claims against DOCCS and its Chief Medical Officer, John Morley, for denying him "over the counter drug[s] minoxidil, corticosteroid, [and] antholin for his scalp." (*Id.* at 31.)

### 4. Dental Care at Sing Sing in 2016

On April 4, 2016, at Sing Sing, Dr. Allen Jacobson examined Plaintiff's teeth and found cavities and decay. (*Id.* at 2-3.) Two weeks later, on April 19, 2016, dental hygienist cleaned Plaintiff's teeth. Dr. Jacobson then filled the cavity in Plaintiff's tooth #12 but warned him that the cavity was deep, and the tooth might need to be extracted. (*Id.* at 3.) Shortly after the filling, "the tooth became infected," and Plaintiff suffered "extreme sensitivity" and shooting pain. On July 18, 2016, Dr. Jacobson attempted to "file down" the injured tooth. X-rays were taken and these showed that "cavities surrounding the tooth" caused scraping near the nerve. Dr. Jacobson advised Plaintiff that the tooth needed to be extracted, but Plaintiff refused and asked him to "cur[e] the infection." (*Id.*) Dr. Jacobson prescribed penicillin and ibuprofen.

On July 22, 2016, another dentist at Sing Sing, Dr. Udeshi, told Plaintiff that tooth #12 needed to be extracted. Plaintiff told Dr. Udeshi that the medication that Plaintiff had taken was provided to "save the tooth," and he refused the extraction. (*Id.* at 3.)

In 2021, the filling in tooth #12 fell out. Dr. K. Rakib examined Plaintiff and found deep cavities in the "tooth opposite ... tooth #12." (*Id.* at 3-4.) Plaintiff told Dr. Rakib that he had been unable to chew on his left side, where tooth #12 was located, due to the "destructive dental filling." (*Id.* at 4.) As a result, he chewed on the other side of his mouth, which "cause[d] the decay in the tooth opposite #12." (*Id.*) On January 21, 2022, Plaintiff's tooth #12 was extracted. Plaintiff asserts claims against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to provide "adequate dental treatment." (*Id.* at 2.)

Plaintiff brings this complaint against Defendants Rockland County, Rockland County Jail, Dentists Jacobson and Udeshi, DOCCS and DOCCS Chief Medical Officer John Morley. Plaintiff seeks $35 million in damages.

## DISCUSSION

### A. Timeliness

Many of Plaintiff's claims under section 1983 appear to be time-barred. The statute of limitations for section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Plaintiff knew of his injuries when they occurred, and his claims therefore accrued at that time. Plaintiff's claims arising more than three years before he filed this complaint on February 22, 2022 therefore are time-barred, including his claims arising from his 2004 arrest, his 2005 conviction, his medication with Rameron at Rockland County Jail in 2005, and his dental treatment in 2016.

**\*4** Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

If Plaintiff amends his complaint, and the amended complaint includes any claim arising more than three years before he filed the original complaint on February 22, 2022, he must include any facts showing why the claim should not be deemed time-barred. The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.' " *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir.

2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. [4]

[4]      In addition, New York provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.*, N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id. at § 204* (where a dispute has been submitted to arbitration but is determined to be non-arbitrable), id. at § 207(3) (defendant is outside New York at the time the claim accrues), *id. at § 208* (plaintiff is disabled by infancy or insanity).

As set forth below, even if Plaintiff's claims were not time-barred, the allegations of the complaint generally fail to state a federal claim on which relief can be granted or are otherwise not cognizable in an action under section 1983.

## B. False Arrest in 2004
The Court first looks to state law to establish the elements of a false arrest claim under section 1983. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.' "); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of Section 1983 claims and courts should not "mechanically apply" the law of New York State).

Under New York law, to state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and citation omitted). "Probable cause can exist even where

it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

**\*5** Here, Plaintiff alleges that he was arrested after a "raid" on a home where unlawful weapons were found, and that the charges against him were dismissed when he demonstrated that he did not reside in the home. The fact that the charges against Plaintiff were dismissed, without more, is insufficient to plead plausibly that the Ramapo police officer who arrested Plaintiff lacked probable cause to do so.

Moreover, Plaintiff has not sued an individual officer who allegedly made a wrongful arrest. Instead, he brings this claim against the County of Rockland. To state a claim against a municipality, such as the County of Rockland, a plaintiff must allege that the municipality itself violated Plaintiff's rights. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). It is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. To state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Even if Plaintiff had adequately alleged that a police officer violated his rights, which he has not done, that allegation would be insufficient to provide a basis for liability on the part of the County of Rockland. Plaintiff does not include any allegations that any policy, custom, or practice on the part of Rockland County violated his rights in connection with this 2004 arrest. Plaintiff thus fails to state a claim against the County of Rockland based on his 2004 arrest on charges that were later dismissed.

Plaintiff also suggests that this wrongful arrest in 2004 was used in 2005 as a pretense to arrest him for the charges for which he is currently serving a prison sentence. A prisoner cannot pursue civil rights claims that would necessarily be inconsistent with a conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Moreover, even where a civil rights

claim would lie, a plaintiff cannot seek relief for "the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Id.* at 477, n. 7. Plaintiff's 2005 conviction has not been overturned, and any claim for damages for the injury of serving this sentence would be inconsistent with this conviction.

As set forth above, these claims had been time-barred for nearly 15 years when Plaintiff filed this complaint. It therefore would be futile for Plaintiff to replead these claims, unless he has some adequate basis for equitable tolling.

## C. Challenge to 2005 Conviction

Plaintiff brings civil rights claims regarding the denial of his post-conviction motions against Defendant "Rockland County Supreme Court." As an initial matter, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.*

The Supreme Court of the State of New York, Rockland County, is a part of the New York State Unified Court System, and, as such, is an arm court the State of New York. *Id.* at 368 (explaining that a court that is part of the New York State Unified Court System "is unquestionably an 'arm of the State,' entitled to Eleventh Amendment sovereign immunity."). New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment therefore bars Plaintiff's section 1983 claims against the Rockland County Supreme Court.

**\*6** Moreover, Plaintiff's allegations that Justice Russo wrongfully denied his § 440.10 motions are not cognizable in a civil rights action under section 1983. A prisoner can challenge the validity of his state conviction in federal court, or obtain release from custody, only by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)) (noting that writ of *habeas corpus* is sole federal remedy for prisoner seeking to challenge the fact or duration of his confinement). Plaintiff's

section 1983 claims challenging his conviction must therefore be dismissed for failure to state a claim on which relief can be granted and because defendant is immune from suit. 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii).

The Court also declines to recharacterize these claims as arising under section 2254, because Plaintiff has already challenged his 2005 conviction in a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, which was denied on the merits. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013), *certificate of appealability denied*, No. 13-3720 (2d Cir. Mar. 13, 2014), *lv to file successive petition denied*, No. 15-3662 (2d Cir. Dec. 7, 2015), *certificate of appealability denied*, No. 16-2885 (2d Cir. Feb. 13, 2017) (appeal of denial of Rule 60(b) motion), *lv to file successive petition denied*, No. 19-4006 (2d Cir. Jan 21, 2020). Plaintiff would require permission from the Court of Appeals to bring a new petition for a writ of *habeas corpus* under section 2254.

## D. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that several defendants were deliberately indifferent to his serious medical needs. Such claims arise under the Due Process Clause of the Fourteenth Amendment, if Plaintiff was a pretrial detainee at the time of the events giving rise to his claims, and under the Eighth Amendment, if he was a convicted prisoner. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Whether Plaintiff was a pretrial detainee or convicted prisoner, he must satisfy two elements to state such a claim: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a "subjective" or "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29.

The objective element of a deliberate indifference claim is the same for pretrial detainees and convicted prisoners. The plaintiff's medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain").

The "subjective" or "mental" element varies depending on whether a plaintiff is a pretrial detainee or convicted prisoner. A convicted prisoner must allege that a correction official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). That is, a convicted prisoner must allege that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Id.* By contrast, a pretrial detainee need allege only that the official intentionally or recklessly failed to act with reasonable care "even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphasis added).

*7 The mere negligence of a correction official is not a viable basis for a claim of a federal constitutional violation under section 1983, under either the Eighth or the Fourteenth Amendment. *See Daniels v. Williams*, 474 U.S. 327, 335 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

### 1. Dental Care

Plaintiff was a convicted prisoner as of 2016, when his claims for constitutional violations in connection with his dental care first arose. Plaintiff adequately alleges at this stage that his dental problems were a serious medical need. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (holding that a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become painful or otherwise dangerous). Plaintiff therefore has pleaded facts showing that the objective prong of a deliberate indifference claim is satisfied.

Plaintiff fails, however, to plead any facts giving rise to an inference that either dentist acted with the subjective intent required for deliberate indifference. He states that Dr. Jacobson filled the cavity in Plaintiff's tooth #12 but warned him that the cavity was deep, and that the tooth might need to be extracted, which later proved true; Plaintiff nevertheless refused to have it extracted, and Dr. Jacobson prescribed penicillin and ibuprofen for the infection. These allegations do not show that Dr. Jacobson "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32. On the contrary, it appears that Plaintiff acted against Dr. Jacobson's advice, and Dr. Jacobson then took steps to mitigate the danger to Plaintiff.

Plaintiff further alleges that, on July 22, 2016, Dr. Udeshi told Plaintiff that tooth #12 needed to be extracted, but Plaintiff refused the extraction. (ECF 2 at 3.) Plaintiff brings claims against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to provide "adequate dental treatment." (*Id.* at 2.) These allegations are insufficient to support a claim of a constitutional violation, both because Plaintiff alleges that he was the one who refused the tooth extraction and because allegations of negligence are insufficient to state a claim that a defendant actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32. Plaintiff's section 1983 claims against Doctors Jacobson and Udeshi must therefore be dismissed for failure to state a claim on which relief can be granted.

### 2. Cosmetic Conditions

Plaintiff alleges that Defendants have denied him adequate treatment for his hair loss and eczema because these are cosmetic conditions. "Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury to state a cognizable claim." *Washington v. Fludd*, No. 18-CV-1273(JS) (SIL), 2019 WL 1643542, at *3 (E.D.N.Y. Apr. 16, 2019) (quoting *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (internal quotation marks and additional citation omitted; alteration in original)). A "cosmetic" condition can rise to the level of seriousness needed to establish a duty of care if: (1) a reasonable doctor would perceive the condition as important and worthy of treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the condition results in chronic and substantial pain. *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

*8 Plaintiff alleges that he suffers from hair thinning and bald spots on his scalp and beard. Hair loss is generally not deemed a serious medical condition. *See, e.g., Guthrie v. US Fed. Bureau of Prisons*, No. 09-CV-990 (LAP), 2010 WL 2836155, at *5 (S.D.N.Y. July 7, 2010) (holding that "[t]he BOP's duty of care to provide for the safekeeping of its prisoners does not require them to provide medication that is cosmetic in nature, including administering hair loss medication), *aff'd*, 421 F. App'x 120 (2d Cir. 2011). Plaintiff does indicate that he has "itching" on his scalp or beard, and apparent "ringworm," but these allegations do not show that he was in chronic or substantial pain at any relevant time or that the condition significantly affected his daily activities. He thus fails to plead facts showing that this was

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 15 of 106

a sufficiently serious medical condition that satisfies the objective component of a deliberate indifference claim.

Plaintiff also alleges that he was diagnosed with eczema. Skin conditions can be sufficiently serious to satisfy the objective component of a deliberate indifference claim. *Brock*, 315 F.3d at 163 (holding that prisoner's thick keloid scar that was a source of chronic pain was a serious medical condition). Plaintiff alleges, however, that Dr. Muthra prescribed treatment with a topical cream (fluocinolone acetonide), "tar shampoo," and lotion with vitamin E. Although Plaintiff contends that he was denied a biopsy, a dermatologist visit, and "over the counter drug[s] minoxidil, corticosteroid, [and] antholin for his scalp" (*id.* at 31), it is well established that "[d]isagreements over medications ... forms of treatment, or the need for specialists ... are not adequate grounds for a Section 1983 claim." *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Plaintiff's allegations are therefore insufficient to state a claim for deliberate indifference in connection with his hair loss or eczema.

### 3. Gynecomastia

Plaintiff alleges that while he was a pretrial detainee at Rockland County Jail, in 2005, he was prescribed a psychiatric drug (Rameron) that caused breast enlargement, known as gynecomastia. He was referred for a biopsy but was transferred to the custody of DOCCS in May 2005, before it took place. Plaintiff sues Rockland County for administering a drug that caused him harm.

Plaintiff's allegations might be construed as a claim for violation of the Fourteenth Amendment right to information about potential side effects of the medication. *See Pabon v. Wright*, 459 F.3d 241, 250-51 (2d Cir. 2006) ("In order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment."). [5] Because Plaintiff alleges that he knew of this harm in 2005, it appears that his claim accrued at that time. The three-year limitations period for a section 1983 claim therefore barred this claim when he filed the complaint in 2022. Plaintiff should not replead this claim in his amended complaint, unless he can plead facts showing equitable tolling of the limitations period.

[5]   To establish a claim for violation of the Fourteenth Amendment right to medical information, "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Pabon*, 459 F.3d at 250-51.

Plaintiff alleges that the DOCCS and its Chief Medical Officer have denied treatment for gynecomastia on the ground that it is a cosmetic condition. In cases where a prisoner alleges that gynecomastia "significantly affects daily activities" or cause him "chronic and substantial pain," gynecomastia may qualify as a serious medical condition. *See, e.g., Blaine v. Burnes*, No. 3:20-CV-1039 (KAD), 2020 WL 5659101, at *6 (D. Conn. Sept. 23, 2020) ("While Gynecomastia can cause pain or discomfort, and can result in discharge from the nipple, [plaintiff] alleges none of these infrequent side effects."); *Washington v. Fludd*, 2019 WL 1643542, at *3 (dismissing plaintiff's Eighth Amendment claim based on gynecomastia as a Risperdal side effect for failure to allege facts sufficient to meet the objective component). Plaintiff's allegations are insufficient to show that his breast enlargement "significantly affects daily activities" or causes him "chronic and substantial pain." *Moore*, 2008 WL 4186340 at *6 (citing Brock, 315 F.3d at 162-63).

**\*9** Because Plaintiff may be able to allege facts showing that this is a sufficiently serious condition that is not merely cosmetic, and that defendants are actually aware that this condition is more than cosmetic, the Court grants Plaintiff leave to amend to replead this claim against Chief Medical Officer John Morley or other individuals who were personally aware of a serious medical condition related to Plaintiff's gynecomastia and were deliberately indifferent to the risk to him of serious harm.

### E. Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss

[a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim about his medical conditions, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order,

caption the document as an "Amended Complaint," and label the document with docket number 22-CV-1437 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**\*10** SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ CV _____
(Include case number if one has been assigned)

Write the full name of each plaintiff.

-against-

AMENDED
COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

**I.   LEGAL BASIS FOR CLAIM**

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other:

**II.   PLAINTIFF INFORMATION**

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name          Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City          State          Zip Code

**III.   PRISONER STATUS**

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other:

Page 2

**IV.   DEFENDANT INFORMATION**

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 2:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 3:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 4:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Page 3

**V.   STATEMENT OF CLAIM**

Place(s) of occurrence:

Date(s) of occurrence:

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

Page 4

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

**VI.   RELIEF**

State briefly what money damages or other relief you want the court to order.

Page 5

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.          9

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| First Name | Middle Initial | Last Name |
| Prison Address | | |
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

**All Citations**

Slip Copy, 2022 WL 953111

---

**End of Document**                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1838277
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Michael WALKER, Plaintiff,

v.

CITY OF NEW YORK; Brooklyn Public Defenders
Office; Danielle Regis; New York City Police
Department; Detective Courtney Winston; Detective
Raymond Higgins; Detective Jason Guzman; Detective
Patrick Jean Pierre; Ranking Detective Daniel Pierrino;
Civil Complaint Review Board; Chairman Frank
Davie; Field Investigator A. Wassim; Panel Member
S. Carceterra; Panel Member M. Rivadene; Records
Access Officer George Alexander; Internal Affairs
Bureau; Captain Brian White; Lt. Dwayne Watson;
Sgt. Moode; Detective Carmelo Rivera; Detective
Rashad Vandross; Corporation Counsel Law Dept.;
Supervisor Nelson Genevieve; Daniel Oliner; Allyson
Nicole Brown; Christopher D. Deluca, Defendants.

20-CV-5240 (PKC) (LB)
|
Signed 05/07/2021

**Attorneys and Law Firms**

Michael Walker, Napanoch, NY, pro se.

## MEMORANDUM & ORDER

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Michael Walker, incarcerated at the Eastern New York Correctional Facility, brings this *pro se* action under 42 U.S.C. §§ 1983, 1985, and 1986, the Americans with Disabilities Act ("ADA") and Rehabilitation Act, and various state-law provisions. Plaintiff's request to proceed *in forma pauperis* ("IFP") is granted pursuant to 28 U.S.C. § 1915. For the reasons discussed below, Plaintiff's Amended Complaint (Dkt. 24-1) is dismissed in its entirety. Plaintiff is granted sixty (60) days' leave to file a Second Amended Complaint as set forth below.

## BACKGROUND

### I. Underlying Facts [1]

[1]  This recitation of the facts is based on the non-conclusory allegations in the Complaint and Amended Complaint, which the Court accepts as true at this stage in the case, *see Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (per curiam) (citation omitted), as well as the Court's factual findings at the summary judgment stage in *Walker v. Raja, see* 2020 WL 606788.

This case is related to Plaintiff's pending action in *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Aug. 22, 2017).[2] On January 8, 2017, Plaintiff was arrested following an attempted armed robbery of a jewelry store. *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB), 2020 WL 606788, at \*1 (E.D.N.Y. Feb. 7, 2020). After an altercation during which Plaintiff threatened the store owner and an employee with a gun, Plaintiff fled the store with the jewelry and firearm. *Id.* The store owner followed Plaintiff and wrestled him to the ground, where the pair exchanged blows until civilian bystanders intervened, grabbing Plaintiff and restraining him on the pavement. *Id.*

[2]  In that lawsuit, Plaintiff has asserted § 1983 and state-law claims against NYPD officers based on the same attempted robbery incident that forms the basis of this action.

Soon thereafter, several police officers from the New York City Police Department ("NYPD") arrived at the scene. *Id.* In their attempts to subdue and arrest Plaintiff, an officer struck Plaintiff several times, and a female officer "began repeatedly punching him in the face." *Id.* Plaintiff was charged with, *inter alia*, robbery, assault, grand larceny, criminal possession of a weapon, and criminal possession of stolen property. *Id.* at \*2. He pled guilty to attempted robbery in the second degree pursuant to New York Penal Law § 160.10(2)(a), and was sentenced to 12 years to life as a "persistent violent felony offender." *Id.*

Plaintiff had advanced glaucoma and distorted vision prior to the January 8, 2017 arrest, but his vision became completely impaired following the arrest. *Id.* Plaintiff is now legally blind, and "cannot see, write, type, nor navigate himself without the assistance of" auxiliary aids. (Amended Complaint ("Am. Compl."), Dkt. 24-1, at 10.) Plaintiff also suffers from post-traumatic stress disorder following the arrest and, upon admission to the New York Department of Corrections and Community Supervision ("DOCCS") local

county jail, was hospitalized in the medical unit due to medical complications. (*Id.* at 14–15.)

**\*2** Attorney Danielle Regis from the Brooklyn Defender Services [3] ("BDS") was assigned to represent Plaintiff in his criminal proceeding. (*Id.* at 15.) Around April 2017, Regis visited Plaintiff in DOCCS confinement, accompanied by a social worker. (*Id.*) During the visit, Regis played back the surveillance tape from Plaintiff's arrest, verbally describing the video to Plaintiff due to his visual impairment. (*Id.* at 16.) In the video, the arresting officers were subduing Plaintiff and striking him "until incoherent," including NYPD Officer Elisa Battista, who was "seen repeatedly striking [P]laintiff's head[.]" (*Id.* at 16.) Regis "immediately shut[ ] off [the] video" in the middle of playback, which Plaintiff characterizes as "a conscious disregard in preventing [P]laintiff any further information due to overwhelming exculpatory impeaching evidence, enough for criminal charges being brought on [the] seven arresting officers." (*Id.*) Plaintiff thereafter requested access to the surveillance tape several times to "[n]o avail," which he claims is due to Regis's "derelict tactics to insulate [the] seven arresting officers." (*Id.*)

[3] Though Plaintiff refers to the "Brooklyn Public Defender Office" in his Complaint (*see, e.g.*, Complaint ("Compl."), Dkt. 1, at 10), the Court assumes Plaintiff meant to name Brooklyn Defender Services, a non-profit public defender organization, *see* http://bds.org/ (last visited Mar. 3, 2021), and refers to the organization by its correct name.

On or about May 12, 2017, Plaintiff filed a Notice of Claim with the New York State Office of the Comptroller concerning state-law claims arising from his January 2017 arrest. [4] (*see id.* at 17); *see also Walker*, 2020 WL 606788, at *2. Plaintiff also filed a "[p]etition with the (DOJ) Dept[.] of Justice (Southern District)" on May 6, 2017, a citizen's complaint with the Civilian Complaint Review Board ("CCRB") [5] on May 18, 2017, and a citizen's complaint with the NYPD's Internal Affairs Bureau ("IAB") [6] on June 6, 2017. (*See* Am. Compl., Dkt. 24-1, at 17.) On August 22, 2017, Plaintiff filed a *pro se* action against NYPD Officers Taimur Raja, David Vazquez, Estharlin Lopez, and Kyle Brown, advancing claims under 42 U.S.C. § 1983 and state law in connection with his January 2017 apprehension and arrest. *See* Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 22, 2017), ECF No. 2; *see also Walker*, 2020 WL 606788, at *2.

[4] The Comptroller's Office informed Plaintiff on or about May 24, 2017 that his claim was denied as untimely because it had not been filed within 90 days from the date of his January 8, 2017 arrest. *Walker*, 2020 WL 606788, at *2.

[5] The CCRB is an independent City agency "empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers." *Joseph v. Doe*, No. 16-CV-2004 (PKC) (LB), 2017 WL 4233024, at *2 n.3 (E.D.N.Y. Sept. 22, 2017).

[6] The IAB is a division of the NYPD that "investigates claims of serious misconduct and corruption of members of the NYPD." *Floyd v. City of New York*, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010); *see id.* at 384 ("IAB investigations are confidential, including within the NYPD.").

## II. *Walker v. Raja*

The New York City Office of Corporation Counsel ("Corporation Counsel") represents the arresting officers in *Walker v. Raja*, which is still pending before this Court. Previously, Allyson Brown, an attorney with Corporation Counsel, requested a stay of the proceedings in light of the pending CCRB investigation. (Am. Compl., Dkt. 24-1, at 18); *see also* Motion to Stay, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 2, 2017), ECF No. 19; 11/6/2017 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2017), ECF No. 21. On June 12, 2018, following an 18-month investigation and hearing in front of a three-member panel, [7] the CCRB "exonerated [the] five arresting officers[,]" Raja, Brown, Vazquez, Lopez, and Sgt. Rahman. (Am. Compl., Dkt. 24-1, at 18.) The stay in *Walker v. Raja* was lifted, and the case proceeded to discovery. (*Id.* at 18); *see also* 8/7/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 7, 2018), ECF No. 51.

[7] The panel consisted of CCRB chairman Frank Davie and CCRB members S. Carceterra and M. Rivadene. (Am. Compl., Dkt. 24-1, at 18.)

**\*3** During discovery, Plaintiff received the CCRB investigative records and learned that there were seven NYPD officers involved in his arrest, not five, as he had previously thought. (Am. Compl., Dkt. 24-1, at 19.) According to Plaintiff, when questioned by the Court as

2021 WL 1838277

to whether there were other arresting officers that should have been added to the complaint, Corporation Counsel attorney Brown "strategically respon[ded][ ] by mentioning only[ ] (Sgt. Rahman) with a conscious disregard [in] excluding arresting officers ... [William Chow and Elisa Battista) ... when having constructive knowledge of direct participation [by] all seven arresting officers." (*Id.* at 19.) Plaintiff claimed that Brown failed to mention Officers Chow and Battista in order to cover up the CCRB's "mishandling [of] investigations in disavowing information while deleting arresting officers police misconduct ... which result[ed] in [the] same two arresting officers [being] intentionally excluded from the" CCRB decision. (*Id.* at 19–20.) Plaintiff also alleged that BDS attorney Regis had seen Officers Chow and Battista on the surveillance tape during her visit with Plaintiff in April 2017, but hid their involvement from Plaintiff. (*Id.* at 20.) Plaintiff further claimed that he later learned through discovery that "the video surveillance tape, audio and investigative records sent by [the City], [BDS], Brooklyn District Attorney['s] Office and Corporation Counsel law dept [had been] doctor[ed], deleting [the] arresting officers['] police misconduct[.]" (*Id.*) Plaintiff believed that the "records, videos, and audio[ ]" provided to Plaintiff and the Court were "doctored when sent during discovery." (*Id.* at 21–22 (asserting that Defendants were "banking on [P]laintiff's disability" and "hinder[ing] him from exercising his Civil Rights").) According to Plaintiff, the original video surveillance tape showed Officer Battista "kneeling over [P]laintiff in a malicious assault," and an audio file depicted Officer Vazquez stating that "he [had] used physical force on [P]laintiff," but both files had been deleted, "along with missing investigative records concerning direct participation[.]" (*Id.* at 20.)

On November 6, 2018, the Court granted Plaintiff leave to file an amended complaint. (Dkt. 62.) The Amended Complaint additionally named as defendants NYPD Officers William Chow and Elisa Battista, Sergeant Sazedur Rahman, and the City of New York (the "City"). [8] Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61; 11/6/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2018), ECF No. 62. On February 7, 2019, Plaintiff filed a motion to compel, in which he raised the issue of the allegedly altered videos, asserting that the "CCRB and Corporation Counsel have in their po[ss]ession video record evidence of ... facts of police criminal misconduct." Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 7, 2019), ECF No. 86, at 1. In response, Corporation Counsel explained that:

> Defendants produced copies of these videos to Plaintiff in their original form as received by [Corporation Counsel], and were not altered in any way by this Office. Additionally, Defendants attach hereto as Exhibit B a video of the underlying incident received from the Kings County District Attorney's Office, which is an incomplete version of the video from Brooklyn Defender Services that was previously provided to Plaintiff during discovery and to the Court on December 22, 2017.

Response to Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 22, 2019), ECF No. 91, at 1–2. [9] In its partial grant of summary judgment, the Court briefly addressed this argument and found it "not cognizable," given that "Plaintiff offer[ed] no record evidence to suggest that the video evidence [had been] doctored." *Walker,* 2020 WL 606788, at *3 n.6.

[8]     In his Amended Complaint in *Walker v. Raja*, Plaintiff set forth his theories about the video alterations and omission of Officers Chow's and Battista's identities from the defendants' initial disclosures. *See, e.g.*, Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61, at 3 ("Plaintiff states that police officer Battista [ ] somehow was not mentioned within [the initial disclosures] but was present during [P]laintiff['s] assault and arrest.... In addition[,] in and around April of 2017[,] [P]laintiff, defense attorney, and [a] social worker viewed a record of a female officer [ ] assaulting [P]laintiff[.] [T]his video record is missing as evidence and has yet to surface[.... Battista[ ] somehow disappear[ed] from [the] CCRB investigation completely[.]"), 12 ("Police officer Battista was not included but is an Arresting officer present at the scene.").

[9]     Plaintiff alleges that, in response to his raising of the issue of doctored videos in *Walker v. Raja*, Corporation Counsel stated that it was the Kings County District Attorney's Office that had deleted portions of the video surveillance

tape, not Corporation Counsel. (Compl., Dkt. 1, at 15 (referring to the "Brooklyn" District Attorney's Office, which is the Kings County District Attorney's Office).) Although Corporation Counsel's above statement form its response to the motion to compel, *Walker v. Raja*, No. 17-CV-5202, Dkt. 91, at 1–2, does indicate that the copy of the video sent by the District Attorney's Office to Corporation Counsel was "incomplete" when compared to the BDS version provided to Plaintiff and the Court, that does not mean that the District Attorney's Office "doctored" the video; rather, it means only that the Office did not provide the entire video to Corporation Counsel. "Incomplete" is not the same as "doctored" or equivalent to altering images. Indeed, contrary to Plaintiff's contention, he received the entire video from BDS in discovery, and there is no basis for Plaintiff's claim that any party "doctored" video evidence in *Walker v. Raja*.

**\*4** Plaintiff also moved for sanctions against the CCRB and Corporation Counsel, [10] *see* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Mar. 4, 2019), ECF No. 93, which the Honorable Lois Bloom denied on the grounds that there was "no record evidence that [D]efendants [had] disobeyed a discovery order or engaged in sanctionable conduct. Defendants have provided the videos to plaintiff as they were received by their office," 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 2, 2019), ECF No. 95.

[10]    In a submission filed April 1, 2019, Plaintiff asserted that, though Defendants "produced 3 doctored video segments" during discovery, "the building where the incident occurred had an adjoining store," which "had at least one other camera that would have recorded a more concise detailed description concerning relevant footage of [Officer] Vazquez strategically taking a firearm from a civilian then carefully planting [the] firearm near plaintiff['s] feet as he is beaten by other defendants." Plaintiff's Supportig Evidence, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 1, 2019), ECF No. 94, at 5. Plaintiff claimed that he "attempted to obtain this footage on multiple occasions[,] but was unsuccessful due to preventive tactics by counsel for the defendants." (*Id.*)

The parties cross-moved for summary judgment, and by Memorandum and Order on February 7, 2020, the Court denied Plaintiff's motion and partially granted and denied Defendants' motion, dismissing some of Plaintiff's claims. *Walker*, 2020 WL 606788, at *13. That case is pending trial as to the few remaining claims, *i.e.*, claims for excessive force and failure to intervene as to Defendants Raja, Vazquez, Brown, Chow, and Battista, and failure to supervise as to Defendant Rahman. [11] *See id.* In anticipation of trial, the Court, *inter alia*, granted the defendants' motion in limine to preclude Plaintiff "from proffering any evidence to suggest that any material was doctored in this matter." Court's Motions *in Limine* Chart, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020) ECF No. 144, at 2, #9.

[11]    On April 12, 2021, the Court referred the case to the Trial Ready Rapid Mediation Program, and requested the ADR Department to secure pro bono counsel for Plaintiff. *See* 4/12/2021 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 12, 2021).

Plaintiff filed the instant action thereafter.

**III. The Instant Action**

On October 29, 2020, Plaintiff commenced the instant action against the City, BDS, the CCRB, the IAB, and Corporation Counsel based on the alleged misconduct relating to investigations into his January 2017 arrest and the discovery process in *Walker v. Raja*. (Compl., Dkt. 1.) On January 21, 2021, Plaintiff filed a submission entitled "Amended Complaint," consisting of three pages summarizing the exhibits he seeks to incorporate in his Complaint. (Dkt. 21.) On February 9, 2021, Plaintiff filed the Amended Complaint, adding as defendants the NYPD and individual employees of the NYPD, CCRB, and Corporation Counsel in their individual and official capacities. [12] (*See generally* Am. Compl., Dkt. 24-1.)

[12]    Specifically, Plaintiff seeks to bring claims against Detective Courtney Winston, Detective Raymond Higgins, Detective Jason Guzman, Detective Patrick Jean Pierre, and Ranking Detective Daniel Perrino of the NYPD's 70th Precinct; Chairman Frank Davie and employees A. Wassim, S. Carceterra, M. Rivardene, and Records Access Officer Alexander George of the CCRB; Captain Brian White, Lieutenant Dwayne Watson, Sergeant Moode, Detective Carmelo Rivera, and Detective Rashad Vandross of the NYPD's IAB and 67th precinct; and Corporation Counsel attorneys

2021 WL 1838277

Nelson Genevieve, Daniel H. Oliner, Allyson Nicole Brown, and Christopher D. Deluca.

**\*5** For the reasons discussed below, the Court dismisses the Amended Complaint in its entirety, and grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days.

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "If [a] liberal reading of the complaint gives any indication that a valid claim might be stated, the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at \*2 (E.D.N.Y. Apr. 16, 2019) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Title 28 of the United States Code § 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, pursuant to the IFP statute, a district court must dismiss a case if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Although Plaintiff's Amended Complaint is slightly confusing in that he frequently references legal phrases without substantively elaborating on his allegations, he appears to center his claims on five main theories: (1) the CCRB and IAB failed to properly investigate his claims against his arresting officers, and the City, CCRB, IAB, Corporation Counsel, and BDS subsequently conspired to cover up the mishandled investigation by doctoring video evidence and failing to disclose the identities of Officers Chow and Battista in *Walker v. Raja*; (2) NYPD officers pressured witnesses and covered up evidence in the lead-up to Plaintiff's grand jury indictment; (3) the City's failure to train led to the foregoing violations; (4) the City and BDS failed to accommodate Plaintiff's visual impairment during his underlying criminal proceedings; and (5) the City failed to establish an independent commission to investigate Plaintiff's claims against his arresting officers. Based on these factual allegations, Plaintiff asserts claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against the City, the NYPD, individual NYPD officers, BDS, BDS attorney Regis, the CCRB, CCRB employees, the IAB, IAB employees, Corporation Counsel, and Corporation Counsel attorneys; claims pursuant to Title II of the ADA and the Rehabilitation Act against the City, BDS, and BDS attorney Regis; and state-law claims against the City. (Am. Compl., Dkt. 24-1, at 23–43.) [13]

[13]    Though not distinguishing between claims under Section 1983 and state law, Plaintiff explains that he "asserts the following thirteen Counts of which all are amongst defendants": (1) deliberate indifference, (2) negligence, (3) conspiracy, (4) failure to intervene, (5) fraudulent misrepresentation or deception, (6) abuse of process, (7) intentional infliction of emotional distress, (8) equitable estoppel, (9) due process, (10) equal protection, (11) procedural due process, (12) fabrication of evidence and failure to investigate, and (13) substantive due process. (Dkt. 26, at 4.)

### I. Section 1983

**\*6** 42 U.S.C. § 1983 ("Section 1983") "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). In order to maintain a civil rights action under Section 1983, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person

2021 WL 1838277

acting under color of state law[.]" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Second, the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo*, 592 F.3d at 127; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

#### A. Claims Against the NYPD, IAB, CCRB, and Corporation Counsel

As an initial matter, claims against agencies of the City of New York, including the NYPD, IAB, the CCRB, and Corporation Counsel, are not allowed, and instead, must be brought against the City of New York. *See* N.Y.C. Charter, ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Ojeda v. Mendez*, No. 20-CV-3910 (EK) (LB), 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (dismissing claims against, *inter alia*, the City and suing non-suable entities (citing N.Y.C. Charter, ch. 17, § 396)); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City." (citation omitted)); *Wingate v. City of New York*, No. 14-CV-4063 (ARR) (LB), 2018 WL 3863439, at *10 (E.D.N.Y. Aug. 14, 2018) ("Plaintiff's claims against Corporation Counsel ... are dismissed because [it is] not [a] suable entit[y]." (citing, *inter alia*, N.Y.C. Charter ch. 17, § 396)).

Therefore, Plaintiff's claims against the NYPD, the IAB, the CCRB, and Corporation Counsel are dismissed for failure to state a claim.

#### B. Claims against BDS and BDS Attorney Regis

Plaintiff's Section 1983 claims against BDS and BDS attorney Regis also must be dismissed. Though BDS and Regis were appointed by the state court as Plaintiff's counsel in his underlying criminal case, as a general matter, Plaintiff cannot sue his public defender under Section 1983. *see Polk County. v. Dodson*, 454 U.S. 312, 324–25 (1981) (holding that public defenders do not act under color of law when they represent defendants and are not subject to suit under Section 1983); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.

1997) ("[C]ourt-appointed attorneys performing a lawyer's traditional functions as counsel to defendant[s] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." (internal citation omitted)).

> Absent special circumstances suggesting concerted action between an attorney and a state representative, the representation of a defendant by private counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender.

*Liverpool v. City of New York*, No. 19-CV-5527 (CM), 2019 WL 3745734, at *2 (S.D.N.Y. Aug. 7, 2019) (citing, *inter alia, Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005)); *see also id.* at *3 (noting that the plaintiff "has not stated a § 1983 claim against" a BDS attorney, who is a "private part[y] who do[es] not work for any state or other government body"). Although Plaintiff claims that BDS attorney Regis prevented Plaintiff from seeing and accessing certain surveillance tape evidence in an effort to "insulate [the] seven arresting officers" (Am. Compl., Dkt. 24-1, at 16), these claims neither sufficiently allege "concerted action" between Regis and "state representatives," nor are they supported by any factual allegation in the Complaint or Amended Complaint. Given the wholly conclusory nature of Plaintiff's assertion that Defendant Regis sought to protect the arresting officers, the Court cannot find any "special circumstance" that justifies deviating from the fundamental principle that Plaintiff's court-appointed defense counsel cannot be sued as state actors under Section 1983.

**\*7** Therefore, Plaintiff's Section 1983 claims against BDS and Regis are dismissed for failure to state a claim.

#### C. Claims Against NYPD Officers

When asserting claims under Section 1983 against government officials, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v.*

*Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). In connection with his claims against NYPD 70th Precinct Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, Plaintiff alleges that the detectives,

> acting under the color of state law, also as arms to the (NYPD), in concert with the [BDS], in a Sin Qua Non to insulate seven arresting officers police misconduct by suppressing exculpatory impeaching evidence, falsifying arrest reports, and allowing inadmissible tainted / manufactured evidence during plaintiff's grand jury proceedings. [The detectives] amplified their conduct by excluding two crucial arresting officers, (William Chow) [ ], (Elisa Battista) police misconduct, obstructed the due course of justice. [The detectives] dissuaded arresting officers from telling the truth during secretive meeting of the minds, while forwarding false reports to the grand jury resulting in perjury of witnesses to deprive, oppress, annoy, wantonly motivated to do plaintiff harm in order to insulate seven arresting officers['] police misconduct in order to obtain a collateral objective that's outside legitimate ends of process.

(Am. Compl., Dkt. 24-1, at 27–28.) [14] As to supervisory officers Captain White, Lieutenant Watson, and Sergeant Moode, Plaintiff alleges simply that they "failed t[o] intervene to prevent such violations [by the IAB] from occurring[,] resulting in injuries of fraudulent concealment [and] [subjecting] [P]laintiff [to] discovery harm that was suffered in deception to delay in bring[ing] [ ] suit by keeping investigation reports from [P]laintiff." (*Id.* at 39.)

[14]  In an affirmation attached to his Amended Complaint, Plaintiff asserts further allegations against Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, but these allegations are similarly vague and fail to allege the detectives' personal involvement. (*See* Dkt. 24-2, at 3–7.)

To the extent Plaintiff argues that his arrest and criminal charges were premised on the presentation of "manufactured evidence" during grand jury proceedings, the Court already dismissed such a claim in *Walker v. Raja*, finding that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," and thus Plaintiff cannot establish that "fabricated evidence le[d] to a false charge against him." *See* 2020 WL 606788, at *10. Furthermore, to the extent this claim calls into question the validity of Plaintiff's conviction, it is barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which holds that a state prisoner's Section 1983 action is barred if success in that action would necessarily demonstrate the invalidity of a criminal conviction or sentence. *see Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis removed)). Lastly, Plaintiff's general, conclusory statements fail to allege the individual officers' personal conduct that led to the deprivation of Plaintiff's constitutional rights. In fact, Plaintiff fails to state *any* factual allegations as to Detectives Rivera and Vandross of the 67th precinct, despite naming them as Defendants in the Amended Complaint.

**\*8**  Plaintiff's claims against the individual NYPD officers of the 70th Precinct are thus dismissed, with leave to replead facts relating to their individual conduct, provided that any repleaded allegations do not relate to the due-process claim the Court has already dismissed in *Walker v. Raja*. *See* 2020 WL 606788, at *10.

### D. Claims against CCRB Employees

To the extent Plaintiff brings claims against CCRB employees —Chairman Frank Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carceterra—for their involvement in the allegedly defective investigation into Plaintiff's arresting officers, the claims are dismissed for lack of personal involvement and for failure to state a claim. First, with respect to Defendants Davie, Alexander, Rivardene, and Carceterra, Plaintiff alleges only that they participated in the CCRB's decision absolving the

arresting officers of responsibility, which, in itself, does not constitute a violation of Plaintiff's rights. As to CCRB investigator A. Wassim, Plaintiff alleges:

> (CCRB) field investigator, (A. Wassim) interrogated plaintiff's Brooklyn Public Defender, (Danielle Regis) and with a conscious disregard withheld records of interrogations, an overt act in concealing meetings of the minds that exhibited deliberate indifference by turning their heads to the obvious by disavowing, exculpatory, probative, impeaching evidence in interference with state and federal Court proceedings, unlawful actions motivated by an intent to deprive plaintiff Equal protection of the laws. Defendants refrained and dissuaded arresting officers from giving the truth, concerning accurate statements involving the plaintiff incident on, (Jan 8. 2017) resulting in false oral and written statements preventing an honest investigation when false and defamatory statements of facts in their final determination caused a deprivation of plaintiff's civil rights, pursuant to, 42 USC § 1985, while inconsistent with the, IAB investigation holding a different set of arresting officers in their investigation, violation of plaintiff's Due process. Private actors acted in concert with the IAB and Corporation Counsel to inflict an unconstitutional Injury, causing damages[.]

(Am. Compl., Dkt. 24-1, at 33.) Beyond the conclusory statements couched in legal terminology, Plaintiff has failed to explain exactly what "truth" Defendant Wassim dissuaded the officers from telling, and what "false and defamatory statements" were induced. Without more, the claim against Defendant Wassim cannot proceed.

Furthermore, Plaintiff fails to allege the violation of any constitutional right in connection with the CCRB investigation and final decision. "It is well[-]established that there is no constitutional right to an investigation by government officials." *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014) (internal quotations, alterations, and citations omitted); *see also Koulkina v. City of New York*, 559 F. Supp. 2d 300, 316 (S.D.N.Y. 2008) ("[T]here is no federal constitutional right to a[ ] [CCRB] investigation." (citing *Blount v. Swiderski*, No. 03-CV-0023 (ENV), 2006 WL 3314635 at *12 (E.D.N.Y. Nov. 14, 2006)); *McCaffrey v. City of New York*, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[A] 'failure to investigate' is not independently cognizable as a stand-alone claim[.]"). Plaintiff thus lacks an actionable claim against the CCRB, the IAB, and their employees for allegedly failing to investigate his claims against the arresting officers.

**\*9** Therefore, Plaintiff's claims against CCRB Chairman Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carcetera are dismissed.

### E. *Monell* Claims Against the City

Plaintiff alleges that the City failed to protect his constitutional rights by, *inter alia*, "fail[ing] to train and supervise" its employees, "creating and contin[uing] in policies or customs upon having a conscious disregard in private and government municipalities in protecting plaintiff's (Const Rights)," and failing to

> set[ ] in place a Commission (Watchdog agency) in preventing private and government entity's in mishandling, and disavowing information involving seven arresting officers police misconduct, revealed upon their investigative work (Collectively) by subpoenaing records resulting in overt acts by withholding, Aided cards, doctor[ing] investigative records, video surveillance tapes, TRI audio radio runs, and disciplinary records[.]

(Am. Compl., Dkt. 24-1, at 23–25.)

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 27 of 106

Plaintiff's claims against the City of the New York cannot proceed. A municipality can be liable under Section 1983 if the plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Four types of practices may give rise to a Section 1983 claim against a municipality:

> (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference.

*Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018) (internal quotation marks and citation omitted); *Safran v. Singas*, No. 20-CV-4537 (PKC) (SMG), 2020 WL 7125232, at *4 (E.D.N.Y. Dec. 4, 2020) (citation omitted). Critically, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

## 1. Underlying Constitutional Violation

Plaintiff purports to bring claims under the Sixth, Fifth, and Fourteenth Amendments, but fails to allege constitutional violations by any state actor.

Plaintiff fails to state a Six Amendment claim.

To prevail on a claim for denial of the constitutional right to a fair trial, a plaintiff must demonstrate that "(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."

**\*10** *Case v. City of New York*, 408 F. Supp. 3d 313, 322–23 (S.D.N.Y. 2019) (quoting *Caravalho v. City of New York*, 732 F. App'x 18, 24 (2d Cir. 2018) (summary order)). The fabricated information must be "both falsed and likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016). Plaintiff has failed to sufficiently allege any element of a Sixth Amendment violation. As discussed, he offers only conclusory assertions that evidence was "manufactured" by NYPD officers and others without providing any factual allegations to support these claims, such as what evidence was allegedly fabricated and forwarded to prosecutors, by whom, and when, and how that evidence might have affected a jury's verdict. Furthermore, to the extent Plaintiff alleges that NYPD officers mishandled investigations leading up to his criminal charges, "in the context of § 1983, allegations of officers' failure to investigate are considered under the rubric of false imprisonment, false arrest, or malicious prosecution." *Campbell v. Giuliani*, No. 99-CV-2603 (JG), 2000 WL 194815, at *3 n.6 (E.D.N.Y. Feb. 16, 2000) (citing *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998)); *see also Luck v. Westchester Med. Ctr.*, No. 17-CV-9110 (NSR), 2020 WL 564635, at *7 (S.D.N.Y. Feb. 4, 2020) (collecting cases). For the same reasons set forth in *Walker v. Raja*, Plaintiff fails here too to state a claim for false imprisonment, false arrest, or malicious prosecution. Thus, Plaintiff's Sixth Amendment claims are dismissed.

As to any Fifth Amendment claims Plaintiff seeks to bring, the "Fifth Amendment only applies to claims against the federal government," and not the Defendants in this case. *see Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 412 n.1 (S.D.N.Y. 2013). Any Fifth Amendment claims are thus dismissed.

Plaintiff's claims of Fourteenth Amendment violations pursuant to Section 1983 are also dismissed for failure to state a claim. First, to the extent Plaintiff alleges an equal-protection violation, he has failed to make the requisite factual allegations. "To prove a violation of the Equal Protection Clause ... [,] a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination ... [and] that the

disparity in treatment cannot survive the appropriate level of scrutiny[.]" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted). Plaintiff has not alleged facts from which to infer that Defendants acted with any racial or otherwise impermissible animus, or that Plaintiff was treated differently from any similarly situated persons.

Furthermore, as discussed above, to the extent Plaintiff argues that his procedural due process rights were violated by the mishandling of investigations into his claims against the officers by the CCRB, the IAB, and their employees, these allegations do not give rise to a constitutional violation. *See supra* Section I.D.

Nor does the alleged withholding of evidence and alteration of video surveillance footage in *Walker v. Raja* amount to a constitutional violation. Though Plaintiff alleges that Defendants withheld evidence regarding Officers Chow's and Battista's involvement in the January 2017 altercation, Plaintiff faced no barriers in adding Officers Chow and Battista as Defendants in his amended complaint in *Walker v. Raja*. In fact, the excessive force claims in that case against the NYPD Officers, including Officers Chow and Battista, are currently pending trial. Though Plaintiff was not able to name Officers Chow and Battista as defendants as early as he otherwise may have liked, this delay does not violate Plaintiff's constitutional rights. *Cf. Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." (internal quotations and citation omitted)); *see also Smith v. Annucci*, No. 18-CV-1107 (DNH) (DJS), 2019 WL 11727264, at *4–5 (N.D.N.Y. Jan. 16, 2019) ("A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts. Instead, a plaintiff must demonstrate actual injury by establishing that the denial hindered his efforts to pursue a non-frivolous legal claim." (internal quotations and citations omitted)).

 **\*11** Finally, to the extent Plaintiff wishes to hold the Defendant NYPD Officers and/or Corporation Counsel accountable for "derelict tactics" during discovery, the correct mechanism through which to do so is moving for sanctions in that case, which Plaintiff has already, albeit unsuccessfully, done. *See* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Mar. 4, 2019), ECF No. 93; 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Apr. 2, 2019), ECF No. 95. And as discussed above, the issue of the allegedly doctored video evidence

was addressed and rejected by the Court in *Walker v. Raja*. *See, e.g.*, *Walker*, 2020 WL 606788, at *3 n.6; Transcript of 8/11/2020 Pretrial Conference, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020), at 25:15–24 (the Court stating: "The bottom line is I have not seen any evidence, Mr. Walker, about the tapes to show that this tape has been doctored. I have viewed the video surveillance a number of times and it certainly depicts the event that you are complaining about in which you say that the officers use excessive force. And obviously, I relied in part o[n] my viewing of that video surveillance to allow your excessive force claim to go through. So at this point, again I will just reiterate, that I do not see any basis for your claim that the video surveillance footage was doctored.").

In sum, Plaintiff has failed to sufficiently allege a constitutional violation by any state actor, which, in itself, requires dismissal of his *Monell* claims against the City.

### 2. Custom or Policy

Even if this were not the case, the allegations in Plaintiff's Amended Complaint do not give rise to a *Monell* claim against the City. Plaintiff proffers two theories of liability against the City under *Monell*: that the City (1) failed to train and supervise its employees, exhibited deliberate indifference to Plaintiff's rights, and created a policy or custom that resulted in the deprivation of Plaintiff's rights (Am. Compl., Dkt. 24-1, at 23–24); and (2) consciously disregarded Plaintiff's equal-protection and due-process rights, and rights under the ADA, by failing to establish an independent Commission to investigate Plaintiff's claims against the officers (*id.* at 24–25). (*see also id.* at 14 ("Plaintiff advance[s] two theories of municipal liability. First asserts that the City has a custom of zealously promoting debating science in mishandling investigations failed to train employees[.]")

However, Plaintiff offers only conclusory statements in support of his claims that the City failed to train and supervise its employees or created a policy or custom that resulted in the deprivation of Plaintiff's rights. (*See, e.g.*, Am. Compl., Dkt. 24-1, at 23–24.) Plaintiff argues, for example, that the City "knew of the moral certain[t]y that private and government superiors and their subordinates would acquire legally blind individuals (clients)," and that the failure to train subordinates pursuant to the ADA "will virtually always lead to a substantial violation[ ], in Due process [and] Equal protection[.]" (*Id.* at 12.) Plaintiff also

2021 WL 1838277

argues that the City failed to properly train its agencies, presumably the CCRB and the IAB, "in handling police misconduct allegations and records," thereby insulating the seven arresting officers and violating Plaintiff's Fourth and Fourteenth Amendment rights. (*Id.* at 13.) Such "boilerplate assertion[s]" are insufficient to state a *Monell* claim. *see Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *6 (S.D.N.Y. Feb. 25, 2021) (collecting cases); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (same). Nor does the decision against establishing an independent Commission (*e.g.*, Am. Compl., Dkt. 24-1, at 24–25)—a discretionary choice by the City— arise to a conscious disregard of Plaintiff's rights. *see Doe*, 2018 WL 3824133, at *8.

Therefore, Plaintiff's *Monell* claims against the City are dismissed for failure to state a claim. *see Johnson v. City of New York*, No. 18-CV-4030 (MKB), 2020 WL 249100, at *2 (E.D.N.Y. Jan. 16, 2020) (dismissing a *Monell* claim because the plaintiff failed to allege facts "to support an inference that the City had an official policy or custom that caused a violation of any federally protected right").

## II. Sections 1985 and 1986

**\*12** To the extent Plaintiff alleges a conspiracy to deprive him of constitutional rights under Sections 1985 and 1986, those claims are dismissed as to all Defendants.

> To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A section 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotations and citations omitted); *see also Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order) ("To state a conspiracy claim under 42 U.S.C. § 1985, App ellant must have alleged: (1) some racial or other class-based discriminatory animus underlying the Appellees' actions; and (2) that the conspiracy was aimed at interfering with Appellant's protected rights." (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993))).

With respect to his claims under Sections 1985 and 1986, Plaintiff alleges that Defendants

> held secret meetings of the minds, leading to issuing subpoenas, conducting interrogations, communication through e-mails, coming into contact, and further overt acts in the suppression of exculpatory evidence, unreasonably prolonging investigations, while doctoring records, video, audio recordings, falsifying reports and dissuading arresting officers from telling the truth, fraudulent concealment caused plaintiff to suffer possible discovery deception wrongly deceived.

(Am. Compl., Dkt. 24-1, at 11–12.)

These allegations plainly fail to state a claim under Section 1985(3). First, they are "nothing more than conclusory allegations of a conspiracy between and among Defendants." *see DuBois v. Bedford-Flatbush Chiropractic, P.C.,* 409 F. Supp. 3d 62, 67 (E.D.N.Y. 2019). Second, they do not suggest any agreement to violate constitutional rights based on class-based discriminatory animus. *see Brito*, 403 F. App'x at 621. Accordingly, Plaintiff's Section 1985 claim must be dismissed. *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the

2021 WL 1838277

minds"); *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (per curiam).

Since Plaintiff's Section 1985 conspiracy claim fails, his Section 1986 claim also fails. *see Graham v. Henderson,* 89 F.3d 75, 82 (2d Cir. 1996) ("[A] § 1986 claim is contingent on a valid § 1985 claim[.]"); *see also Wang v. Off. of Pro. Med. Conduct,* 228 F. App'x 17, 19 (2d Cir. 2007) (summary order). [15]

[15]    42 U.S.C. § 1986 creates civil liability for failing to prevent actions taken pursuant to a § 1985 conspiracy: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented ...." 42 U.S.C. § 1986.

**\*13** Therefore, Plaintiff's Section 1985 and 1986 claims are dismissed for failure to state a claim.

### III. ADA and Rehabilitation Act

Plaintiff alleges that the City failed "to implement adequate training courses to [BDS] in safeguarding [P]laintiff's [rights] pursuant to [the] ADA [and] Rehabilitation Act[.]" (Am. Compl., Dkt. 24-1, at 30.) He asserts that the City should have "implemented polic[ies, or customs fit in training Court appointed attorneys when faced with representing qualified individuals" (*id*), and that BDS attorney Regis's meeting with Plaintiff without "a qualified interpreter (advocate)" and "any auxiliary aids and devices for [P]laintiff's disability" violated Plaintiff's rights (*id.* at 31).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing, *inter alia,* 29 U.S.C. § 794(a)). "In most cases, the standards are the same for actions under both statutes." *Harris,* 572 F.3d at 73 (internal quotations, alteration, and citation omitted). The Court thus analyzes Plaintiff's claims with reference only to Title II of the ADA, but the same analysis applies for any claim under the Rehabilitation Act.

To assert a claim under Title II, Plaintiff "must demonstrate that '(1) he is a qualified individual with a disability; (2) [Defendants] [are] subject to [the statute]; and (3) he was denied the opportunity to participate in or benefit from [ ] [D]efendant[s'] services, programs, or activities, or was otherwise discriminated against by [D]efendant[s] because of his disability." *Disabled in Action v. Bd. of Elections,* 752 F.3d 189, 196–97 (2d Cir. 2014) (footnote omitted) (quoting *McElwee v. County of Orange,* 700 F.3d 635, 640 (2d. Cir. 2012)). An ADA "plaintiff may base [his] discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Davis v. Shah,* 821 F.3d 231, 260 (2d Cir. 2016); *see also Disabled in Action,* 752 F.3d 189, 197 (2d Cir. 2014) (ellipsis omitted) ("To assure meaningful access, 'reasonable accommodations in the [public entity]'s program may have to be made.' " (quoting *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003))).

Under the applicable standards, there are several limitations to Plaintiff's ADA claims. First, Title II claims may proceed against individuals only if they are government officers acting in their official capacity. *see Harris,* 572 F.3d at 72. Plaintiff thus cannot bring an ADA claim against BDS attorney Regis, a private individual (who does not qualify as a state actor, as previously discussed). Plaintiff's ADA claim against BDS attorney Regis is therefore dismissed. *see Green v. City of New York,* 465 F.3d 65, 76 (2d Cir. 2006) (affirming dismissal of ADA claim against a private individual).

**\*14** Second, "Title II applies only to state and local governments, their instrumentalities, and commuter authorities." *Pierce v. Fordham Univ., Inc.,* 692 F. App'x 644, 646 (2d Cir. 2017) (summary order) (citing 42 U.S.C. §§ 12131, 12132; *Mary Jo C. v. N.Y. State & Local Ret. Sys.,* 707 F.3d 144, 162–6 (2d Cir. 2013)). The Second Circuit interprets " 'instrumentality' ... as referring to a creature of a state or municipality." *Green,* 465 F.3d at 79. A private entity "performing services pursuant to a contract with a municipality[,] even if it does so according

2021 WL 1838277

to the municipality's rules and under its direction, is not a creature of any governmental entity." *Id.* As discussed above in the dismissal of § 1983 claims against BDS, public defender organizations are private entities. Thus, Plaintiff's ADA claims against BDS are similarly dismissed. *see Browdy v. Karpe*, 131 F. App'x 751, 753–54 (2d Cir. 2005) (summary order) ("[Plaintiff's] ADA claims also were properly dismissed because he has sued his [public defenders], not [a] public entity[.]").

Third, "it is well[-]settled that monetary damages are [ ] available under Title II of the ADA [only] where the Plaintiff is able to demonstrate intentional discrimination." *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)), *aff'd*, 633 F. App'x 14 (2d Cir. 2016) (summary order). To prevail on a claim for intentional discrimination under Title II, "a plaintiff must prove a policymaker's 'deliberate indifference to the rights secured the disabled by those statutes,' in addition to the other elements of a Title II claim." *Gershanow v. City of Rockland*, No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (quoting *KM ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 358 (S.D.N.Y. 2005)).

Unless Plaintiff properly pleads the City's intentional discrimination to his rights secured by the ADA and Rehabilitation Act, Plaintiff may claim only injunctive relief. Plaintiff's ADA and Rehabilitation Act claims against the City are thus dismissed, with leave to replead. If Plaintiff seeks to replead his claims under the ADA and Rehabilitation Act, he should make sure to identify the program, benefit, or activity that he was denied the ability to participate in due to his disability.

## IV. State-Law Claims

To the extent Plaintiff purports to bring state-law claims for intentional infliction of emotional distress ("IIED"), respondeat superior, or negligence (*see* Dkt. 26, at 4), these claims are dismissed with leave to replead.

### A. Intentional Infliction of Emotional Distress

"Under New York Law, [IIED] has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial possibility of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Saleh v. United States*, No. 12-CV-4598 (KBF), 2013 WL 5439140, at *11 (S.D.N.Y.

Sept. 27, 2013) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). "Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the courts to decide." *Frigerio v. United States*, No. 10-CV-9086 (SAS), 2011 WL 3163330, at *9 (S.D.N.Y. July 22, 2011). The extreme and outrageous requirement is met "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (internal quotations and citations omitted). "[T]he requirements of the rule are rigorous, and difficult to satisfy. Given the 'rigorous' requirements, courts often dismiss claims under the 'extreme and outrageous conduct' prong as a matter of law." *Reid v. Sack*, No. 20-CV-1817 (VM), 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).

**\*15** Plaintiff fails to allege that Defendants engaged in extreme and outrageous conduct with the intent to cause him emotional distress, or that he suffered emotional distress as a result of their conduct. To the extent Plaintiff's claim is that some Defendants engaged in extreme and outrageous conduct by "manufacturing" or "doctoring" evidence, that conclusory assertion, as previously discussed, is insufficient. Plaintiff's IIED claim therefore is dismissed.

### B. Respondeat Superior

Because Plaintiff has not demonstrated an "entitlement to recover against [any City] employee," his claim against the City under the doctrine of respondeat superior fails. *see Ferreira v. City of Binghamton*, 975 F.3d 255, 278 (2d Cir. 2020).

### C. Negligence

Plaintiff asserts that the City "was grossly negligent upon setting in place a contractual agreement between, (the City) and [BDS]." (Am. Compl., Dkt. 24-1, at 29.) Under New York law, an essential element of a negligence claim against a municipality is a "special duty to the injured person, in contrast to a general duty owed to the public." *Ferreira*, 975 F.3d at 283 (quoting *McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009)), *certified question accepted*, 35 N.Y.3d 1105 (2020).

New York courts have recognized the existence of such a duty where either "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the

government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition."

*Id.* at 281 (quoting *Applewhite v. Accuhealth, Inc.*, 972 N.Y.S.2d 169, 173 (2013)). Plaintiff has alleged no such duty. His negligence claim against the City is therefore dismissed with leave to replead.

## V. Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days of this Memorandum and Order. "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when it has dismissed all claims over which it has original jurisdiction." *Liverpool*, 2019 WL 3745734, at *3 n.2 (internal quotations omitted). Because the Court grants Plaintiff leave to replead his federal claims, Plaintiff is also granted leave to replead his state-law claims.

Plaintiff's leave to amend his pleadings is subject to the following limits: (1) Plaintiff should not assert § 1983 claims against the CCRB, IAB, Corporation Counsel, and BDS because, as discussed above, they are non-suable entities under § 1983; (2) Plaintiff should not assert claims relating to the CCRB or IAB investigations against the arresting officers because, as discussed above, there is no constitutional right to a government investigation; (3) Plaintiff should not assert claims relating to the delayed disclosure of Officers Chow's and Battista's involvement in his arrest because, as discussed above, Plaintiff suffered no prejudice and was able to timely add them as defendants in *Walker v. Raja*; (4) Plaintiff should not re-assert any claim that surveillance videotape was "doctored," or that "manufactured" or "fabricated" evidence was produced or introduced during grand jury proceedings; and (5) Plaintiff should not assert-due process claims relating to his underlying arrest and indictment, as the Court has already determined in *Walker v. Raja* that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," *Walker*, 2020 WL 606788, at *10. *see Hunt v. All. N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.").

**\*16** Plaintiff is advised that the Second Amended Complaint will completely replace the Amended Complaint, must be captioned "Second Amended Complaint," and shall bear the same docket number as this Memorandum and Order. Plaintiff is also advised that he should submit only one filing constituting his Second Amended Complaint, and that such filing need not include reproductions of court opinions to which Plaintiff cites. Plaintiff need not, and should not, file additional affirmations (*e.g.*, Dkts. 24-2, 26, 27) in connection with the Second Amended Complaint, and should submit only one copy of all further filings in this case. Furthermore, Plaintiff's Second Amended Complaint should reference only exhibits and documents filed in this action and bearing the same docket number as this Memorandum and Order.

Although the Court is obliged to allow Plaintiff to amend his complaint at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted), Plaintiff should proceed in good faith and he must refrain from setting forth conclusory statements (*i.e.*, statements not based on specific factual allegations) in support of his claims and repeating any claims that have been dismissed by this Order.

## CONCLUSION

For the reasons stated above, the Amended Complaint is dismissed in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). However, the Court grants Plaintiff's motion to proceed IFP and leave to file a Second Amended Complaint within sixty (60) days, as set forth above. All further proceedings shall be stayed for sixty (60) days or until Plaintiff files a Second Amended Complaint, whichever is earlier. If Plaintiff fails to file a Second Amended Complaint within the time allowed or fails to show good cause why he cannot, the Court shall direct the Clerk of Court to enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

## All Citations

Slip Copy, 2021 WL 1838277

**Walker v. City of New York, Slip Copy (2021)**

2021 WL 1838277

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

2021 WL 4472667

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. *

*　　Judge John G. Koeltl of the United States District
　　Court for the Southern District of New York, sitting
　　by designation.

## SUMMARY ORDER

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing him
to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns,*
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal,* 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro,* 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee,* 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling,* 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell,* 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4284564
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

David R. THOMAS, Plaintiff,

v.

Virginia BRASHER-CUNNINGHAM, et al., Defendants.

No. 3:19-cv-1981 (VAB)
|
Signed 07/27/2020

**Attorneys and Law Firms**

David R. Thomas, New Haven, CT, pro se.

Christopher M. Harrington, Jack G. Steigelfest, Howard, Kohn, Sprague & Fitzgerald, Hartford, CT, for Defendants.

### RULING AND ORDER ON MOTIONS TO DISMISS AND MOTION TO REMAND

VICTOR A. BOLDEN, UNITED STATES DISTRICT JUDGE

**\*1** David R. Thomas ("Plaintiff") sued Virginia Brasher-Cunningham, Stephen Dudley, Debora M. Hess, Sarah Beers, and Jean Gresham (collectively, "Individual Defendants"); the First Congregational Church of Guilford, the National Conference of the United Church of Christ, the Connecticut Conference of the United Church of Christ, and All Members of the First Congregational Church of Guilford (collectively, "Church Defendants"); and the Guilford Police Department, in Connecticut Superior Court. Compl., ECF No. 1-2 (July 31, 2019). Defendants subsequently removed the case to this Court. Notice of Removal, ECF No. 1 (Dec. 18, 2019).

Various Defendants have filed a total of five motions to dismiss. Mot. to Dismiss, ECF No. 19 (Jan. 6, 2020) ("National UCC Mot"); Mot. to Dismiss, ECF No. 23 (Jan. 8, 2020) ("Guilford FCC Members Mot."); Mot. to Dismiss, ECF No. 25 (Jan. 8, 2020) (duplicating ECF No. 23); Mot. to Dismiss, ECF No. 33 (Jan. 24, 2020) ("Individual & Church Defs.' Mot."); Mot. to Dismiss, ECF No. 35 (Jan. 24, 2020) ("Guilford PD Mot.").

Mr. Thomas has filed a motion to amend the Complaint to add defendants, Request for Leave to Amend Compl.,

ECF No. 47 (Feb. 10, 2020) ("Pl.'s Mot. to Amend"); and a motion to remand this case to Connecticut Superior Court, Mot. to Remand, ECF No. 39 (Feb. 7, 2020). Additionally, at the video hearing on pending motions, Mr. Thomas voluntarily moved to dismiss the Guilford Police Department, the National Conference of the United Church of Christ, and All Members of the First Congregational Church of Guilford from this case.

For the following reasons, Plaintiff's oral motion to dismiss the Guilford Police Department, the National Conference of the United Church of Christ, and All Members of the First Congregational Church of Guilford, ECF No. 67, is **GRANTED**; Defendants' motions to dismiss these same Defendants, ECF Nos. 19, 23, 25, 33 (in part), and 35, are **DENIED** as moot; Defendants' motion to dismiss any remaining Defendants, ECF No. 33 (in part), is **GRANTED;** Plaintiff's motion to amend, ECF No. 47, is **DENIED**; and Plaintiff's motion to remand, ECF No. 39, is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations [1]

[1]    All factual allegations are drawn from the Complaint and the first amendment to the Complaint. Compl., ECF No. 1-2 (July 31, 2019); Am. to Compl., ECF No. 26 (Jan. 8, 2020) ("First Am. to Compl.").

#### Parties

Mr. Thomas is a resident of Connecticut and has been a member of the First Congregational Church of Guilford ("Guilford FCC") in Guilford, Connecticut, since 1999. Compl. I ¶ 1. [2]

[2]    Plaintiff organizes the allegations in his Complaint into twenty-one counts and repeats paragraph numbers in different counts. The Court will cite to Counts (by roman numeral) and paragraph number for clarity.

Mr. Thomas has sued the Guilford Police Department. *Id.* II.

Additionally, Mr. Thomas has sued Church Defendants:

• Guilford FCC, allegedly a Connecticut Church "owned and operated by its Members and is associated with the United Church of Christ ["UCC"]," *id.* I ¶ 7;

**\*2** • All Members of the First Congregational Church of Guilford ("Guilford FCC Members"), *see, e.g., id.* XI ¶ 1;

• National Conference of the United Church of Christ ("National UCC"), *see, e.g., id.* VI ¶ 3;

• Connecticut Conference of the United Church of Christ ("Connecticut UCC") *see, e.g., id.*;

Mr. Thomas has also sued the following individuals:

• Debora M. Hess, allegedly Mr. Thomas's ex-wife, *see, e.g., id.* I ¶ 9;

• Virginia "Ginger" Brasher-Cunningham, allegedly Minister of Guilford FCC since July 2015, *id.* I ¶¶ 5, 7; and allegedly "an Ordained Minister of the United Church of Christ," *see, e.g., id.* VI ¶ 1;

• Stephen Dudley, allegedly Chair of the Church Council of Guilford FCC, *see, e.g., id.* I ¶ 7;

• Sarah Beers, allegedly Co-Chairperson of the Board of Deacons of Guilford FCC, *see, e.g., id.* IV ¶ 1; and

• Jean Gresham, allegedly Co-Chairperson of the Board of Deacons of Guilford FCC, *see, e.g., id.* IV ¶ 2.

## Factual Allegations

On April 29, 2000, Mr. Thomas and Ms. Hess were allegedly married at Guilford FCC, where they were both members. Compl. III ¶¶ 1–2.

From 2000 to 2015, Mr. Thomas allegedly "volunteered and served" Guilford FCC in various capacities. *Id.* III ¶ 3.

The Motto of the UCC and Guilford FCC, allegedly announced by Ms. Brasher-Cunningham at the beginning of each Sunday Service, is allegedly "No Matter Who You Are or Where You Have Been, You Are Welcome Here." *Id.* IX ¶ 1, XVII ¶ 1.

On July 24, 2015, Mr. Thomas was arrested, and he later was convicted and received a prison sentence. *See*

https://www.jud.ct.gov/crim.htm (follow "Convictions – by Docket Number" hyperlink; then enter Docket No. N23N-CR15-0207052-T); *see also* Compl. XIV ¶ 12, XVI ¶ 1.

When Mr. Thomas was initially incarcerated, a Co-Minister at Guilford FCC who is not named in this lawsuit allegedly visited him once. *Id.* XIV ¶ 6. She allegedly "entered the visiting room, picked up the inmate intercom telephone and said to the Plaintiff 'You are Evil[,'] hung up the telephone and left." *Id.* XIV ¶ 7.

In July 2015, Ms. Brasher-Cunningham allegedly became Minister at Guilford FCC, while Mr. Thomas was incarcerated. *Id.* XIV ¶ 4. Allegedly "strongly influenced by" the Co-Minister who allegedly told Mr. Thomas he was "evil," Ms. Brasher-Cunningham allegedly "never took the time to meet with Mr. Thomas to make an independent assessment of" him, and never visited Mr. Thomas even though he "informed [Ms.] Hess that [he] wanted [Ms. Brasher-Cunningham to] visit[ ]." *Id.* XIV ¶¶ 5, 8. She also allegedly never responded to Mr. Thomas's correspondence seeking spiritual guidance and other assistance during his incarceration. *Id.* XIV ¶ 6.

Ms. Brasher-Cunningham allegedly attended three of Mr. Thomas's court hearings "for the singular purpose to report the outcome of each [h]earing attended to [Ms.] Hess." *Id.* XIV ¶¶ 10, 12–13. Ms. Hess allegedly did not attend Mr. Thomas's hearings. *Id.* XIV ¶ 13.

Since July 24, 2015, Ms. Hess allegedly "has misrepresented facts, situations, and circumstances in regard to the Plaintiff." *Id.* VII ¶ 11.

In November 2016, Ms. Hess "initiated an action for the Dissolution of [their] Marriage." *Id.* III ¶ 5, XIV ¶ 14. Ms. Brasher-Cunningham allegedly accompanied Ms. Hess at each court appearance associated with the marriage dissolution action. *Id.* XIV ¶ 15. Ms. Brasher-Cunningham allegedly ignored Mr. Thomas at each of these hearings, and, "as a result," Mr. Thomas told Ms. Brasher-Cunningham that he "was not done dealing with the UCC Conference." *Id.* XIV ¶¶ 16–17. Mr. Thomas and Ms. Hess "are still involved in litigation in an attempt to resolve open issues." *Id.* III ¶ 10.

**\*3** On August 13, 2018, Mr. Thomas allegedly was released from prison. *Id.* XVI ¶ 1.

On March 20, 2019, Ms. Brasher-Cunningham and Mr. Dudley allegedly "served upon [Mr. Thomas] a 'Posting and Prevention of Entry and Warning Against Trespass on Property of First Congregational Church, Inc. of Guilford' " ("the Posting"). *Id.* I ¶ 7. Ms. Brasher-Cunningham and Mr. Dudley allegedly sent the Posting "without authority of any entity and without [a] vote of the Board of Deacons" at Guilford FCC. *Id.* V ¶ 12. Ms. Brasher-Cunningham had allegedly "agreed with [Ms.] Hess to make the Posting to [e]nsure that [Mr. Thomas] would never enter the [ ] Church again." *Id.* XVI ¶ 5.

Ms. Brasher-Cunningham allegedly stated that she "did not trust [Mr. Thomas] and that there was a group of people at [Guilford FCC] who also did not trust" him. *Id.* X ¶ 2.

After the Posting, Ms. Brasher-Cunningham allegedly filed a "false Police Report and a false request for surveillance" against Mr. Thomas. *Id.* II ¶ 7. Jeff Hutchinson, allegedly Chief and Officer in charge of the Guilford PD, *id.* II ¶ 15, "and/or another Officer" of the Guilford PD allegedly then contacted Mr. Thomas's Parole Officer and stated that Mr. Thomas "had done 'nothing wrong,' " First Am. to Compl. ¶ 17. This contact allegedly "provoke[d Mr. Thomas]'s Parole Officer to intervene and insist that [he] not attend" church at Guilford FCC." *Id.* ¶ 19.

The Sunday after the police report was allegedly filed, "the Guilford Police Department [allegedly] dispatched a Police Officer who was stationed outside [Guilford FCC] while the Plaintiff attended the Sunday Service." Compl. II ¶ 9.

**B. Procedural History**

On May 20, 2019, in a separate action, Mr. Thomas filed a complaint against the same defendants named in this action, in this Court. Compl., *Thomas v. Brasher-Cunningham, et al.*, 3:19-cv-758 (VAB) ("*Thomas I*"), ECF No. 1 (May 20, 2019) ("*Thomas I* Compl.").

On June 4, 2019, Magistrate Judge William I. Garfinkel issued a recommended ruling dismissing Mr. Thomas's first action. Recommended Ruling, *Thomas I*, ECF No. 8 (June 4, 2019) ("*Thomas I* Recommended Ruling").

On July 31, 2019, Mr. Thomas filed this Complaint against Defendants in Connecticut Superior Court for the Judicial District of New Haven. Compl.

On December 18, 2019, Defendants removed the case to this Court. Notice of Removal.

On January 6, 2020, the Guilford Police Department moved to consolidate this case with *Thomas I*. Mot. to Consol. Cases, ECF No. 17 (Jan. 6, 2020). On the same day, however, the Court adopted Judge Garfinkel's recommended ruling dismissing the case. Order Dismissing Compl., *Thomas I*, ECF No. 9 (Jan. 6, 2020) ("*Thomas I* Order of Dismissal"). The Court entered judgment in favor of defendants two days later. Judgment, *Thomas I*, ECF No. 10 (Jan. 8, 2020). The Court therefore subsequently denied the motion to consolidate as moot. Order, ECF No. 63 (July 2, 2020).

On January 6, 2020, the National UCC filed a motion to dismiss the Complaint for lack of personal jurisdiction, along with a supporting memorandum of law. National UCC Mot.; Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 20 (Jan. 6, 2020) ("National UCC Mem."). National UCC also submitted a return filed by a Connecticut State Marshal in Connecticut Superior Court detailing efforts to serve Defendants, Ex. A, ECF No. 20 at 7–9 (Jan. 8, 2020).

**\*4** On January 8, 2020, Guilford FCC Members filed two identical motions to dismiss for lack of personal jurisdiction. Guilford FCC Members Mot. (ECF Nos. 23, 25). In support of their motions, Guilford FCC Members submitted identical memoranda of law. Mem. in Supp. of Mot. to Dismiss, ECF No. 23-1 (Jan. 8, 2020) ("Guilford FCC Members Mem."); Mem. in Supp. of Mot. to Dismiss, ECF No. 25-1 (Jan. 8, 2020) (same). Guilford FCC Members also submitted the same return filed by a Connecticut State Marshal in Connecticut Superior Court detailing his efforts to serve Defendants, Ex. A, ECF No. 23-2 (Jan. 8, 2020) ("Officer's Return"), Ex. A, ECF No. 25-2 (Jan. 8, 2020) (same); and an affidavit from Stephen Dudley, Ex. C, ECF No. 23-4 (Jan. 8, 2020) ("Dudley Aff."); Ex. C, ECF No. 25-4 (Jan. 8, 2020) (same). [3]

[3]     The Court will cite to Guilford FCC Members' filings at ECF No. 23 in this ruling for clarity and consistency.

On January 8, 2020, Mr. Thomas filed an "Amendment to Complaint as a Matter of Course," amending paragraphs 17 through 30 of the allegations in his Complaint. Am. to Compl., ECF No. 26 (Jan. 8, 2020) ("First Am. to Compl.").

On January 24, 2020, Individual Defendants and Church Defendants jointly moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. Individual & Church Defs.' Mot. In support of their motion, Individual and Church Defendants filed a memorandum of law, Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 34 (Jan. 24, 2020) ("Individual & Church Defs.' Mem."). They also filed a copy of Mr. Thomas's complaint and the recommended ruling of dismissal in *Thomas I*. Ex. A—*Thomas I* Compl., ECF No. 34-1 (Jan. 24, 2020); Ex. B—*Thomas I* Recommended Ruling, ECF No. 34-2 (Jan. 24, 2020).

On January 24, 2020, the Guilford Police Department moved to dismiss Mr. Thomas's Complaint for failure to state a claim. Guilford PD Mot.; Mem. in Supp. of Mot. to Dismiss, ECF No. 35-1 (Jan. 24, 2020) ("Guilford PD Mem.").

On February 7, 2020, Mr. Thomas filed a motion to remand the case to Connecticut Superior Court. Mot. to Remand.

On February 10, 2020, Mr. Thomas filed a motion to amend his Complaint to add additional defendants and allegations as to those proposed defendants. Mot. to Amend; Proposed Second Am. to Compl., ECF No. 47-1 (Feb. 10, 2020).

On February 18, 2020, Mr. Thomas filed a second objection to Guilford FCC Members' motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 56 (Feb. 18, 2020) ("Pl.'s Obj. to Guilford FCC Members"). [4]

[4]  Mr. Thomas filed an earlier objection to Guilford FCC Members' motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 41 (Feb. 7, 2020). Because his objection at ECF No. 56 duplicates his earlier objection and adds several additional paragraphs, the Court will cite to his objection at ECF No. 56.

On February 18, 2020, Mr. Thomas also filed an objection to National UCC's motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 57 (Feb. 18, 2020) ("Pl.'s Obj. to National UCC"). [5]

[5]  Mr. Thomas had earlier filed two objections to National UCC's motion to dismiss which were identical to each other. Obj. to Mot. to Dismiss, ECF No. 29 (Jan. 13, 2020); Obj. to Mot. to Dismiss, ECF No. 40 (Feb. 7, 2020). Because his objection at ECF No. 57 duplicates these earlier

objections, but adds two additional paragraphs, the Court will cite to his objection at ECF No. 57.

On February 18, 2020, Mr. Thomas also filed an objection to the Guilford Police Department's motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 58 (Feb. 18, 2020) ("Pl.'s Obj. to Guilford PD").

On February 26, 2020, the Guilford Police Department filed an objection to Mr. Thomas's motion to amend, Obj. to Mot. to Amend, ECF No. 59 (Feb. 26, 2020) ("Guilford PD Obj. to Mot. to Amend"); and a reply in response to Plaintiff's objection to its motion to dismiss, Reply, ECF No. 61 (Feb. 26, 2020) ("Guilford PD Reply"). In support of its reply, Guilford Police Department submitted a copy of Chapter 3 of the Charter for the Town of Guilford. Ex. A, ECF No. 61-1 (Feb. 26, 2020) (Chapter C: Charter, Town of Guilford (Nov. 4, 2019)) ("Guilford Town Charter").

**\*5**  On February 26, 2020, Guilford FCC Members filed a reply in response to Plaintiff's objection to their motion to dismiss. Reply, ECF No. 60 (Feb. 26, 2020) ("Guilford FCC Members' Reply"). In support of their motion, they again submitted Mr. Dudley's affidavit, Ex. A—Dudley Aff., ECF No. 60-1 (Feb. 26, 2020); along with Guilford FCC's bylaws, Ex. B, ECF No. 60-2 (Feb. 26, 2020) (By-laws, The First Congregational Church of Guilford, Connecticut (last rev. Feb. 1, 2015)) ("Guilford FCC Bylaws").

On March 2, 2020, the Individual Defendants and Church Defendants jointly filed an objection to Mr. Thomas's motion to amend. Obj. to Mot. to Amend, ECF No. 62 (Mar. 2, 2020) ("Individual & Church Defs.' Obj. to Mot. to Amend").

On July 23, 2020, the Court held a hearing by videoconference on the pending motions to dismiss, National UCC Mot; Guilford FCC Members Mot.; Individual & Church Defs.' Mot.; Guilford PD Mot.; the motion to amend the Complaint, Pl.'s Mot. to Amend; and the motion to remand, Mot. to Remand. Minute Entry, ECF No. 66 (July 23, 2020). During the hearing, Mr. Thomas moved orally to dismiss all claims against the Guilford Police Department, National UCC, and Guilford FCC Members. Oral Motion, ECF No. 67 (July 23, 2020).

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1) Motions to Dismiss

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the issue of subject matter jurisdiction. In order for a court to exercise subject matter jurisdiction, either (1) the plaintiff must set forth a colorable claim arising under the U.S. Constitution or a federal statute, thus invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331; or (2) there must be complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy must exceed $75,000 under 28 U.S.C. § 1332. *See DaSilva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (identifying and discussing the two categories of subject matter jurisdiction). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Thus, where jurisdiction is lacking, dismissal is mandatory. *Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *Manway Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983).

Under Federal Rule of Civil Procedure 12(b)(1), the facts alleged in the complaint are viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in the plaintiff's favor. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("When reviewing a district court's Rule 12(b)(1) determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo.... Moreover[,] the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotations and citations omitted)).

"On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

### B. Rule 12(b)(2) Motions to Dismiss

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, the parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials.' ") (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

**\*6** "The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci*, 673 F.3d at 59; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at \*2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011), as amended (Sept. 23, 2011) (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### C. Rule 12(b)(5) Motions to Dismiss

A motion to dismiss under Federal Rule of Civil procedure 12(b)(5) due to insufficient service of process "must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007) (internal citation omitted); *see* Fed. R. Civ. P. 12(b)(5). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

### D. Rule 12(b)(6) Motions to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)

(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification ... to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

 **\*7**  A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d

471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### E. Rule 15 Motions to Amend the Complaint

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). Fed. R. Civ. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)).

### F. Motions to Remand

A district court will remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "[T]he party asserting jurisdiction bear the burden of proving that the case is properly in federal court[.]" *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). The party asserting jurisdiction "must support its asserted jurisdictional facts with 'competent proof' and 'justify its allegations by a preponderance of the evidence.' " *Southern Air, Inc. v. Chartis Aerospace Adjustment Servs., Inc.*, 2012 WL 162369, at \*1 (D. Conn. 2012) (quoting *United Food & Commercial Workers Union, 30 F.3d at 305*). "In light of the congressional intent to

restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).

## III. DISCUSSION

**\*8** Mr. Thomas has alleged multiple claims against various Defendants, organized into twenty-one counts. Mr. Thomas asserts together allegations that Defendants violated Article I Section 3 of the Connecticut Constitution, Conn. Gen. Stat. § 52-237, 28 U.S.C. § 4101, and his First and Fourteenth Amendment rights under 42 U.S.C. § 1983. *See* Compl. I ¶¶ 11–13, III ¶ 13, IV ¶ 28, V ¶ 12, VI ¶ 4, VII ¶ 14, VIII ¶ 6, X ¶¶ 1–2, XI ¶¶ 1–2, XII ¶ 3, XIII ¶ 3, XIV ¶ 18, XV ¶ 4, XVI ¶ 6, XVIII ¶¶ 3, 5, XIX ¶ 3, XX ¶ 8; *see also* First Am. to Compl. ¶¶ 22–29.

Mr. Thomas also asserts together state common law allegations of libel, slander, and defamation. Compl. I ¶ 19, II ¶ 14, III ¶¶ 9, 11–12, IV ¶ 27, V ¶ 12, VI ¶ 4, VII ¶ 14, VIII ¶ 6, IX ¶ 4, X ¶¶ 1–2, XI ¶¶ 1–2, XII ¶ 2, XIII ¶ 3, XV ¶ 4, XVI ¶ 6, XVIII ¶¶ 3, 5, XIX ¶ 3, XX ¶ 8; *see also* First Am. to Compl. ¶¶ 20.

Mr. Thomas also alleges fraud. Compl. IV ¶ 26; XVII ¶ 4. Finally, he alleges that Guilford FCC Members "are individually and collectively vicariously liable for the acts of" the Individual Defendants. *Id.* XXI ¶ 4.

Mr. Thomas seeks $2.5 million in damages, compensatory damages, treble damages, and attorney's fees and costs. Compl. at 30. He also seeks injunctive relief, an order terminating Ms. Brasher-Cunningham as Minister, requiring removal of the Posting, and requiring a written apology. *Id.*

### A. Plaintiff's Oral Motions to Dismiss Defendants

Mr. Thomas has orally moved to dismiss his claims against the Guilford Police Department, National UCC, and Guilford FCC Members. *See* Oral Motion.

Under Federal Rule of Civil Procedure 41, a "plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1) (A)(i). Mr. Thomas has orally moved, and he has not filed

a formal notice of dismissal. But the Court will grant his motion and dismiss these parties. *Cf. Tracy*, 623 F. 3d at 101–02 (discussing the "special solicitude" courts afford *pro se* litigants). As discussed below, these parties would have to be dismissed from this lawsuit in any event.

### B. Res Judicata

Because this Court has already ruled that the Court lacks subject matter jurisdiction over an essentially identical Complaint filed by Mr. Thomas against these same Defendants, *see Thomas I* Recommended Ruling; *Thomas I* Order of Dismissal, this entire action is barred by *res judicata*. *See Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88 (2d Cir. 1997) ("After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact.") (quoting *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) (internal quotation marks omitted)); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("It has long been the rule that principles of *res judicata* apply to jurisdictional determinations—both subject matter and personal." (internal citations omitted)). [6]

> [6] Only one Defendant, the Guilford Police Department, raises the argument that this action is barred by *res judicata*. Guilford Police Department argues that Mr. Thomas's claims under Section 1983 should be dismissed "because it is substantially identical to Count Two of [Mr. Thomas]'s prior pending action" against it, wherein Magistrate Judge Garfinkel issued a recommended ruling dismissing Mr. Thomas's complaint in its entirety, which this Court adopted. Guilford PD Mem. at 6–8. Mr. Thomas argues in reply that "res judicata does not apply as the previous action ... was dismissed for lack of [d]iversity and not dismissed on its merits." Pl.'s Obj. to GPD ¶ 6. For the reasons discussed below, the Court agrees with Guilford Police Department and indeed finds that *res judicata* bars this entire action.

### C. Subject Matter Jurisdiction

**\*9** Even if the doctrine of *res judicata* does not apply to dismiss Mr. Thomas's claims, this Court lacks subject-matter jurisdiction over them.

"[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "[W]hen a federal court concludes that it lacks diversity jurisdiction, the court must dismiss the complaint in its entirety.... In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

> Although the Supreme Court has cautioned against eliminating the distinction between failing to raise a substantial federal question for jurisdictional purposes ... and failing to state a claim for relief on the merits, the Supreme Court has also instructed that federal question jurisdiction under 28 U.S.C. § 1331 is lacking where the asserted claim for relief is essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit.

*Hariprasad v. Master Holdings Inc.*, 788 F. App'x 783, 786 (2d Cir. 2019) (quoting *Shapiro v. McManus*, 136 S. Ct. 450, 455–56 (2015)) (internal quotation marks omitted); *see also Arbaugh*, 546 U.S. at 513 ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 ... may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' " (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946))).

The Individual and Church Defendants argue that Mr. Thomas's Complaint should be dismissed for lack of subject matter jurisdiction "due to a lack of diversity and/or the lack of a colorable claim arising under the U.S. Constitution or a federal statute." Individual & Church Defs.' Mem. at 7–8.

The Court agrees.

All Defendants, with the exception of National UCC, are residents of Connecticut. Because there is not complete diversity between Mr. Thomas and all Defendants, the Court lacks diversity jurisdiction over this action. *See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit ... be completely diverse with regard to citizenship.' " (quoting *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998))).

In the absence of complete diversity, to assert subject matter jurisdiction over this action, Mr. Thomas must have a colorable claim arising under the U.S. Constitution or a federal statute. *See DaSilva*, 229 F.3d at 363 ("The clearest case for considering an issue to concern subject matter jurisdiction is one requiring determination as to whether the federal question or the diversity jurisdiction of a district court is properly invoked") (citing 28 U.S.C. § 1331); *see id.* (further defining a federal question as "whether a plaintiff has pleaded a colorable claim 'arising' under the Constitution or laws of the United States") (citations omitted). He has not done so.

**\*10** Mr. Thomas has alleged two sets of federal claims: violations of 28 U.S.C. § 4101, and violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983.

But 28 U.S.C. § 1401 does not create a cause of action. This provision contains definitions, including a definition of "defamation," in the context of a statute that allows for actions recognizing foreign defamation judgments. *See* 28 U.S.C. § 4102(a) ("Notwithstanding any other provision of Federal or State law, a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that—(A) the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the [F]irst [A]mendment to the Constitution of the United States...."). "Although the tort of defamation is a well-recognized cause of action under state common law, federal law does not create a general cause of action or provide a basis for federal question jurisdiction for defamation." *Steffens v. Kaminsky*, No. 3:20-cv-737 (JAM),

2020 WL 2850605, at *2 (D. Conn. June 2, 2020) (citing *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991); *McMillan v. Togus Regional Office, Dep't of Veterans Affairs*, 120 F. App'x 849, 852 (2d Cir. 2005)). "This statute [therefore] does not create federal question jurisdiction or a general federal cause of action for defamation occurring within the United States." *Id.* (citing *Renxiong Huang v. Minghui.org*, No. 17 Civ. 5582 (ER), 2018 WL 3579103, at *5 (S.D.N.Y. 2018)); *see also Lawrence v. Altice USA*, No. 3:18-cv-1927 (SRU), 2020 WL 108980, at *3 n.1 (D. Conn. Jan. 9, 2020) ("[Plaintiff] initially pled jurisdiction under 28 U.S.C. § 4101, which merely defines 'defamation' for the purposes of recognizing foreign judgments and is not a basis for federal court subject matter jurisdiction.").

The alleged violations of his First and Fourteenth Amendment rights also do not result in a colorable claim under 42 U.S.C. § 1983 ("Section 1983"). In the recommended ruling adopted by the Court, which dismissed essentially identical claims, Magistrate Judge Garfinkel found that Mr. Thomas could not assert colorable federal claims against any of the Defendants. *Thomas I* Recommended Ruling at 3 (citing *DaSilva*, 229 F.3d at 363). Mr. Thomas's Section 1983 claims against Guilford FCC, Guilford FCC Members, the Connecticut UCC, and all Individual Defendants were not colorable because none of these Defendants was a state entity or official subject to suit under Section 1983, or otherwise acted under color of state law. *Id.* at 3–4 ("To act under color of law for purposes of Section 1983, 'the defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " (quoting *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997))).

Mr. Thomas also did not have a colorable claim against the National UCC because his claims were based entirely on its vicarious liability for Ms. Brasher-Cunningham's alleged actions, which had already been dismissed. *Id.* at 4–5 ("Since, as discussed above, there are no viable claims against [Ms.] Brasher-Cunningham, there can be no vicarious liability.").

**\*11** Finally, Mr. Thomas's claims against Guilford Police Department in *Thomas I* were not colorable because "municipal police departments are not independent legal entities and are not subject to suit under Section 1983, except under circumstances inapplicable here." *Id.* at 5 (citing *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005)).

The same reasoning applies with equal force here to this case. None of the Individual or Church Defendants are state actors or took actions "clothed with the authority of state law." *Monsky*, 127 F.3d 243 at 245. When allegations pertain to actions not taken under color of state law, "they may not form the basis of a claim under § 1983." *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1997). As in his complaint in *Thomas I*, Mr. Thomas's allegations against National UCC also are based on its alleged vicarious liability for some of the Individual Defendants' actions. As in *Thomas I*, his alleged claims against National UCC must also be dismissed because his claims against the Individual Defendants are not colorable.

Mr. Thomas's allegations against the Guilford Police Department also are not colorable for the reason articulated by Magistrate Judge Garfinkel in *Thomas I*: "[M]unicipal police departments are not independent legal entities and are not subject to suit under Section 1983, except under circumstances inapplicable here." *Thomas I* Recommended Ruling at 5.

Mr. Thomas argues that the Guilford Police Department "is not listed in the Town of Guilford Charter, is not controlled by the Town of Guilford, and is a separate entity which can be sued." Pl.'s Obj. to Guilford PD ¶ 5. The Guilford Police Department argues in reply, however, that no legal authority supports Mr. Thomas's position and reiterates that "a municipal police department ... is not a municipality nor a 'person' within the meaning of [S]ection 1983." Guilford PD Reply at 1–2 (quoting *Nicholson*, 356 F. Supp. 2d at 163–64). The Guilford Police Department also argues that Mr. Thomas misrepresents the contents of the Guilford Town Charter, which they assert does establish a Police Department, to be managed by the Board of Police Commissioners which is in turn "under the general supervision of the Board of Selectmen." *Id.* at 5 (internal quotation marks omitted). Finally, they argue that, in any event, Mr. Thomas "has no constitutionally protected right to a proper investigation" and "has not alleged that he was subjected to any contact or interference that would even approach an infringement of his constitutional rights." *Id.* at 7.

The Court agrees with the Guilford Police Department.

As an initial matter, Mr. Thomas has not referenced the Town Charter in his Complaint nor pleaded any allegations suggesting that the Guilford Police Department is a separate entity that may be subject to suit under Section 1983. He cannot amend his Complaint by asserting new allegations in

his objection to the motion to dismiss. *See Aldrich v. Town of Bloomfield*, No. 3:17-cv-00581 (VLB), 2018 WL 1015337, at *4 (D. Conn. Feb. 22, 2018) ("Plaintiff cannot amend her complaint with assertions contained in an objection to a motion to dismiss." (internal citations omitted)); *Miley v. Hous. Auth. of City of Bridgeport*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013) ("It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss." (internal citations, quotation marks, and alterations omitted)).

**\*12**  In any event, the Town Charter is not relevant to whether the Guilford Police Department may be sued under Section 1983. "In determining whether a municipal subdivision constitutes a separate body politic, courts have looked to whether a specific statute enables the entity to sue or be sued," and "have found the absence of a specific enabling statute to be dispositive in determining that a municipal body is not a distinct body politic." *Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 256 (D. Conn. 2012). As another court in this District recently observed, "Connecticut statutes 'contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued. Rather, it is the municipality itself which possesses the capacity to sue and be sued.' " *Santiago v. Hamden Conn. Police Dep't*, No. 3:19-cv-1659 (KAD), 2019 WL 6497003, at *4 (D. Conn. Dec. 3, 2019) (quoting *Rose v. City of Waterbury*, No. 3:12-cv-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013)) (internal alterations omitted).

As a result, Mr. Thomas has not and cannot allege a colorable claim under Section 1983 against the Guilford Police Department.

Accordingly, because Mr. Thomas has not alleged a colorable claim under federal law against any of the Defendants, the Court must again dismiss his Complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### D. Personal Jurisdiction

Even if this Court had subject matter jurisdiction over this case, the Court lacks personal jurisdiction over the National

UCC and the Guilford FCC Members and the claims against them would have to be dismissed.

Three requirements must be satisfied for a court to exercise personal jurisdiction over a defendant. "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci ex rel. Licci*, 673 F.3d at 59. "Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective," which, in federal courts, is Federal Rule of Civil Procedure 4 ("Rule 4"). *Id.* "Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* at 60. The Due Process Clause inquiry requires courts to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (internal citation and quotation marks omitted).

Under Rule 4, a plaintiff may effectuate service by "delivering a copy of the summons and of the complaint to the individual personally;" leaving a copy of the summons and complaint "at the individuals' dwelling or usual place of abode"; or delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Service may also be proper if executed in accordance with state law where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1).

Under Connecticut law, "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a).

### i. National UCC

**\*13**  National UCC argues that Mr. Thomas failed to adequately serve process on it and that this Court therefore lacks personal jurisdiction over it. National UCC Mem. at 3–4.

Mr. Thomas argues that, even though the Connecticut State Marshal was unsuccessful in serving National UCC, because counsel entered appearance on behalf of these defendants, counsel "represented to the Court that [they were] in fact

properly served and [ ] acting as [ ] Defendant[s]." Pl.'s Obj. to National UCC ¶ 2, 5. Mr. Thomas argues in the alternative that, "as the matter is now in Federal Court" after having been removed, "the Plaintiff has ninety (90) days in which to serve the Defendant[s] ... pursuant to Rule 4(m) and will do so if Ordered by the Court." Pl.'s Obj. to National UCC ¶ 8.

The Court disagrees.

A defendant does not waive its right to move for dismissal based on improper service by filing a motion to dismiss. *See, e.g.*, *Sun v. Mashantucket Pequot Gaming Enter.*, 309 F.R.D. 157, 165 (D. Conn. 2015) (holding that where defendants "raised their lack of personal jurisdiction/insufficiency of service of process defense in their Motion to Dismiss, which was the first responsive pleading they filed with the court," they "did not waive the right to assert this defense"); *see also* Fed. R. Civ. P. 12(h)(1) (listing circumstances under which a party waives an insufficient service of process defense, which do not include entering an appearance or filing a motion to dismiss).

Because National UCC raised its insufficient service of process defense in its first response to the Complaint, a motion to dismiss, it has not waived the defense.

The Connecticut State Marshal states that, "[h]aving no Corporate Authority or Existence in the State of CT, I was unable to make due and legal service on the within named defendant, the National Conference of the United Church of Christ." Officer's Return. Although a court "must extend the time for service for an appropriate period" if "the plaintiff shows good cause for the failure" under Rule 4(m), Mr. Thomas has not shown good cause. Indeed, he has not even made any allegations as to why National UCC has not been served.

Accordingly, because Mr. Thomas failed to serve process on National UCC without showing good cause, the Court would have to dismiss Mr. Thomas's claims against National UCC for lack of personal jurisdiction.

### ii. Guilford FCC Members

Guilford FCC Members argue that Mr. Thomas failed to adequately serve process on them and that this Court therefore lacks personal jurisdiction over them. Guilford FCC Members Mem. at 1–3. They also argue that " 'All Members of the First Congregational Church of Guilford' is not a recognized entity nor is it a voluntary association," *id.* at 3, and therefore cannot be named or served as a defendant in any event, *id.* at 6. They argue that they are not a voluntary association because they "do[ ] not have any organizational structure" or "any officers or directors," *id.* at 9, and if Mr. Thomas "wanted to serve all of the members of the First Congregational Church of Guilford, he should have served each member of the church individually," *id.* at 6.

Mr. Thomas argues that Guilford FCC Members are, in fact, a voluntary association, citing to Guilford FCC's bylaws, which state that "[a]ll members are entitled to vote," and that "final authority rests with the congregation." Pl.'s Obj. to Guilford FCC Members ¶¶ 2, 6–7. He also refers to "[t]he Original Pilgrim Church Publication 'The Art and Practice of the Congregational Way,' Belief Number 5," which allegedly states that "Congregational Church Christians believe in democratic and representative decision making within the Church" and that "[m]ember consent is required for all decisions." *Id.* ¶ 5. In his view, because "there are no Officers listed with the Secretary of the State's Office for service to be made upon," the Connecticut State Marshal "was successful in serving [Guilford FCC Members] pursuant to [Conn. Gen. Stat. § 52-57(e) by making service upon the Secretary of State...." *Id.* ¶ 2. He also argues, as he did with National UCC, that Guilford FCC Members demonstrated that they were served by entering an appearance and filing a motion to dismiss. *Id.* ¶¶ 10–4. He also again requests 90 additional days to serve Guilford FCC Members if the Court finds they have not yet been served. *Id.* ¶ 7.

**\*14** Guilford FCC Members argue in reply that the portions of Guilford FCC's bylaws quoted by Mr. Thomas are taken out of context, and that both the bylaws and the historic document quoted by Mr. Thomas are irrelevant to service of process. Guilford FCC Members' Reply at 3. They contend that one of these portions pertains specifically to decisions made at Special Church Meetings, and the other to actions taken by the Church Council. *Id.* at 3–4.

Guilford FCC Members argue further that Mr. Thomas's service upon the Secretary of State "does not accomplish anything." *Id.* at 2.

Since the entity which [Mr. Thomas] refers to as "All Members of First Congregational Church of Guilford" does not exist, it would not be registered with the Secretary of State's office. As a result, the Secretary of State's office would not have any information on any of the members of

the Church. Consequently, the Secretary of State's office would not be able to forward copies of the Complaint to any of the individual members.

*Id.*

The Court agrees.

Under Connecticut law, "[a]ny number of persons associated together as a voluntary association, not having corporate powers, but known by a distinguishing name, may sue and be sued and plead and be impleaded by such name." Conn. Gen. Stat. § 52-76. Service may be made against a voluntary association by serving process "upon the presiding officer, secretary or treasurer." Conn. Gen. Stat. § 52-57(e).

> If all of such officers are not residents of the state and the voluntary association is doing business, acting or carrying out its operations or its functions within the state, the voluntary association shall be deemed to have appointed the Secretary of the State as its attorney and to have agreed that any process in any civil action brought against it may be served upon the Secretary of the State and that the process shall have the same validity as if served personally upon the presiding officer, secretary or treasurer of the voluntary association.

*Id.*

The Connecticut State Marshal states that, on November 26, 2019, "and by special direction of the plaintiff, I made due and legal service on the within named All Members of the First Congregational Church of Guilford, by leaving a verified true and attested copy of the" summons and complaint, "in accordance with [Conn. Gen. Stat. § 52-57(e)], at the office of the Secretary of the State, Statutory Agent for Service for All Members of the First Congregational Church of Guilford." Officer's Return.

But Mr. Thomas has not pleaded, nor does the evidence before the Court suggest, that "All Members of First Congregational Church of Guilford" is a "voluntary association ... known

by a distinguishing name" which may be sued. Indeed, Mr. Dudley, Chair of the Church Council of Guilford FCC stated in his affidavit that "[a]t no time has there been an entity, organization[,] or association known as 'All Members of the First Congregational Church of Guilford' which was or is, in any way, affiliated or associated with the First Congregational Church of Guilford." Dudley Aff. ¶ 8.

In any event, even if he could show that Guilford FCC Members were a voluntary association, service upon the Secretary of State would be insufficient. Under Connecticut law, the Secretary of the State is only deemed the proper recipient of service on behalf of a voluntary association where the officers of such voluntary association "are not residents of the state and the voluntary association is doing business, acting or carrying out its operations or its functions within the state." Conn. Gen. Stat. § 52-57(e). Here, Guilford FCC Members appear to reside entirely within the state of Connecticut, as they are all allegedly members of a local church in Guilford, Connecticut.

**\*15** As a result, Mr. Thomas may only effectuate service by identifying and serving "the presiding officer, secretary or treasurer" of the alleged voluntary association. Moreover, it would not comport with due process principles to exercise personal jurisdiction over every individual member of Guilford FCC, which "had approximately 820 registered members" in 2019. Dudley Aff. ¶ 5. There is no allegation nor evidence that service of process to the Secretary of State, who has no contact information for Guilford FCC Members as an alleged voluntary association nor for any individual member, would adequately provide these members with notice of any action against them.

Accordingly, the Court does not have personal jurisdiction over the Guilford FCC Members. Once again, Mr. Thomas has not shown good cause as to why Guilford FCC Members have not been properly served. The Court therefore would not grant an extension of time to serve Defendants, even if the Court had subject matter jurisdiction over this action.

### E. Failure to State a Claim

Because this action is barred by *res judicata*, and the Court lacks subject matter jurisdiction over the action in any event, the Court need not and will not address Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### F. Motion to Amend

"[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 (2d Cir. 2018) ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Although a *pro se* plaintiff's pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Sykes*, 723 F.3d at 403, "where there is no indication that a valid claim might be stated after a liberal reading of a *pro se* plaintiff's complaint, the Court need not grant leave to amend," *Santos v. Eye Physicians & Surgeons, P.C.*, No. 3:18-cv-1515 (VAB), 2019 WL 3282950, at *11 (D. Conn. July 22, 2019) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)).

Mr. Thomas seeks to amend his Complaint to add additional individual defendants and allegations as to those proposed defendants. Mot. to Amend; Proposed Second Am. to Compl.

The Guilford Police Department and the Individual and Church Defendants object to the motion to amend, arguing that Mr. Thomas's proposed amendments are futile. Guilford PD Obj. to Mot. to Amend; Individual & Church Defs.' Obj. to Mot. to Amend.

The Court agrees.

Mr. Thomas seeks to add claims of defamation, libel, and invasion of privacy against several proposed new defendants. None of these are federal claims which could invoke this Court's subject-matter jurisdiction. *See, e.g., O'Connor v. Pierson*, 568 F.3d 64, 66 (2d Cir. 2009) (identifying invasion of privacy as a state common law claim and noting that the district court's federal question jurisdiction was based on constitutional claims); *Grogan v. Blooming Grove Vol. Ambulance Corp.*, 917 F. Supp. 2d 283, 289 (S.D.N.Y. 2013) ("Plaintiff also attempts to bring a [federal] claim for libel under Section 1983, but no such cause of action exists.") (citing *Ass'n for the Pres. of Freedom of Choice, Inc. v. Simon*,

299 F.2d 212, 214 (2d Cir. 1962) (portion of claim based on "libel has no connection with any federally protected right but solely with a right arising out of state law")), *aff'd sub nom. Grogan v. Blooming Grove Vol. Ambulance Corps*, 768 F.3d 259 (2d Cir. 2014); *Collins v. W. Hartford Police Dep't*, 380 F. Supp. 2d 83, 94–95 (D. Conn. 2005) ("It is well established that defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation, ... Because plaintiff [ ] has not alleged a deprivation of a tangible interest beyond [ ] reputational harm ... his complaint must therefore be read as stating exclusively a state law claim of defamation against all defendants."), *aff'd on other grounds*, 324 F. App'x 137 (2d Cir. 2009).

**\*16** Accordingly, in the absence of any proposed amended complaint having a viable claim, the Court will deny Mr. Thomas's motion to amend as futile.

### G. Motion to Remand

Mr. Thomas has moved to remand this case back to the Superior Court for Judicial District of New Haven. Pl.'s Mot. to Remand. Defendants have not responded.

Because the Court lacks subject matter jurisdiction over this action, it will grant Mr. Thomas's motion to remand. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). [7]

[7]     The Supreme Court has stated that "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety," including any "pendent state-law claims." *Arbaugh*, 546 U.S. at 514. But in light of the express language of 28 U.S.C. § 1447(c), requiring remand where a state court case had been removed to federal court and the federal court ultimately lacked subject matter jurisdiction, remanding this case back to state court, its original venue, is the appropriate course of action.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's oral motion to dismiss the Guilford Police Department, the National Conference of the United Church of Christ, and All Members of the First Congregational Church of Guilford, ECF No. 67, is

2020 WL 4284564

**GRANTED**; Defendants' motions to dismiss these same Defendants, ECF Nos. 19, 23, 25, 33 (in part), and 35, are **DENIED** as moot; Defendants' motion to dismiss any remaining Defendants, ECF No. 33 (in part), is **GRANTED;** Plaintiff's motion to amend, ECF No. 47, is **DENIED**; and Plaintiff's motion to remand, ECF No. 39, is **GRANTED**.

The Clerk of Court is respectfully requested to remand this case to the Connecticut Superior Court, the Judicial District of New Haven and then close the case here.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of July, 2020.

**All Citations**

Slip Copy, 2020 WL 4284564

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 50 of 106

Renxiong Huang v. Minghui.org, Not Reported in Fed. Supp. (2018)

2018 WL 3579103

2018 WL 3579103
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

RENXIONG HUANG, Plaintiff,

v.

MINGHUI.ORG, Zhengjian.org, Eastern US Buddhas
Study Falun Dafa Association, Rong Yi, Yi Cai,
Hao Ye, US Southwestern Falun Dafa Association,
Youfu Li, Mid-USA Falun Dafa Association, Sen
Yang, Yun Song, and Siwei Meng, Defendants.

17 Civ. 5582 (ER)
|
Signed 07/25/2018

**Attorneys and Law Firms**

Renxiong Huang, Brooklyn, NY, pro se.

Daniel Philip Waxman, Bryan Cave LLP, New York, NY, for
Defendants.

**OPINION AND ORDER**

Edgardo Ramos, U.S.D.J.

 **\*1**  Renxiong Huang, proceeding *pro se*, brings this action
against Minghui.org, Zhengjian.org, Eastern US Buddhas
Study Falun Dafa Association, Rong Yi, Yi Cai, Hao Ye,
US Southwestern Falun Dafa Association, Youfu Li, Mid-
USA Falun Dafa Association, Sen Yang, Yun Song, and Siwei
Meng (collectively, "Defendants"), alleging defamation and
discrimination. Before the Court is Defendants' motion
to dismiss Huang's Amended Complaint. For the reasons
discussed below, Defendants' motion is GRANTED.

**I. BACKGROUND** [1]

[1]    The following facts, accepted as true for purposes
of the instant motion, are based on the allegations
in Huang's Amended Complaint and Opposition to
Defendants' Motion. *See Walker v. Schult*, 717 F.3d
119, 121, 122 n.1 (2d Cir. 2013) ("A district court
deciding a motion to dismiss may consider factual
allegations made by a *pro se* party in his papers
opposing the motion."); *Gill v. Mooney*, 824 F.2d
192, 195 (2d Cir. 1987) (considering allegations

in a *pro se* plaintiff's affidavit in opposition to
a motion to dismiss in addition to those in the
complaint).

Huang is a Chinese practitioner of Falun Gong, a spiritual
practice whose adherents are persecuted by the Chinese
Communist Party. Am. Compl. ¶¶ 1.1, 2.1, Doc. 24. In
April 2003, Huang escaped from China to Thailand and then
applied for refugee protection with the United Nations in May
2003. *Id.* ¶ 1.1. In July 2005, Huang moved to the United
States as a Falun Gong refugee. *Id.* ¶¶ 1.2–1.3.

On July 29, 2003, while Huang's request for refugee
protection was pending, Minghui.org published an article
claiming that Huang was a spy working for the Chinese
government. *Id.* ¶¶ 1.1–1.2. Minghui.org is a "secret
organization" with anonymous members that disseminates
news and information to Falun Gong practitioners around the
world. *Id.* ¶¶ 1.4, 2.2. Even so, Huang attributes the article
to all named Defendants because on July 20, 2003, they were
present at the Falun Gong Washington conference, which was
responsible for publishing the article. Am. Compl. ¶ 1.2; Pl.'s
Opp'n ¶ 1, Doc. 34. Huang further alleges that Defendant
Hao Ye later informed him that Defendants told "all important
person[s] in charge of Falun Gong" that Huang was a spy. Pl.'s
Opp'n ¶ 1.

As a result of the article, Huang contends that members of the
Falun Gong mistreated him and his former wife, Yuhua Dong.
Am. Compl. ¶¶ 1.3–1.4. For instance, Huang alleges that
Defendant Youfu Li, the coordinator of the US Southwestern
Falun Dafa Association, encouraged Falun Gong practitioners
to distance themselves from Huang for fear of likewise
being deemed a Chinese agent. *Id.* ¶ 1.4. Huang asserts
that the psychological pressure resulting from this treatment
ultimately caused his wife to divorce him. *Id.*

Additionally, Huang alleges that he was excluded from Falun
Gong gatherings on five different occasions. First, Defendant
Yi Cai refused to accept Huang's admission ticket for a
2006 Falun Dafa sharing conference in Washington, D.C.,
because he believed Huang was a spy working for the Chinese
government. *Id.* Second, on February 26, 2006, a Falun Gong
practitioner asked Huang to leave a Falun Gong parade in
Los Angeles because Youfu Li told him that Huang was a
Chinese spy. Pl.'s Opp'n ¶ 1. Third, on July 15, 2006, Youfu Li
asked Huang to leave a public demonstration in Santa Monica
against the Chinese Communist Party because he believed
Huang was a spy. *Id.* Fourth, Yi Cai prevented Huang from
participating in a 2012 Shenyun promotion meeting in New

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 51 of 106

Renxiong Huang v. Minghui.org, Not Reported in Fed. Supp. (2018)

2018 WL 3579103

Jersey on the grounds that he was a spy for China. Am. Compl. ¶ 2.1. And fifth, Defendant Rong Yi informed Huang in a May 2017 phone call that he would not be welcome at the upcoming annual Fa sharing conference because he was "on the black list of Falun Gong head officer Yang Sen." *Id.* ¶ 2.2 (emphasis omitted).

**\*2** Huang filed the instant action on July 21, 2017. *See* Compl., Doc. 1. On November 13, 2017, Huang filed an Amended Complaint invoking federal-question jurisdiction under 28 U.S.C. § 1331,[2] and alleging discrimination under the Civil Rights Act of 1964, violations of the First Amendment, claims under 28 U.S.C. § 4101, and defamation pursuant to N.Y. C.P.L.R. § 215(3) and the Restatement (Second) of Torts. Am. Compl. ¶¶ I, 2.3. Huang seeks more than $1.4 billion in damages and a retraction of the allegedly defamatory article. *Id.* ¶ 2.3. On January 12, 2018, Defendants moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] *See* Defs.' Mot. Dismiss, Doc. 27.

[2]     Huang did not invoke diversity or alienage jurisdiction. Where the amount in controversy is satisfied, the Court has jurisdiction over actions between "citizens of different States," 28 U.S.C. § 1332(a)(1); "citizens of a State and citizens or subjects of a foreign state," except where the "citizens or subjects of a foreign state ... are lawfully admitted for permanent residence in the United States and are domiciled in the same State" as the U.S. citizens, *id.* § 1332(a)(2); and "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3). The Amended Complaint does not disclose the citizenship or immigration status of Huang or Defendants, and it is ambiguous as to Huang's domicile. *See* Am. Compl. at ECF pp. 4, 13, 42 (listing addresses or residency in Maryland, New York, and California). Accordingly, the Court assumes that only federal-question jurisdiction applies.

[3]     Additionally, Defendants moved to dismiss pursuant to Rule 8(a) for improper group pleading on the grounds that the Amended Complaint lumps all Defendants together in each claim without distinguishing their conduct. *See* Defs.' Mem. 6, Doc. 30. However, because Huang distinguishes

Defendants and the claims against them in his Opposition, the Court declines to dismiss the Amended Complaint on this basis. *See* Pl.'s Opp'n 4–5.

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) ). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits' " or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) ).

**\*3** The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Federal Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obliged to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). The obligation to leniently read a *pro se* plaintiff's pleadings "applies with particular force

Renxiong Huang v. Minghui.org, Not Reported in Fed. Supp. (2018)

2018 WL 3579103

Case 5:22-cv-01067-TJM-TWD    Document 4    Filed 11/07/22    Page 52 of 106

when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N. Y 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557); *see also Triestman*, 470 F.3d at 477 ("[*P*]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ) ).

## III. DISCUSSION

Huang asserts claims for (1) discrimination under Title II of the Civil Rights Act of 1964,[4] (2) violation of his First Amendment rights, (3) claims under 28 U.S.C. § 4101, and (4) defamation pursuant to N.Y. C.P.L.R. § 215(3) and the Restatement (Second) of Torts. The Court addresses each claim in turn.

[4]    The Amended Complaint alleges discrimination under the Civil Rights Act of 1964 but does not specify which title of the Act was violated. Am. Compl. ¶ 2.3. In his Opposition, Huang clarified that he alleges that Youfu Li, US Southwestern Falun Dafa Association, and Yi Cai violated Title II of the Act. Pl.'s Opp'n 4–5.

### A. Civil Rights Act of 1964

Title II of the Civil Rights Act of 1964 entitles all persons "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). "[T]he overriding purpose of Title II [was] 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.' " *Stone v. N.Y. Pub. Library*, No. 05 Civ. 10896 (DLC), 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008) (alterations in original) (quoting *Daniel v. Paul*, 395 U.S. 298, 307–08 (1969) ), *aff'd*, 348 F. App'x 665 (2d Cir. 2009). A plaintiff bringing a claim under

Title II must allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation and (2) discriminatory intent. *Coward v. Town & Village of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009); *see also Macer v. Bertucci's Corp.*, No. 13 Civ. 2994 (JFB) (ARL), 2013 WL 6235607, at *8 (E.D.N.Y. Dec. 3, 2013).

Huang does not plausibly allege either element of a Title II discrimination claim. With respect to the first element, none of the places which Huang was allegedly denied access to constitute places of public accommodation within the meaning of Title II. Title II defines a "place of public accommodation" as an establishment either affecting interstate commerce or supported by state action that falls into one of the following categories: "(1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises, including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment."[5] *Bishop v. Henry Modell & Co.*, No. 08 Civ. 7541 (NRB), 2009 WL 3762119, at *12 (S.D.N.Y. Nov. 10, 2009) (citing 42 U.S.C. § 2000a(b) ), *aff'd*, 422 F. App'x 3 (2d Cir. 2011). Because Congress specified the establishments which constitute places of public accommodation under § 2000a, courts in this circuit apply the statute to only those covered establishments. *See, e.g., James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 305–06 (E.D.N.Y. 2017) (holding that airplanes are not places of public accommodation because none of the establishments listed in the statute remotely resemble an airplane); *Bishop*, 2009 WL 3762119, at *13 (holding that retail stores are not places of public accommodation because the "text of § 2000a does not explicitly include retail establishments"); *Verhagen v. Olarte*, No. 89 Civ. 0300 (CSH), 1989 WL 146265, at *4 (S.D.N.Y. Nov. 21, 1989) (holding that hospitals are not places of public accommodation because "the particular establishments covered by the federal statute do not include hospitals").

[5]    The full definition reads as follows:
    Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or

Renxiong Huang v. Minghui.org, Not Reported in Fed. Supp. (2018)
2018 WL 3579103

Case 5:22-cv-01067-TJM-TWD    Document 4    Filed 11/07/22    Page 53 of 106

if discrimination or segregation by it is supported by State action:

(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b).

**\*4** Considering the explicitly listed establishments covered under the statute, none of the places where Huang was allegedly excluded constitute places of public accommodation. In sum, Huang alleges that he was denied access to five places: (1) a 2006 sharing conference in Washington, D.C., (2) a February 2006 parade in Los Angeles, (3) a July 2006 public demonstration in Santa Monica, (4) a 2012 Shenyun promotion meeting in New Jersey, and (5) a 2017 annual Fa sharing conference. Am. Compl. ¶ 1.4, 2.1–2.2; Pl.'s Opp'n ¶ 1. These religious conferences, demonstrations, and parades plainly do not fall within any of the defined categories of public accommodations under Title II. Further, Huang fails to plead any facts suggesting that any of the events occurred in a facility containing or located within a covered establishment that could bring his claim within the ambit of Title II. *Cf. Daniel*, 395 U.S. at 305 (holding that the presence of a snack bar on the premises of a club facility brought the entire facility within the ambit of Title II). Thus, Huang fails to satisfy the first element under Title II because he fails to plausibly allege that he was denied access to a place of public accommodation.

Huang also fails to satisfy the second element because he does not plausibly allege that he was discriminated against on the basis of a class protected by the Act. Title II protects against "discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). To survive dismissal, a plaintiff must allege that he is in a protected class and must plead sufficient factual content to allow the court to draw a reasonable inference that the defendant was motivated by discriminatory intent. *See Guichardo v. Langston Hughes Queens Library*, No. 15 Civ. 2866 (MKB), 2015 WL 13227995, at \*4–5 (E.D.N.Y. Nov. 20, 2015) (dismissing a claim under Title II where the plaintiff did not specify his protected class and failed to allege facts supporting his claim that a library employee's refusal to help him was motivated by discriminatory intent); *see also Joseph v. Metro. Museum of Art*, No. 15 Civ. 9358 (GHW), 2016 WL 3351103, at \*3 (S.D.N.Y. June 15, 2016) (holding that a museum's display of artwork containing inaccurate depictions of Jesus was insufficient to raise an inference that the museum was motivated by religious discriminatory intent), *aff'd*, 684 F. App'x 16 (2d Cir. 2017).

Here, Huang does not allege that he was discriminated against on the grounds of "race, color, religion, or national origin." 42 U.S.C. § 2000a(a). He pleads no factual content raising a reasonable inference that Defendants were motivated by discriminatory animus against a protected class. Indeed, the Amended Complaint plainly states that the hostility Huang faced purportedly resulted from a prevailing belief among the Falun Gong community that he was a "spy working for the Chinese government" and not from his membership in any protected class. Am. Compl. ¶ 1.4, 2.1–2.2; Pl.'s Opp'n ¶ 1. The protected classes under Title II do not include accused spies. *Cf. Gillum v. Nassau Downs Reg'l Off Track Betting Corp. of Nassau*, 357 F. Supp. 2d 564, 569 (E.D.N.Y. 2005) (holding that the plaintiff's status as a convicted felon was not a protected class under Title VII of the Act).

Thus, because Huang has failed to plausibly allege that he was discriminated against in a place of public accommodation or on the basis of a protected class, his discrimination claim must be dismissed.

**B. First Amendment**

Although not clearly articulated, the Amended Complaint raises a claim that Defendants somehow violated Huang's First Amendment rights. The First Amendment protects the freedom of religion, speech, press, and assembly. However, the First Amendment protects these rights against abridgment

Renxiong Huang v. Minghui.org, Not Reported in Fed. Supp. (2018)

2018 WL 3579103

by only the government, and private actors are typically not subject to its constraints. *See, e.g., Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."); *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 879 (2d Cir. 2012) ("In the absence of any government nexus to the challenged action ... the First Amendment does not prevent a property owner from restricting press access to private property."). Further, defamatory "[s]peech ... cannot violate the First Amendment rights of another individual." *Fowler v. Am. Lawyer Media, Inc.*, 46 F. App'x 54, 54 (2d Cir. 2002) ("Rather, the relevance of the First Amendment to a defamation action is that the First Amendment protects certain defamatory speech and thus may provide a defendant with a defense to liability.").

**\*5** Thus, Huang's First Amendment claim is fatally flawed because he has not alleged any government nexus that could subject Defendants to the constraints of the First Amendment. And Defendants' alleged defamatory speech, while potentially protected by the First Amendment, cannot constitute a violation of Huang's First Amendment rights. Accordingly, Huang's First Amendment claim must be dismissed.

### C. 28 U.S.C. § 4101

Huang also asserts a claim under 28 U.S.C. § 4101. Section 4101 is a definitional statute [6] in service of 28 U.S.C. § 4102 *et seq.* Section 4102 concerns the recognition of foreign defamation judgments and provides that "a domestic court shall not recognize or enforce a foreign judgment for defamation" unless the domestic court determines that the judgment comports with federal constitutional or statutory law. 28 U.S.C. § 4102. The statute is inapplicable here because Huang is not seeking to obtain or preclude the enforcement of a foreign defamation judgment. Thus, Huang's claim under 28 U.S.C. § 4101 must be dismissed.

[6]   For example, § 4101 defines the term "defamation" to mean "any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person." 28 U.S.C. § 4101(1).

### D. State Law Claims

Federal courts have supplemental jurisdiction over state law claims if they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Nevertheless, a district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[W]hen the federal claims are dismissed the 'state claims should be dismissed as well.' " (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ) ). Huang asserts a state law claim against Defendants for defamation pursuant to N.Y. C.P.L.R. § 215(3) and the Restatement (Second) of Torts. Having dismissed all of Huang's federal claims under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over and dismisses the defamation claim. [7]

[7]   Because the Court declines to exercise jurisdiction over the defamation claim, Defendants' motion to strike that claim under California's anti-SLAPP statute is DENIED as moot. *See* Defs.' Mem. 14–20.

### IV. LEAVE TO AMEND

The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) ). In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed the "liberal spirit" of amendment under Federal Rule of Civil Procedure 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam) ).

**\*6** Here, while Huang has already had the opportunity to amend his original Complaint, this is the Court's first opportunity to highlight the precise defects of his pleading, and it is not yet apparent that any further opportunity to amend would be futile. Thus, the Court dismisses Huang's claims without prejudice, and he will be permitted to replead them in a second amended complaint.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint is GRANTED. Defendants' request for oral argument on the motion is DENIED as moot. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 27, 38. Huang is granted leave to file a second amended complaint, and if he chooses to do so, he must file it by **August 24, 2018**.

It is SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3579103

---

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 56 of 106

Steffens v. Kaminsky, Not Reported in Fed. Supp. (2020)

2020 WL 2850605

2020 WL 2850605
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Kyle Arthur STEFFENS, Plaintiff,
v.
Melissa Leigh KAMINSKY
(a.k.a. Missy Galore), Defendant.

No. 3:20-cv-737 (JAM)
|
Signed 06/02/2020

**Attorneys and Law Firms**

Kyle Arthur Steffens, pro se.

**ORDER TO SHOW CAUSE WHY
COMPLAINT SHOULD NOT BE DISMISSED
PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

Jeffrey Alker Meyer, United States District Judge

**\*1** Plaintiff Kyle Arthur Steffens has filed a *pro se* and *in forma pauperis* complaint for defamation against Melissa Leigh Kaminsky (a.k.a. Missy Galore). Because it appears that the complaint does not allege facts that give rise to plausible grounds to conclude that there is federal jurisdiction, I am issuing this order to show cause for Steffens to file a response explaining why the complaint should not be dismissed.

**BACKGROUND**

The complaint alleges that Steffens has an "unknown" street address in Hartford, Connecticut. Doc. #1 at 1. The defendant is allegedly an "artist" from Los Angeles, California who goes by the name "Missy Galore." *Id.* at 2. As a basis for federal jurisdiction, the complaint alleges "Defamation of Character" under 28 U.S.C. § 4101. *Id.* at 3.

Under the heading of "Statement of Claim," the complaint alleges the following: "Her claim that I 'almost killed her' has made me to be ordered repeatedly Beat Dead. Her video on a News Channel Sac & Co @https://youtu.be/6knz9eo5wF4." *Id.* at 4. Under the heading of "Relief," the complaint alleges the following: "Removal of video by court order

my reputation has been thoroughly hurt. Request damages of $28,000. (Twenty Eight Thousand Dollars)." *Ibid.* The complaint alleges no additional facts concerning either its statement of claim or relief.

I have reviewed the video at the YouTube link referenced in the complaint. It bears a title of "Shamatrix Missy Galore live on Sac&Co" and reflects that the video was posted on August 11, 2016. The video shows an approximately five-minute clip of what appears to be a television program featuring a conversation between a television host and someone named Missy Galore. During the conversation Missy Galore tells the television host about her feelings and about a time in her life when she had a "situation of domestic violence" where "I was living with my fiancé, and he had a psychotic break" and "almost killed me" and "I barely escaped with my life." The video does not identify Steffens by name or the name of the fiancé. Missy Galore goes on in the video to talk about how she has since gotten in "touch with my inner child" and how it has "reminded me that life is love and that we all deserve love." Missy Galore then discusses how she has developed a self-help "inner child empowerment technique" known as "Fluff the Goodness" involving musical performances, workshops, and interactive art installations that she shares with others.

**DISCUSSION**

This Court has authority to review and dismiss an *in forma pauperis* complaint if it is "frivolous or malicious" or if it otherwise "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B). If the plaintiff is a *pro se* litigant, the Court must afford the complaint a liberal construction and interpret it to raise the strongest grounds for relief that its allegations suggest. *See, e.g.,* *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for the Court's exercise of jurisdiction as well as for the grant of relief. *See, e.g.,* *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155–56 (D. Conn. 2016).

**\*2** It is a very basic principle that federal courts are courts of limited jurisdiction. *See generally* *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In general, federal courts have "federal question" jurisdiction over any claims that arise under federal law. *See* 28 U.S.C. § 1331. Federal courts also

**Steffens v. Kaminsky, Not Reported in Fed. Supp. (2020)**

2020 WL 2850605

have "diversity" jurisdiction over claims that arise under state law if the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. A federal court must dismiss a complaint if at any time it is clear that the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

It does not appear to me that the complaint in this case alleges facts to plausibly establish federal question jurisdiction. Although the tort of defamation is a well-recognized cause of action under state common law, federal law does not create a general cause of action or provide a basis for federal question jurisdiction for defamation. *See, e.g., Siegert v. Gilley,* 500 U.S. 226, 233-34 (1991); *McMillan v. Togus Regional Office, Dept. of Veterans Affairs,* 120 Fed.Appx. 849, 852 (2d Cir. 2005); *Bartel v. F.A.A.,* 725 F.2d 1403, 1405 n.2 (D.C. Cir. 1984). To be sure, the term "defamation" is defined by federal law under 28 U.S.C. § 4101, which the complaint cites, but this definition appears within the context of a statute that allows for actions involving recognition of foreign defamation judgments. *See* 28 U.S.C. § 4102 *et seq.* This statute does not create federal question jurisdiction or a general federal cause of action for defamation occurring within the United States. *See Renxiong Huang v. Minghui.org,* 2018 WL 3579103, at *5 (S.D.N.Y. 2018). Accordingly, it does not appear that Steffens' defamation claim arises under federal law to allow for federal question jurisdiction under 28 U.S.C. § 1331.

Nor does it appear that the complaint alleges sufficient facts to give rise to diversity jurisdiction under 28 U.S.C. § 1332. Although the complaint alleges that Steffens is a citizen of a different State than Kaminsky, it alleges damages of only $28,000–well below the $75,000 threshold required for purposes of diversity jurisdiction.

In short, even assuming that the complaint alleges a valid claim for defamation, it does not appear that there is any basis for federal jurisdiction over this action. In the ordinary course, however, a court should not dismiss a complaint *sua sponte* without affording the plaintiff a reasonable opportunity to respond to the concerns that would warrant dismissal. *See Abbas v. Dixon,* 480 F.3d 636, 639-40 (2d Cir. 2007). The purpose of this ruling is to state my concerns so that Steffens may file a response.

## CONCLUSION

For the reasons stated above, it appears that the complaint fails to state facts that give rise to plausible grounds for the exercise of federal jurisdiction. If Steffens has grounds to show why his complaint should not be dismissed, he shall file a response to this order to show cause by **June 12, 2020**. In the absence of a timely and satisfactory response, the Court is likely to dismiss the complaint without prejudice to Steffens' re-filing of a complaint in an appropriate state court which may have jurisdiction over this action.

It is so ordered.

## All Citations

Not Reported in Fed. Supp., 2020 WL 2850605

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

2019 WL 959521
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Natalie Ykenhoff FLEMING, Plaintiff,

v.

Dr. Ulla K. LAAKSO, MD, Defendant.

18-CV-1527 (RA) (BCM)
|
Signed 02/05/2019

**Attorneys and Law Firms**

Natalie Ykenhoff Fleming, North Brunswick, NY, pro se.

Judi Curry, Harris Beach PLLC, New York, NY, for Defendant.

**REPORT AND RECOMMENDATION
TO THE HON. RONNIE ABRAMS**

BARBARA MOSES, United States Magistrate Judge

*1 Plaintiff Natalie Ykenhoff Fleming, who is representing herself, seeks damages from Dr. Ulla K. Laakso, M.D., a psychiatrist.[1] Plaintiff's employer, Mount Sinai Hospital (Mount Sinai), referred plaintiff to Dr. Laakso for an assessment of her fitness to return to work. Plaintiff alleges that Dr. Laakso defamed her by falsely stating, in her treatment notes, that plaintiff had a history of depression, and by giving plaintiff "negative diagnoses." Now before the Court for report and recommendation is Dr. Laakso's motion to dismiss all of plaintiff's claims or, in the alternative for a more definite statement. (Dkt. No. 16.) Because plaintiff alleges no facts that would support either federal question or diversity jurisdiction, I respectfully recommend that this action be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3). Should the Court reach the merits, I recommend that the case be dismissed for failure to state a claim pursuant to Rule 12(b)(6), without leave to replead.

---

[1]     Plaintiff consistently spells defendant's name as "Laasko," and so captions all of her pleadings. *See, e.g.*, Compl. (Dkt. No. 1) at ECF page 1. Defendant's attorneys use the same spelling in their filings. However, defendant's own documents give

her last name as "Laakso," *see, e.g., id.* at ECF page 9. The State of New York agrees. *See* https://www.nydoctorprofile.com/dispatch (last visited Feb. 4, 2019).

**I. BACKGROUND**

**A. The Black Powder**

Plaintiff was employed as a Senior Entitlement Coordinator and Financial Counselor at Mount Sinai's Center for Transgender Medicine and Surgery (the Center). Compl. at ECF page 29.[2] Beginning in January 2017, when three of plaintiff's hats went "mysteriously missing," only to reappear next to her desk, she suspected that her colleagues were plotting against her. Compl. at ECF page 24. Plaintiff's fears intensified when she found "a black dust/powdery substance" in her office, initially on her desk and then, on October 10, 2017, in her desk drawer, on top of her business cards. *Id.*; *see also* Supp. at ECF page 6. That is when plaintiff realized that her colleagues "must have been putting this powder on my desk all along." Compl. at ECF page 24.

---

[2]     Plaintiff's 7-page, hand-written Complaint is accompanied by 126 pages of attachments, including a typed, 4-page, first-person narrative (Compl. at ECF pages 24-27) and a collection of emails, medical records, employment forms, and other documents. The first 60 pages are filed as part of the Complaint itself, at Dkt. No. 1, and are cited herein as "Compl. at ECF page _____." The last 66 pages are filed as an addendum to the Complaint, at Dkt. No. 1-1, and are cited herein as "Compl. Add. at ECF page _____." I have considered all of the attachments to be part of plaintiff's Complaint for purposes of the pending motion. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"). By Order dated April 9, 2018 (Dkt. No. 9), the District Judge deemed an additional 33 pages to be part of plaintiff's Complaint, including a typed, 27-page first-person narrative (the Supplement, *id.* at ECF pages 6-32) further describing the events underlying plaintiff's claims.

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

**\*2** The October 10 incident was "very traumatizing" to plaintiff, who interpreted the black powder as "a message being sent that this was either racial since everything was in black or the dirt stood for the dirt over my casket and the box of business cards was my casket." Compl. at ECF page 25; *see also* Supp. at ECF page 8. Plaintiff suspected her direct supervisor, Zil Goldstein, as well as two other employees, Theresa Soto O'Donnell and Leslie Larue. Compl. at ECF page 25; Supp. at ECF page 8. Plaintiff sought redress from numerous Mount Sinai administrators, including its Chief Human Resources Officer. Compl. at ECF pages 25-27, 28-29, 31, 33-34; Compl. Add. at ECF pages 26-27; Supp. at ECF pages 11-21. However, she continued to experience what she believed to be harassment by Goldstein, O'Donnell, and Larue. For example, on October 30, 2017, some of plaintiff's personal papers disappeared from a bag under her desk while she was meeting with Goldstein. Compl. at ECF page 26. Plaintiff asserts that Goldstein must have told another employee to "go into my bag and my desk while I was in the office." *Id.* A few weeks later, in mid-November, 2017, plaintiff had problems with her personal email accounts, which she also attributed to Goldstein. Plaintiff explains that her supervisor had "a way to spy on my computer at home such as spyware on my phone and home computer." *Id.* at ECF page 26.

On November 3, 2017, plaintiff went to the Mount Sinai Employee Health Service (EHS) complaining of dryness, cracks, and a burning sensation in her hands after "her desk drawer was tampered with or broken into" and black powder was "sprinkled over her business cards." Compl. Add. at ECF page 19. Plaintiff was advised to monitor her condition and cleared to return to work. *Id.* On November 15, 2017, plaintiff went to the Mount Sinai emergency room complaining of shortness of breath, dizziness, and headache, beginning after she was exposed to the black powder. Compl. at ECF page 44. She reported feeling "very anxious, nervous about the event," and had "flashbacks." *Id.* Plaintiff was given ibuprofen for her headache and discharged the same day, with instructions to follow up with her primary care physician. *Id.* at ECF page 50.

On November 22, 2017, matters came to a head when plaintiff "called the police on Zil [Goldstein] and Theresa [Soto O'Donnell]" because "I felt they were hacking into my accounts and I was feeling that they were stalking me." Compl. at ECF page 27; *see also* Supp. at ECF pages 22-24. The police "never took the report." Compl. at ECF page 27. Instead, "Zil made the cops call EMS to take me out of there as if I were a crazy person." *Id.*; *but see* Supp. at ECF page 23

(EMS "let me leave on my own"). On the way out, plaintiff "told Zil and Theresa in front of everyone in the office that they will both burn in hell for what they are doing to me." Supp. at ECF pages 23-24.

On November 27, 2017, when plaintiff returned to work, she was sent to EHS, where she was told that she "needed to see a psych doctor," Compl. at ECF page 27, and placed on medical leave. *Id.* at ECF page 36. While at EHS, plaintiff told physician Jason Pachman, M.D. about the black powder, explaining that it was placed in her desk drawer "deliberately to cause her to react and to appear 'crazy.' " Compl. Add. at ECF page 17. She also told Dr. Pachman, among other things, that her colleagues sent her " 'black faced' emails" and attempted to break into her Facebook account. *Id.* According to Dr. Pachman, plaintiff "[d]emonstrated no insight into how someone else might find her claims about her supervisors to be paranoid and odd." *Id.* at ECF page 18. A few weeks later, after plaintiff's primary care physician refused to "clear [her] for return to work," Supp. at ECF page 25, [3] plaintiff was told that she needed to be "cleared by a psychiatrist," *id.*, and was referred to Dr. Laakso. *Id.* at ECF pages 26-28; *see also* Compl. at ECF pages 27, 36.

[3]      Plaintiff explains that her primary care physician "said it was not his place to get involved because this is something that happened at the workplace." Supp. at ECF page 25.

**B. Dr. Laakso**

Plaintiff saw Dr. Laakso on January 9, 2018. Compl. at ECF pages 9-10, 13-18; *see also* Compl. Add. at ECF page 15; Supp. at ECF page 28. At the appointment, plaintiff filled out a questionnaire in which she reported her medical history, listed all of her current medications, and stated that the "main reason" for her visit was "Trauma, Anxiety from some one putting an attempt with black powder on my life." Compl. at ECF page 14. Plaintiff also filled out a "mood evaluation" questionnaire in which she reported symptoms of irritability, racing thoughts, "[t]oo distractable," and "too active." *Id.* at ECF page 16. Asked if she had experienced "post partum blues" when she had her children, plaintiff said "yes, many women go through this," but denied any "mental health issues or substance abuse problems." Compl. at ECF page 27.

**\*3** In her notes, Dr. Laakso wrote that plaintiff presented with "paranoid delusions about coworkers," and that her past psychiatric history included "rec[urrent] depression since 20s." *Id.* at ECF page 9. Under "diagnostic impression," Dr.

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

Laakso wrote, "r/o [rule out] bipolar disorder F. 31.2" and "r/o delusional disorder F. 22." *Id.*; *see also id.* at ECF page 10 (same diagnoses). [4] Dr. Laakso prescribed Aripiprazole (Abilify) and Clonazepam (Klonopin), and concluded that plaintiff was "unable to work." *Id.* at ECF page 10.

[4]     "F. 31.2" is the ICD-10-CM diagnostic code for "bipolar affective disorder, current episode manic with psychotic symptoms." *See* World Health Organization, International Statistical Classification of Diseases and Related Health Problems, 10th Revision, available at https:// icd.who.int/browse10/2015/en (last visited Feb. 4, 2019). "F. 22" is the ICD-10-CM diagnostic code for "persistent delusional disorders." *Id.*

Also on January 9, 2018, plaintiff signed a form authorizing "any" physician having information concerning her physical or mental condition to provide that information to EHS "for the purpose of determining medical substantiation and the ability to return to work." Pl. Opp. (Dkt. No. 19) at ECF page 7. The following day, plaintiff's disability carrier, Liberty Mutual, asked Dr. Laakso for her office treatment notes and a "Functional Status Evaluation." *Id.* at 19-22. Dr. Laakso charged plaintiff $65 "to have a medical substantiation form" sent to Liberty Mutual, but failed to send the form, Compl. at ECF page 36, and in fact handed the paperwork back to plaintiff on January 23, 2018, at which point she "suggested another Psychiatrist to be seen by." Supp. at ECF page 30. Plaintiff later told Dr. Pachman that she did not wish to see Dr. Laakso again, "because I was tired of this back and forth and besides I did not like her anyway." *Id.*; *see also* Compl. Add. at ECF page 15 (Dr. Pachman, noting on January 23, 2018 that plaintiff "did not want to followup with Dr. Laakso further" and "was not given any note on return to work").

**C. Plaintiff's Claims**

Plaintiff sued Dr. Laakso on February 16, 2018, alleging that defendant's statement concerning her "past mental history" was "false." Compl. at ECF page 5 ("I never had psych problems in my past"); *see also id.* at ECF page 27 ("She wrote something about me having received some kind of mental treatment back in my 20's which is a blatant lie."); Supp. at ECF page 28 (Dr. Laakso "placed some lie on the evaluation form that stated in my 20's I had some mental issue which is a lie[.]"). In addition, plaintiff challenges Dr. Laakso's diagnostic impression, alleging that defendant "lied in her assessment," and "placed these negative diagnosis [sic] such as psychosis, Bipolar and paranoid and other things that

are not true about me," Compl. at ECF page 6, because she was "working on behalf of the hospital to find me unstable and not fit for duty." Supp. at ECF page 28. Finally, plaintiff complains that Dr. Laakso "prescribed me hard psych drugs that made me feel very sick with all of my other severe health [i]ssues." Compl. at ECF page 6. Plaintiff seeks compensation for the $65 that she was charged for the disability paperwork, reimbursement for the expenses she incurred in travelling to Dr. Laakso's Manhattan office, and unspecified damages for her "[e]motional stress, aggravation and grief." *Id.* [5]

[5]     In addition to this lawsuit, in which Dr. Laakso is the only defendant, plaintiff sued Mount Sinai and a number of her former coworkers in an action entitled *Fleming v. Mount Sinai Hospital*, No. 18-CV-1524 (RA) (S.D.N.Y.), asserting employment discrimination claims. A joint mediation was conducted, including all parties in both cases, resulting in a settlement of No. 18-CV-1524. *See* Order dated Oct. 10, 2018 (Dkt No. 22). However, the mediation was unsuccessful as to this action, *id.*, which was then referred to the undersigned Magistrate Judge for general pretrial management and for report and recommendation on defendant's motion. (Dkt. No. 23.)

**D. Defendant's Motion**

**\*4** On July 16, 2018, Dr. Laakso moved to dismiss plaintiff's claims against her pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Defendant argues that the allegations in the Complaint and its attachments (many of which appear to relate to her grievances against her co-workers and others at Mount Sinai rather than her claims against Dr. Laakso) are difficult to decipher and in any event do not "give rise to any clear cause or causes of action" against Dr. Laakso. *See* Def. Mem. (Dkt. No. 17), at 6. In particular, defendant complains, plaintiff provides no information concerning what "specific allegedly false medical history Dr. Laakso took and actually expressed." *Id.* at 7.

In her opposition papers, filed on July 23, 2018, plaintiff clarifies that she holds Dr. Laakso responsible for "making false statements to my medical records and character deformation [sic] in efforts to assist Mount Sinai to not find me fit for duty." Pl. Opp., at ECF page 2. [6] Specifically, plaintiff explains, "In [Dr. Laakso's] notes she stated that in my 20's I had a history of depression and delusional and

paranoid factors which is not true, and I never told her that and there is no medical history or mental history in my past. I have never been treated for mental health issues ever in my entire life. So, making false statements about someone's medical history is illegal and should be dealt with." *Id.* at ECF page 5. Plaintiff adds that Dr. Laakso prescribed "hard medications" that she took "for a short time and stopped right away" because they "conflict[ed] with my other daily medications." *Id.* at ECF pages 5-6. Plaintiff theorizes that Dr. Laakso "did this to assist Mount Sinai to help keep me from returning to work" and concludes that "the whole thing is a cover up for someone assaulting me at the job by what they did." *Id.*

6     Plaintiff's opposition papers include a hand-written declaration (at ECF pages 2-3), a typed letter addressed to the District Judge (at ECF pages 4-6), and a number of exhibits, including various employment and medical records, some of which were previously attached to her complaint or other filings.

In her reply brief, Dr. Laakso presses the Rule 12(b)(6) prong of her motion, arguing that plaintiff's claims, as "clarifie[d] and narrow[ed]" by her opposition, fail to state a claim for defamation or for medical malpractice. *See* Def. Reply Mem. (Dkt. No. 20) at 2, 5-8.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Although defendant does not seek dismissal pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, *see* Def. Mem. at 4, the Court has "an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte.*" *Abdoulaye v. Cimaglia,* 2018 WL 1890488, at *2 (S.D.N.Y. Mar. 30, 2018) (quoting *Joseph v. Leavitt,* 465 F.3d 87, 89 (2d Cir. 2006) ). In this case, even after construing plaintiff's complaint "liberally," *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir. 2006), and interpreting it "to raise the strongest arguments that [it] suggests," *id.* (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ), the Court cannot discern any basis for either federal question or diversity jurisdiction.

### 1. Federal Question

Federal question jurisdiction is governed by 28 U.S.C. § 1331, which states that the "district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'aris[es] under' federal law in two ways: (1) 'when federal law creates the cause of action asserted'; or (2) 'where a claim finds its origins in state rather than federal law,' but 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' " *Backer v. Cooperatieve Rabobank U.A.,* 338 F. Supp. 3d 222, 231 (S.D.N.Y. 2018) (quoting *Gunn v. Minton,* 568 U.S. 251, 257 (2013), and *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 690 (2006) ).

**\*5** When she filed this action, plaintiff checked a box to assert federal question jurisdiction, stating that her "civil human rights" were infringed when Dr. Laakso "made a false statement in my 1st time assessment evaluation." Compl. at ECF page 2. However, I cannot discern any federal constitutional or statutory question presented by her factual allegations. Plaintiff now characterizes her claim against Dr. Laakso as sounding in defamation. Pl. Opp. at ECF pages 1, 2, 5. Defamation is a state law tort which "does not suggest a violation of the United States Constitution or any federal laws by the defendant." *Allen v. Mag-Ent,* 2015 WL 8770078, at *2 (E.D.N.Y. Dec. 14, 2015) (finding no federal question jurisdiction). *See also Truong v. Am. Bible Soc'y,* 367 F. Supp. 2d 525, 527 (S.D.N.Y. 2005) (defamation "is not a federal question"), *aff'd sub nom. Truong v. Am. Bible Soc'y,* 171 F. App'x 898 (2d Cir. 2006).

Read generously, plaintiff's pleadings could also be construed as an effort to assert a claim for tortious interference with plaintiff's prospective business relationship with Mount Sinai, or for medical malpractice. However, tortious interference is also a state law tort, which ordinarily does not support federal question jurisdiction. *See Highland Capital Mgmt. LP. v. Schneider,* 198 F. App'x 41, 44 (2d Cir. 2006) ("we lack federal question jurisdiction over this case" because plaintiff could demonstrate the "wrongful" conduct element of the tort without establishing any violation of federal law); *PCVST Mezzco 4, LLC v. Wachovia Bank Commercial Mortg. Tr. 2007-C30,* 2015 WL 153048, at *9 (S.D.N.Y. Jan. 12, 2015) (remanding case to state court where only state law claims were asserted, including a claim for tortious interference); *Neat-N-Tidy Co. v. Tradepower (Holdings) Ltd.,* 777 F. Supp. 1153, 1157 (S.D.N.Y. 1991) (dismissing for lack of subject matter jurisdiction because plaintiff's claims, including a claim for tortious interference, presented no federal question).

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 62 of 106

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

The same is true of medical malpractice. *See Antonetti v. City of New York*, 2014 WL 4161968, at *4 (E.D.N.Y. Aug. 19, 2014) (dismissing case pursuant to Rule 12(b)(1) where, "[a]t best, plaintiff's complaint raises ... a medical malpractice claim against HHC," because "[t]he Court lacks jurisdiction over these state law claims"); *Obunugafor v. Borchert*, 2001 WL 1255929, at *2 (S.D.N.Y. Oct. 19, 2001) ("Plaintiff's claim for negligence or medical malpractice is a state claim and is neither created by federal law nor necessarily depends on the resolution of a substantial question of federal law."). Plaintiff's pleadings thus raise no federal question.

### 2. Diversity

Diversity jurisdiction is governed by 28 U.S.C. § 1332, which grants district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332. To "properly invoke diversity subject matter jurisdiction," the plaintiff must "establish[ ] that the $75,000 minimum is met." *Koso v. Haegele*, 2018 WL 6531496, at *2-3 (E.D.N.Y. Dec. 11, 2018). Ordinarily, the amount in controversy "is measured as of the time that a complaint is filed" and "is established by the face of the complaint and the dollar amount actually claimed." *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 154-55 (D. Conn. 2016).

Plaintiff Fleming alleges that she resides in New Jersey, *see* Compl. at ECF page 3, making her a citizen of New Jersey for diversity purposes. *See* 28 U.S.C. § 1332(a)(1). She alleges that defendant Laakso is a citizen of New York. Compl. at ECF page 3. The parties thus appear to be diverse. However, the only damages that plaintiff seeks are "compensation for the [$]65.00 [defendant] charged me for paperwork," unspecified expenses related to her local travel for the consultation, and similarly unspecified sums for her "emotional stress, aggravation, and grief." Compl. at ECF page 6. Thus, plaintiff "has not established that the $75,000 minimum is met." *Koso*, 2018 WL 6531496, at *2-3.

*6 Even though plaintiff is proceeding *pro se*, it is her obligation to "establish subject matter jurisdiction." *Koso*, 2018 WL 6531496, at *2 (dismissing *pro se* complaint for lack of subject matter jurisdiction, without leave to amend); *see also Uzoefune v. Am. Auto Shield, LLC*, 2018 WL 5624149, at *2 (E.D.N.Y. Oct. 30, 2018) (dismissing *pro se* complaint for lack of subject matter jurisdiction, without

leave to amend, where parties were diverse but "plaintiff seeks to recover only $15,500"). Moreover, a plaintiff's jurisdictional allegations, like her substantive allegations, must be plausible rather than "conclusory." *See Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65-66 (2d Cir. 2013) (affirming dismissal for lack of subject matter jurisdiction where "Wood's allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ); *Weir v. Cenlar FSB*, 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) ("the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible") (collecting cases); *Lapaglia*, 155 F. Supp. 3d at 153-57 (dismissing *pro se* complaint where the bulk of plaintiff's $110,000 in claimed damages against an insurance company represented the compensation he allegedly would have earned had defendant paid his claim, which in turn would have paid for plaintiff's planned trip to North Korea, to work as a public relations propagandist for "the Dear Leader Kim Jong-Un").

Since plaintiff does not allege that she satisfies the jurisdictional minimum, and since her factual allegations would not plausibly support a claim for $75,000 or more, I recommend, respectfully, that this action be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and 12(h)(3), leaving plaintiff free to refile in state court should she wish to do so.

### B. Failure to State a Claim

In the alternative, I recommend that defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be granted.

### 1. Legal Standards

When faced with a Rule 12(b)(6) motion, the trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This pleading standard "does not require detailed factual allegations, but it demands

2019 WL 959521

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009) (internal quotation marks omitted). At a minimum, the plaintiff must give each defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Littlejohn v. City of New York*, 795 F.3d 297, 309 (2d Cir. 2015) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 507 (2002) ).

A *pro se* plaintiff, as noted above, is " ' entitled to special solicitude.' " *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). The policy of liberally construing *pro se* submissions "is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 44 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ). Consistent with that approach, factual allegations made in a *pro se* plaintiff's opposition papers may be considered "as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012); *accord Scott v. Warden & Adm'r of Jurisdiction Correction Dep't & Med. Dep't*, 2010 WL 3785252, at *4 (S.D.N.Y. Aug. 23, 2010).

**\*7** However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Thus, even a *pro se* plaintiff "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Moreover, the court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint," *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005), and "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### 2. Defamation

"A plaintiff claiming defamation in New York must allege 'that the defendant published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory *per se* or caused

the plaintiff special harm, so long as the statement was not protected by privilege.' " *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011) ). [7] A plaintiff alleges defamation *per se*, and thus need not also allege special harm, if the false statement of fact (i) "charg[es] plaintiff with a serious crime," (ii) "tend[s] to injure [plaintiff] in his or her trade, business or profession," (iii) imputes to plaintiff a "loathsome disease," or (iv) imputes " 'unchastity to a woman.' " *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 165 (E.D.N.Y. 2014) (quoting *Zherka v. Amicone*, 634 F.3d 642, 645 n. 6 (2d Cir. 2011) ). "Special harm," which must be pleaded if plaintiff has not alleged defamation *per se*, is economic harm that flows "directly from the injury to reputation caused by the defamation." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (quoting *Matherson v. Marchello*, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998 (2d Dep't 1984) ). The harm must be economic and pecuniary. *Id.* Neither emotional distress nor physical injury qualifies as special harm. *See, e.g., Fruchter v. Sosse*, 1996 WL 640896, at *9, n. 9 (S.D.N.Y. 1996) (Injury to reputation and "great pain and mental anguish" are not "special damages").

[7]   Although plaintiff is a resident of New Jersey, all of her claims arise from the conduct of a New York physician, in New York, in connection with plaintiff's employment in New York. I therefore apply New York law to her common-law claims. *See Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001) (applying New York law to claims of defamation and tortious inference brought by a New Jersey resident against his New York employer and several supervisors).

In this case, as discussed in more detail below, plaintiff has failed adequately to plead a false statement of fact, publication, or malice sufficient to overcome the qualified privilege that protects statements made by a psychiatrist, with her patient's authorization, to that patient's employer (or insurance carrier) concerning her psychological fitness to return to work.

#### a) False Statement of Fact

"Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that only statements alleging facts can properly

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 64 of 106

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

be the subject of a defamation action.' " *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153, 623 N.E.2d 1163, 1167 (1993) (quoting *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139, 603 N.E.2d 930 (1992) ). Plaintiff's pleadings, read generously, allege that Dr. Laakso defamed her in two ways: by falsely stating that she had a history of mental illness, *see, e.g.*, Compl. at ECF page 5 (defendant wrote "something about me having a past mental history which is false"), and by falsely assessing her current psychological condition. *See id.* at ECF page 6 (defendant "lied in her assessment" and "placed these negative diagnosis [sic] such as psychosis, Bipolar and paranoid and other things that are not true about me"). I address each in turn.

**\*8** The allegation that Dr. Laakso misstated plaintiff's past mental health arguably charges defendant with making a false statement of historical fact. Moreover, the statement that plaintiff experienced "rec[urrent] depression since 20's," Compl. at ECF page 9, could only have been based on plaintiff's self-report, and plaintiff clearly alleges not only that she "never had psych problems in my past," *id.* at ECF page 5, but also that she "never told her that." Pl. Opp. at ECF page 5. Elsewhere in her pleadings, however, plaintiff acknowledges telling Dr. Laakso about her "post partum blues" when she had her three children. Compl. at ECF page 27.

Ordinarily, determining the truth or falsity of an allegedly defamatory statement "is not appropriate on a motion to dismiss under Rule 12(b)(6) because it takes the Court beyond the pleadings." *McCusker v. Hibu PLC*, 159 F. Supp. 3d 341, 350 (E.D.N.Y. 2016) (quoting *Fanelle v. LoJack Corp.*, 79 F. Supp. 2d 558, 562 (E.D. Pa. 2000) ). In this case, however, the admission is made within the pleadings themselves, such that the Court need not accept plaintiff's contradictory allegation that she "never told" Dr. Laakso about a history of depression. *Fisk*, 401 F. Supp. 2d at 368 (even in *pro se* cases, court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint"). [8]

[8]
    Plaintiff also denies that she had substance abuse issues, *see* Compl. at ECF page 5, or that she received any "mental health treatment back in my 20's." *Id.* at ECF page 27. However, plaintiff does not identify any false statement by Dr. Laakso as to these topics. In her notes, Dr. Laakso wrote that plaintiff was "[d]epressed first time" at age 25 and that she experienced postpartum depression "3x." Compl. at ECF page 9. Insofar as the notes are

decipherable, however, they do not appear to report any substance abuse issues or previous mental health treatment.

To the extent that plaintiff challenges Dr. Laakso's "assessment" of her condition, *see* Compl. at ECF pages 2,6, expressed as "r/o" bipolar disorder and delusional disorder (Compl. at ECF page 9), her defamation claim fails because the challenged statements are expressions of professional opinion rather than facts capable of being proven false. *See Shenoy v. Kaleida Health*, 158 A.D.3d 1323, 1324, 70 N.Y.S.3d 726 (3d Dep't 2018) (psychiatrist's written report as to plaintiff's "neuropsychological competence" could not be grounds for a libel claim because "the allegedly defamatory statements are expressions of pure opinion"); *Roth v. Tuckman*, 162 A.D.2d 941, 942, 558 N.Y.S.2d 264, 265 (3d Dep't 1990) (psychiatrist's "clinical assessment" that plaintiff had "a long-standing personality disorder" was a "constitutionally protected nonactionable expression of pure opinion"). [9] Not only did Dr. Laakso expressly characterize her view as a "diagnostic impression," Compl. at ECF page 9; she used the abbreviation "r/o," which, as defendant notes, "stands for 'Rule Out' in medical lexicon," Def. Reply Mem. at 4, suggesting that Dr. Laakso believed further assessment was required before a firmer diagnosis (which would itself be an opinion) could be made. [10] Dr. Laakso's diagnostic impression therefore cannot be the subject of a defamation claim.

[9]
    In *Senoy* and *Roth*, as here, the allegedly defamatory statements were made by a psychiatrist to whom the plaintiff had been referred in connection with his or her employment. Plaintiff Shenoy (who was himself a physician) was required to undergo a neuropsychological assessment after one of his patients died. *Shenoy*, 158 A.D.3d at 1323, 70 N.Y.S.3d at 728. The trial court denied summary judgment to the defendant psychiatrist, but the Appellate Division reversed and dismissed the defamation claim as a matter of law. *Id.* Plaintiff Roth became depressed after sustaining physical injuries in an automobile accident, which in turn led her to "stop[ ] working for three months. She filed a claim with her insurance carrier, CNA, for lost earnings. As part of its investigation of the claim, CNA required plaintiff to visit defendant, a psychiatrist that it had chosen." *Roth*, 162 A.D.2d at 941, 558 N.Y.S.2d at 265. "Defendant subsequently interviewed plaintiff

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 65 of 106

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

and her psychiatrist, reviewed the results of a psychological test completed by plaintiff and issued a report to CNA. In this report, defendant stated that 'the testing confirms the clinical assessment of an individual with a long-standing personality disorder.' " *Id.* The trial court granted summary judgment to the defendant psychiatrist on plaintiff's defamation claim and the Appellate Division affirmed, holding that the challenged statement was an "unmixed opinion" and therefore could not be actionable in defamation. *Roth,* 162 A.D.2d at 942, 558 N.Y.S.2d at 266.

10    There is no "rule out" modifier in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (known as the DSM-5). Rather, the "specifier 'provisional' can be used when there is a strong presumption that the full criteria will ultimately be met for a disorder but not enough information is available to make a firm diagnosis." Am. Psychological Assoc., Diagnostic and Statistical Manual of Mental Disorders 23 (5th ed. 2013) However, according to at least one web-based service for mental health professionals, "[i]n practice clinicians use [the term 'rule out'] incorrectly when they are unwilling to commit to a particular diagnosis." *See* Psychopedia, *"Rule-out" diagnoses (R/O),* https://sites.google.com/a/iconopsych.com/psychlopedia-com/rule-out (last visited Feb. 4, 2019).

### b) Publication

**\*9**  "To satisfy the publication element of defamation, the defendant must have published a defamatory statement of fact to a third party. 'A defamatory writing is not published if it is read by no one but the one defamed.' " *Medcalf v. Walsh,* 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013) (quoting *Ostrowe v. Lee,* 256 N.Y. 36, 38, 175 N.E. 505 (N.Y. 1931) (Cardozo, C.J.) ) (citation omitted); *Friedman,* 647 F. App'x at 47 (quoting *Chandok,* 632 F.3d at 814) ("A plaintiff claiming defamation in New York must allege 'that the defendant published to a third party' ").

Nowhere in plaintiff's voluminous submissions does she allege that any third party read any of the challenged statements in Dr. Laakso's notes, or any comparable statements (until plaintiff herself attached the notes to her Complaint some six weeks after they were written). To

the contrary: plaintiff complains that Dr. Laakso failed to send her "medical substantiation form" to Liberty Mutual. Compl. at ECF page 36. Plaintiff has therefore failed to allege publication, which independently requires dismissal of the claim. *See Mobile Data Shred, Inc. v. United Bank of Switzerland,* 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5, 2000) (dismissing defamation claim for failing to allege publication to third party); *Fuji Photo Film U.S.A., Inc. v. McNulty,* 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (quoting *Scholastic, Inc. v. Stouffer,* 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000) ) ("A pleading asserting a cause of action for defamation 'is only sufficient if it adequately identifies 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.' ' ").

### c) Defamation Per Se and Special Harm

Plaintiff has not pleaded any "special harm." She identifies no pecuniary injury caused by the content of Dr. Laakso's notes. Instead, she alleges that she feels emotional distress "because the hospital has taken away my job" (which occurred before she saw Dr. Laakso) and because of Dr. Laakso's "negative diagnosis." *See* Compl. at ECF page 6. However, statements attributing mental illness to a plaintiff, when made in the employment context, can – at least in some cases – qualify as statements tending to injure plaintiff in her trade or business, and therefore constitute defamation *per se,* which does not require allegations of special harm. *See, e.g., Recant v. New York Presbyterian Hosp.,* 25 Misc. 3d 1219(A), 901 N.Y.S.2d 910, 2009 WL 3490940, at *5 (N.Y. Sup. Ct. N.Y. Co. 2009) (statement that physician had "a long history of depression, manic depression, borderline personality disorder, and Percocet abuse" was actionable as defamation *per se* as tending to impugn physician in her profession); *Musacchio v. Maida,* 137 N.Y.S.2d 131, 132-33 (Sup. Ct. Kings Co. 1954) (statement suggesting that physician was "mentally unbalanced" "may hold him up to ridicule or contempt and is actionable without showing special damages when the language complained of is in reference to his profession"). *Cf. Cain v. Esthetique,* 182 F. Supp. 3d 54, 73-74 (S.D.N.Y. 2016) (allegedly slanderous statement concerning mental health of student in vocational education program was not defamation *per se* because student was not yet engaged in a "trade, business, or profession"), *aff'd sub nom. Cain v. Atelier Esthetique Inst. of Esthetics Inc.,* 733 F. App'x 8 (2d Cir. 2018).

2019 WL 959521

As a matter of public policy, there are forceful arguments against the expansion of the defamation *per se* doctrine to statements attributing any form of mental illness to persons in any or all trades, businesses, or professions. [11] In this case, however, I conclude that plaintiff's failure to allege special harm is not an independent ground for the dismissal of her defamation claim.

[11]  According to the National Institutes of Health, nearly one in five American adults lives with a mental illness. *See* National Institute of Mental Health, *Mental Illness: Statistics*, https://www.nimh.nih.gov/health/statistics/mental-illness.shtml (last visited Feb. 4, 2019). The longstanding stigma associated with mental illness tends to inhibit those suffering from treatable conditions from seeking help, and thus constitutes – in the words of the Surgeon General – the "most formidable obstacle to future progress in the arena of mental illness and health." U.S. Dep't of Health & Human Services, *Mental Health: A Report of the Surgeon General*, at 3 (1999), *available at* https://profiles.nlm.nih.gov/ps/retrieve/ResourceMetadata/NNBBHS (last visited Feb. 4, 2019). That stigma may be exacerbated by court decisions that "tacitly accept[ ] the defamatory potential" of claims that an employee has a mental illness. Karen M. Markin, *Still Crazy After All These Years: The Enduring Defamatory Power of Mental Disorder*, 29 Law & Psychol. Rev. 155, 182 (2005) ("The belief that mental disorder damages a person's professional capability appeared to contribute to the continuing stigma associated with this label.").

### d) Qualified Privilege

**\*10**  Because the absence of an applicable privilege is an element of the cause of action in New York, a plaintiff must affirmatively allege that the defamatory statement was not privileged. *See*, *e.g.*, *Egiazaryan v. Zalmayev*, 2011 WL 6097136, at \*5 (S.D.N.Y. Dec. 7, 2011) ("to survive the present motion, Egiazaryan must plausibly allege (1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) that is false, (5) made with actual malice, (6) causing injury, and (7) not protected by privilege"); *Dillon v. City of New York*, 261 A.D.2d 34, 38,

704 N.Y.S.2d 1, 5 (1st Dept 1999) ("The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se."). Plaintiff Fleming has not alleged that Dr. Laakso's statements were unprivileged, and for this reason as well has failed to state a claim for defamation.

Moreover, it is clear from plaintiff's factual allegations that if Dr. Laakso's statements were communicated to Mount Sinai, they were protected by the "qualified common interest privilege," which applies "when the defamatory statement is made between persons who share a common interest in the subject matter." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). "Such statements are protected for 'the common convenience and welfare of society, that is, the recognition that on certain occasions the good that may be accomplished by permitting an individual to make a defamatory statement without fear of liability ... outweighs the harm that may be done to the reputation of others.' " *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 290-91 (S.D.N.Y. 2006) (quoting *Garson v. Hendlin*, 141 A.D.2d 55, 532 N.Y.S.2d 776, 780 (2d Dep't 1988) ) (citation omitted).

Plaintiff saw Dr. Laakso for the express purpose of obtaining an assessment of whether she was "fit for duty," authorized her to communicate about plaintiff's mental health with Mount Sinai, and paid her $65 to communicate about the same subject with Liberty Mutual. Under these circumstances, any communications that Dr. Laakso did have with Mount Sinai or Liberty Mutual would fall comfortably within the common interest privilege. *See, e.g., Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169-70 (2d Cir. 2003) (school principal's statements to other staff members, to the effect that a school guidance counselor was "suicidal," were "clearly within the scope of the qualified privilege"); *Fuji Photo*, 669 F. Supp. 2d at 415 ("Fuji and its employees have a common interest in [plaintiff's] alleged employment-related misconduct"); *Shenoy*, 158 A.D.3d at 1323, 70 N.Y.S.3d at 728 (defendant psychiatrist's "written report and associated oral commentary" concerning plaintiff were protected by the common interest privilege); *Antoine v. New York City Health & Hosps. Corp.*, 6 Misc. 3d 1013(A), 800 N.Y.S.2d 341, 2005 WL 159612, at \*4 (Sup. Ct. N.Y. Co. Jan. 24, 2005) (statements of police officers and psychiatrists involved in plaintiff's involuntary hospital admission were made "upon a subject (i.e. plaintiff's mental state) on which

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

the officers and doctors had legal and societal interests to speak, and the statements were made to persons with corresponding interests"). Moreover, plaintiff authorized all of her physicians, including Dr. Laakso, to "give any and all information" about her physical or mental condition to Mount Sinai's EHS "for the purposes of determining medical substantiation and the ability to return to work." Pl. Opp. at ECF page 7.

To overcome the qualified privilege, a defamation plaintiff must plead and prove either common law or constitutional "malice," *Shenoy*, 158 A.D.3d at 1323, 70 N.Y.S.3d at 728; that is, "spite or ill will" (which must be "the one and only cause for the publication", *Fuji*, 669 F. Supp. 2d at 412 (quoting *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000) ) ) or knowledge of the probable falsity of the statement. *Fuji*, 669 F. Supp. 2d at 412. Under either branch of the analysis, "[m]ere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege." *Fuji* 669 F. Supp. 2d at 412 (quoting *Golden v. Stiso*, 279 A.D.2d 607, 608, 720 N.Y.S.2d 164 (2d Dep't 2001) ).

**\*11** As noted above, plaintiff suggests, at one point in her pleadings, that Dr. Laakso had no factual basis for her notation that plaintiff had experienced recurrent depression. *See* Pl. Opp. at ECF page 5 ("I never told her that.") However, plaintiff did tell Laakso about her "post partum blues," Compl. at ECF page 27, and offers no other facts that would suggest that Laakso knew her statements were false. Plaintiff has therefore failed to allege constitutional malice. She has also failed to allege common law malice, because she offers no factual support for her conclusory charge that Dr. Laakso "lied to assist Mount Sinai with finding me unfit for duty." Compl. at ECF Page 6. This allegation, which appears to be based on nothing more than "surmise, conjecture, and suspicion," is "insufficient to defeat the qualified privilege." *Fuji*, 669 F. Supp. 2d at 412.

### 3. Tortious Interference with Prospective Business Relations

In order to state a claim for tortious interference with business relations, "a plaintiff must adequately allege that: '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured

the relationship.' " *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017) (quoting *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012) ).

Here, although plaintiff had a business relationship with Mount Sinai, which she wished to improve by establishing that she was fit to return to work, she has not stated facts sufficient to support any of the other elements of the tort. Absent allegations that Dr. Laakso communicated any defamatory statements to Mount Sinai, plaintiff cannot establish that defendant interfered with the business relationship or that her acts "injured the relationship." *Glob. Packaging Servs.*, 248 F. Supp. 3d at 494. Moreover, plaintiff does not "plausibly allege that the defendant[ ] acted with the sole purpose of inflicting intentional harm on [plaintiff]," *Medcalf*, 938 F. Supp. 2d at 490, nor that she employed any "dishonest, unfair, or improper means" beyond the making of defamatory statements in her treatment notes. Thus, plaintiff's potential tortious interference claim extends no further than – and fails with – her claim of defamation. *Id.* at 491 (dismissing tortious interference claim along with defamation claim where no other improper means were alleged); *see also Shenoy*, 158 A.D.3d at 1324, 70 N.Y.S.3d at 728 (same).

### 4. Medical Malpractice

Defendant suggests that plaintiff's Complaint – in particular, the allegations concerning the medications that Dr. Laakso prescribed – could be read to assert a medical malpractice claim. *See* Def. Mem. at 7; Def. Reply Mem. at 7-8. "[T]he requisite elements of proof in a medical malpractice action are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." *Isaac v. City of New York*, 2018 WL 1322196, at \*7 (S.D.N.Y. Mar. 13, 2018) (quoting *Melvin v. Cty. of Westchester*, 2016 WL 1254394, at \*19 (S.D.N.Y. Mar. 29, 2016) ). Plaintiff must "specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care." *Id.*

Plaintiff alleges that Dr. Laakso "prescribed hard psych drugs," which made her "feel very sick with all of my other issues." Compl. at ECF page 6. In her opposition papers, she elaborates somewhat, stating that defendant prescribed those medications "without a full mental/psych history from the past" and "never found out much about my medical history."

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 68 of 106

Fleming v. Laakso, Not Reported in Fed. Supp. (2019)

2019 WL 959521

Pl. Opp. at ECF pages 2-3; *see also id.* at ECF page 6 ("She never asked for my medical history or anything, just gave me medication."). Plaintiff further alleges that she stopped taking the medications prescribed by Dr. Laakso "right away because of how they made me feel and conflict with my other daily medications." *Id.* at ECF page 5-6.

**\*12** Nowhere in her papers does plaintiff expressly allege that Dr. Laakso's conduct deviated from an accepted standard of care. *See Chavis*, 618 F.3d at 170 (a court "cannot invent factual allegations that [the plaintiff] has not pled"). Moreover, while she implies that the appropriate standard required Dr. Laakso to take her medical history and identify her other medications before prescribing additional drugs, any claim based on a failure to take those steps would be undercut by the documents attached to the Complaint, which include a questionnaire in which plaintiff listed all of her then-current medications and stated that she had a history of diabetes, high blood pressure, heart trouble, lung trouble, and kidney or urine trouble. Compl. at ECF page 14-15. As noted above, the Court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk*, 401 F. Supp. 2d at 368.

Additionally, plaintiff's allegations as to damages are wholly conclusory. The unadorned allegation that plaintiff felt sick after taking the medication is not sufficiently specific to support a cause of action for medical malpractice. *Isaac*, 2018 WL 1322196, at \*7 (dismissing *pro se* medical malpractice claim where plaintiff failed to "specify what injuries he allegedly suffered as a result of the alleged medical malpractice.")

#### 5. Leave to Replead

Because plaintiff is proceeding *pro se*, her claims should not be dismissed on the merits "without granting leave to replead at least once," so long as a liberal reading of her complaint "gives any indication that a valid claim might be stated." *Barnes v. United States*, 204 F. App'x 918, 919 (2d Cir. 2006) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ). However, the Court need not grant leave to amend where it would be futile. *Caddick v. Pers. Co. I LLC*, 2018 WL 3222520, at \*8 n.5 (S.D.N.Y. June 29, 2018).

In this case, given the multiple deficiencies in plaintiff's defamation claim and her potential tortious interference claim – notwithstanding the voluminous pleadings that she has already filed – I conclude that it would be futile to grant leave to replead either of those torts. Even if plaintiff could allege previously-unmentioned facts showing that the challenged statements were published, Dr. Laakso's diagnostic impressions would remain "expressions of pure opinion," *Shenoy*, 158 A.D.3d at 1324, 70 N.Y.S.3d 728, and her other statements, even if capable of being proven false, would be protected by the common interest privilege. *Id.*, 158 A.D.3d at 1323, 70 N.Y.S.3d 728. Similarly, while it is possible that plaintiff could better articulate a medical malpractice claim founded upon Dr. Laakso's failure to take her history before prescribing two medications that made her (briefly) "feel very sick," the documents attached to her current pleading, including the medical history forms she filled out, give no "indication that a valid claim might be stated." *Barnes*, 204 F. App'x at 919.

### III. CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's Complaint be DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(1) and 12(h)(3), for lack of subject matter jurisdiction, or – in the alternative – that her claims be DISMISSED WITH PREJUDICE, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief could be granted.

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Ronnie Abrams at 40 Foley Square, New York, New York 10007, and to the chambers of the assigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Abrams. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

2019 WL 959521

**All Citations**

Not Reported in Fed. Supp., 2019 WL 959521

---

**End of Document**                            © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 5:22-cv-01067-TJM-TWD    Document 4    Filed 11/07/22    Page 70 of 106

Fleming v. Laasko, Not Reported in Fed. Supp. (2019)

2019 WL 952349

2019 WL 952349
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Natalie Ykenhoff FLEMING, Plaintiff,
v.
Dr. Ulla K. LAASKO, MD, Defendant.

18-CV-1527(RA)
|
Signed 02/26/2019

**Attorneys and Law Firms**

Natalie Ykenhoff Fleming, North Brunswick, NY, pro se.

Judi Curry, Harris Beach PLLC, New York, NY, for Defendant.

ORDER ADOPTING REPORT & RECOMMENDATION

Ronnie Abrams, United States District Judge

**\*1** Plaintiff Natalie Ykenhoff Fleming, proceeding *pro se*, brought this action against Defendant Ulla K. Laasko, a psychiatrist, alleging that Dr. Laakso had violated her "[c]ivil [h]uman [r]ights" by making false statements in Plaintiff's treatment notes in an effort to help Ms. Fleming's former employer, Mt. Sinai Hospital, "keep [her] out of work." Compl. at 2. Defendant moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or, in the alternative, for a more definite statement of the Complaint pursuant to Fed. R. Civ. P. 12(e). Dkt. 16. On February 5, 2019, Magistrate Judge Barbara Moses issued a Report and Recommendation (the "Report") (Dkt. 26), recommending that this action be dismissed for lack of subject matter jurisdiction *sua sponte* pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3). [1] The Report was mailed to Plaintiff by the Clerk of Court on February 6, 2019.

[1]
> In her Report, Judge Moses also recommended that, if this Court reaches the merits, the case be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Report at 1. Because the Court agrees with Judge Moses that this case must be dismissed for lack of subject matter jurisdiction, it does not consider the Rule 12(b)(6) motion.

Parties may raise objections to a magistrate judge's report and recommendation within fourteen days after being served with a copy of the recommended disposition, Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1), or within seventeen days if the parties are served by mail, *see* Fed. R. Civ. P. 6(d). Where, as in this case, "no timely objection has been made ... a district court need only find that there is no clear error on the face of the record in order to accept the Report and Recommendation." *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 670 (S.D.N.Y. 2011) (internal quotation marks omitted).

The Court has reviewed the Report for clear error and found none. Although Plaintiff checked off the box in her Complaint indicating that her claim arose under federal question jurisdiction, Compl. at 2, the Court agrees with Judge Moses that she presents no "federal constitutional or statutory question" in her allegations, Report at 8. Rather, Plaintiff accuses Dr. Laakso of making false statements about her mental health in a psychiatric evaluation, *see* Compl. at 2, 5-6, which she explicitly characterizes in her opposition brief as sounding in defamation and slander, *see* Dkt. 19 at 1, 5 ("I am seeking a summary judgment on my behalf for slander and defamation of my character and false statements made to my medical records and evaluation."); *see, e.g., Sadallah v. City of Utica*, 383 F. 3d 34, 38 (2d Cir. 2004) (making clear that defamation is a matter of state and not federal law). [2]

[2]
> Judge Moses also determined that, "[r]ead generously, plaintiff's pleadings could also be construed as an effort to assert a claim for tortious interference with plaintiff's prospective business relationship with Mount Sinai, or for medical malpractice." Report at 9. These are both state tort law claims, however, and would thus not create federal question jurisdiction. *See* Report at 9; *Highland Capital Mgmt. LP v. Schneider*, 198 Fed. App'x 41, 44 (2d Cir. 2006) (holding that the court lacked federal question jurisdiction where plaintiff's claim against defendants was for tortious interference with prospective business relations); *Urena v. Wolfson*, No. 09-CV-1107 (KAM)(LB), 2010 WL 5057208, at \* 13 (E.D.N.Y. Dec. 6, 2010) ("[P]laintiff's tort claims for medical malpractice against the non-federal defendants arise under New York state law.").

**\*2** Nor, as Judge Moses correctly concluded, has Plaintiff established that the Court has diversity jurisdiction over this

**Fleming v. Laasko, Not Reported in Fed. Supp. (2019)**

2019 WL 952349

case. *See* Report at 10. Although the parties appear to be diverse, *see* Compl. at 3, 4 (listing the Plaintiff's residence as in New Jersey and Dr. Laakso's as in New York), Plaintiff has not shown, or attempted to show, that the $75,000 minimum amount in controversy is met, *see* 28 U.S.C. § 1332(a). In her Complaint, Plaintiff only seeks damages against Defendant for: (1) "the [$]65.00 [Defendant] charged [her] [f]or paperwork," (2) her travel expenses, and (3) an unspecified amount related to "emotional stress, aggravation and grief" that she allegedly suffered. Compl. at 6. These factual allegations do not create "a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc. of U.S.*, 347 F. 3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted).

Accordingly, the Court adopts Judge Moses' Report, and dismisses this case without prejudice for lack of subject matter jurisdiction.

As stated in the Report and Recommendation, failure to timely object precludes appellate review of this decision. Report at 25; *see, e.g., Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F. 3d 84, 92 (2d Cir. 2010).

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 16.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 952349

---

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**Harris v. Doe, Not Reported in Fed. Supp. (2018)**

2018 WL 1997976

2018 WL 1997976
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Derrick HARRIS and Tammy Ford, Plaintiffs,

v.

John DOE, Defendant.

17-CV-7256 (WFK)
|
Signed April 24, 2018
|
Filed 04/27/2018

**Attorneys and Law Firms**

Derrick Harris, Brooklyn, NY, pro se.

Tammy Ford, Brooklyn, NY, pro se.

**MEMORANDUM AND ORDER**

HON. WILLIAM F. KUNTZ, II, United States District Judge

**\*1** Plaintiffs Derrick Harris and Tammy Ford, who are residents of Brooklyn, New York, bring this *pro se* action for defamation against a John Doe defendant. Plaintiffs have paid the required filing fee. For the reasons discussed below, the action is dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

**BACKGROUND**

Plaintiffs, who reside in Brooklyn, New York, bring this action for defamation against a John Doe defendant, alleging that

> [o]n November 4, 2015, an anonymous person began publishing defamatory and libel statements about both plaintiffs in an Instagram web page. Such web page is title "Shame On You Tammy Ford," and is exclusively made for the purpose of slandering the names and reputations of the plaintiffs. Plaintiff Derrick Harris is a notable multi-platinum hip hop music

producer, and his co plaintiff Tammy Ford is also known as a reputable party promoter and model agency founder. Recently on May 22, 2017, another hateful and threatening post was published to this web page.

Compl. at 1, ECF No. 1. [1]

[1]  The Court refers to the page numbers assigned by the court's Electronic Case Filing ("ECF") system.

Plaintiffs seek "compensatory and punitive damages in the amount of 1 million dollars for each Plaintiff, resulting from financial, repetitional [sic], emotional and professional injury to Plaintiffs as well as any equitable relief as may be appropriate, and such other relief the Court may deem just and proper[.]" Compl. at 4-5.

**STANDARD OF REVIEW**

At the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and the Court is required to read the plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191-93 (2d Cir. 2008).

**DISCUSSION**

Although Plaintiffs are proceeding *pro se*, and their complaint is held to less stringent standards than pleadings drafted by lawyers, they still must establish that the court has subject matter jurisdiction over their action. Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte*. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do

**Harris v. Doe, Not Reported in Fed. Supp. (2018)**

Case 5:22-cv-01067-TJM-TWD    Document 4    Filed 11/07/22    Page 73 of 106

2018 WL 1997976

not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). If a court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62-63 (2d Cir. 2009).

**\*2** The basic statutory grants of subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. "A plaintiff properly invokes § 1331 jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh*, 546 U.S. at 513 (citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946) ). Plaintiffs allege a claim for defamation, but "there is no federal cause of action for defamation because it 'is an issue of state law, not of federal constitutional law....' " *Singletary v. Chalifoux*, 13 CV 4205, 2013 WL 5348306, at \*2 (E.D.N.Y. Sept. 23, 2013) (Gleeson, J.) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ). Thus, even liberally construed, plaintiffs' complaint does not present a federal question.

Plaintiffs also fail to establish that this Court has diversity jurisdiction over their claims under § 1332. A plaintiff properly invokes § 1332 jurisdiction when he presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. 28 U.S.C. § 1332. It is impossible for the Court to determine whether complete diversity of citizenship exists between plaintiffs and the defendant, as plaintiffs have not provided any address for the John Doe defendant.

Furthermore, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)

). Plaintiffs allege that "[d]efendant's actions have left both Plaintiffs' reputations in ruins, affecting both their current standings and future earning potential," Compl. at 5, but they have not met their burden to a "reasonable probability" that they can recover more than or even close to $75,000 in this action to meet the statutory jurisdictional requirement. *See Chase Manhattan Bank, N.A.*, 93 F.3d at 1070 (a plaintiff must also show that the amount-in-controversy is non-speculative in order to satisfy the statute).

### CONCLUSION

Accordingly, the complaint is dismissed without prejudice for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). In light of its duty to liberally construe *pro se* complaints, Plaintiffs are granted 30 days leave to file an amended complaint. Should Plaintiffs elect to file an amended complaint, the amended complaint must set forth facts sufficient to meet the citizenship and amount in controversy requirements set forth above. Plaintiffs are advised that the amended complaint will completely replace the original complaint, must be captioned "Amended Complaint," and must bear the same docket number as this Memorandum and Order.

If Plaintiffs fail to file an amended complaint within the time allowed, judgment shall issue dismissing this action for the reasons set forth above. Although Plaintiffs paid the filing fee to bring this action, the Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1997976

---

**End of Document**                         © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 74 of 106

Hernandez v. Doe, Not Reported in Fed. Supp. (2016)

2016 WL 4995231

2016 WL 4995231
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Roberto HERNANDEZ, Plaintiff,

v.

John DOE, Defendant.

16-CV-2375 (KAM)(LB)
|
Signed 09/18/2016

**Attorneys and Law Firms**

Roberto Hernandez, Woodside, NY, pro se.

### MEMORANDUM & ORDER

MATSUMOTO, United States District Judge

**\*1** Plaintiff Roberto Hernandez brings this *pro se* action against a John Doe defendant, invoking federal question jurisdiction. Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is GRANTED for purposes of the instant order. For the reasons provided below, this action is DISMISSED.

### BACKGROUND

Plaintiff brings this action against a John Doe defendant alleging that he was the victim of identity theft and that this unknown "defendant willfully filed a false [tax] return claiming plaintiff's depend[e]nts within the meaning of 26 U.S.C. § 152." [1] (ECF No. 1, Complaint ("Compl.") at 6. [2]) Plaintiff explains that he "is bringing suit for enjoyment and interference with his refund, obstruction, etc.," and is not seeking a refund from the Internal Revenue Service ("IRS"). (*Id.* at 8.) "Rather, he is asking John Doe to pay for all expenses caused for committing identity theft." (*Id.*) Plaintiff explains that he "incurred cost" to resolve the identity theft problem and also suffered "stress," "anxiety," and "complication of [his] diabetes." (*Id.* at 5.) Plaintiff attaches a letter from the IRS, dated April 5, 2016, which informs him, as relevant here, that

[criminal] actors attempted to view your tax information using your personal information, including Social Security number (SSN), which they obtained from a source outside the IRS.... The use of your SSN in this instance wasn't successful, and our records indicate that a transcript of your account wasn't disclosed. This incident hasn't affected your tax return or tax account. However, because the attempt indicates that the third party who attempted to secure your tax information may have your personal information, you should take the appropriate steps to protect yourself from any potential effects of identity theft.

(*Id.* at 12.)

1   26 U.S.C. § 152 sets forth the definition of the term "dependent" under the Internal Revenue Code.

2   Because plaintiff's complaint is drafted partially on a form and partially on blank sheets of attached paper, the court cites to individual pages in the complaint using the pagination provided by the electronic court filing system.

### STANDARD OF REVIEW

At the pleading stage of the proceeding, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Furthermore, it is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the court is required to read a *pro se* plaintiff's complaint liberally and interpret it to raise the strongest arguments it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under 28 U.S.C. § 1915(e)(2)(B),

2016 WL 4995231

however, a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

## DISCUSSION

**\*2** Although plaintiff is proceeding *pro se*, and his complaint is held to less stringent standards than pleadings drafted by attorneys, *see Erickson*, 551 U.S. at 94, he still must establish that the court has subject matter jurisdiction over his action. *See, e.g., Rene v. Citibank NA*, 32 F. Supp. 2d 539, 544 (E.D.N.Y. 1999) (dismissing *pro se* complaint for lack of subject matter jurisdiction). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte*. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Durant, Nichols, Houston, Hodgson & Cortese–Costa, P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir. 2009).

The basic statutory grants of subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. "Federal subject matter jurisdiction exists only where the action presents a federal question, as provided in 28 U.S.C. § 1331, or where there is diversity jurisdiction, as authorized by 28 U.S.C. § 1332." *Igartua v. Dep't of Homeless Servs.*, Nos. 15-CV-3806, 15-CV-3807, 2015 WL 4656557, at \*2 (E.D.N.Y. Aug. 5, 2015) (internal quotation marks and citations omitted). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotation marks and citation omitted).

Even under the most liberal construction, plaintiff has presented no valid basis for this court's jurisdiction over his claims. It is "this Circuit's policy that it is for the IRS, and not private citizens, to enforce the Internal Revenue Code." *Obal v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-2463, 2015 WL 631404, at \*4 (S.D.N.Y. Feb. 13, 2015); *Seabury v. City of N.Y.*, No. 06-CV-1477, 2006 WL 1367396, at \*5 (E.D.N.Y. May 18, 2006) ("Private citizens cannot

enforce the provisions of the Tax Code. That is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 308 (1978). Federal courts have consistently refused to imply a private cause of action under the tax laws ...."). To the extent plaintiff seeks to invoke the federal identity theft statute, 18 U.S.C. § 1028, a criminal law, federal courts have held that 18 U.S.C. § 1028 is purely criminal in nature and creates no private right of action. *See Senese v. Hindle*, No. 11-CV-0072, 2011 WL 4536955, at \*12 (E.D.N.Y. Sept. 9, 2011) (citing *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302 (E.D.N.Y. 2004)).

Plaintiff's reliance on *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006), is misplaced. In *Yousuf*, the D.C. Circuit held that the United States government "is a 'person' subject to subpoena under [Fed. R. Civ. P.] 45 regardless whether it is a party to the underlying litigation." *Id.* Plaintiff appears to contend that *Yousuf* would permit him to subpoena the IRS to discover the identity of the individual who obtained his identification information. (Compl. at 8.) Even if plaintiff were permitted to subpoena the IRS, it would be of no use to him because — as set out above — he has no private right of action to enforce the provisions of Internal Revenue Code.

## CONCLUSION

**\*3** Accordingly, the complaint is dismissed. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B). The court has considered whether to grant leave to amend the complaint, in light of its duty to liberally construe *pro se* complaints, but finds that amendment would be futile. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

If plaintiff believes he was the victim of a crime, he should contact the appropriate authorities. [3]

3        Thus, plaintiff may seek the assistance of federal law enforcement, for example, with agents of the IRS, the Social Security Administration, or the Federal Bureau of Investigation. He may also contact the City Bar Justice Center FedPro Clinic

Case 5:22-cv-01067-TJM-TWD    Document 4    Filed 11/07/22    Page 76 of 106

Hernandez v. Doe, Not Reported in Fed. Supp. (2016)

2016 WL 4995231

attorney to make an appointment for information, advice, and limited scope legal assistance free of charge. The court has annexed to this memorandum and order information regarding the clinic.

**SO ORDERED**.

Dated: September 18, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4995231

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 77 of 106

Clark v. Student Loan Finance Corp., Not Reported in Fed. Supp. (2019)

2019 WL 4412571

2019 WL 4412571
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Sean A. CLARK, Plaintiff,
v.
STUDENT LOAN FINANCE CORP. and United
States Department of Education, Defendants.

18-CV-9354 (JPO)
|
Signed 09/16/2019

**Attorneys and Law Firms**

Sean A. Clark, New York, NY, pro se.

Sophia Ree, Edumin Corrales, Landman Corsi Ballaine &
Ford PC, New York, NY, for Defendant Student Loan Finance
Corporation.

Alexander James Hogan, United States Attorney's Office,
Edumin Corrales, Landman Corsi Ballaine & Ford P.C., New
York, NY, for Defendant U.S. Department of Education.

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

 **\*1**  Plaintiff Sean A. Clark brings this lawsuit *pro se* against
Defendant Student Loan Finance Corporation ("SLFC") and
Defendant United States Department of Education ("DOE")
(collectively "Defendants") in connection with Defendants'
attempts to collect on Plaintiff's student loan debt. Clark
alleges that Defendants' actions violate (1) the Americans
with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et sec. (the
"ADA"); (2) the Fourteenth Amendment to the United States
Constitution; (3) the International Covenant on Civil and
Political Rights, Dec. 19, 1966, 999 U.N.T.S. 171 ("ICCPR");
and (4) the Identify Theft and Assumption Deterrence Act of
1998, 18 U.S.C. § 1028 ("Section 1028"). (Dkt. No. 4 at 2,
5-6.)

Defendants have separately moved to dismiss Plaintiff's
amended complaint. (Dkt. Nos. 13, 39.) For the reasons that
follow, Defendants' motions to dismiss are granted. Plaintiff
is granted leave to amend his complaint, but only to add any
claims under the Administrative Procedure Act, 5 U.S.C. §§
706(2)(A), (E) ("APA") against the DOE. Finally, Plaintiff's

motion for discovery is denied as moot in light of the Court's
granting of Defendants' motions to dismiss. (Dkt. No. 43.)

**I. Background**

In July 2015, Plaintiff commenced an action against the DOE
alleging that DOE was illegally garnishing $26.00 per month
of Plaintiff's Social Security disability benefits to satisfy
Plaintiff's student loan debt—debt which Plaintiff alleges was
taken out in his name without his consent or knowledge. *Clark
v. United States Dep't of Ed.*, No. 15-cv-05863 (S.D.N.Y.
2015) ("Prior Action"). Also in July 2015, Plaintiff submitted
an application to the DOE seeking a discharge of this debt,
claiming that his identity had been stolen. (Dkt. No. 40-1 at 2.)

The DOE initially denied Plaintiff's application for discharge
because Plaintiff failed to supply necessary documents. The
DOE, however, later admitted that its decision was erroneous
because Plaintiff's claim was more accurately interpreted as
a claim of common law fraud or forgery, which is subject
to a different standard of evaluation than identity theft.
Accordingly, the DOE sought remand in the Prior Action,
which was granted by the court. (Dkt. No. 40-2 at 5–6; Dkt.
No. 40-3.)

Plaintiff instituted this action against SLFC on October 12,
2018. (Dkt. No. 1 ("Compl.").)) Approximately three months
later, on January 15, 2019, the DOE issued its administrative
decision denying Plaintiff's application for discharge. (Dkt.
No. 39-1 at 2.) Plaintiff added the DOE as a Defendant on
October 26, 2018, upon filing his amended complaint. (Dkt.
No. 4 ("Am. Compl.").)

In the present action, Plaintiff makes allegations that are
largely similar to those in the Prior Action. Specifically,
Plaintiff alleges that Defendants seek to collect on outstanding
student loan debt that he does not owe. (Am. Compl. at 5-6.)
Plaintiff asserts that he is not liable for the loans because they
were obtained by another person through fraud, as Plaintiff
has not attended school outside of community college in
2000 and "a couple of tech courses in 2001." (*Id.*) Plaintiff
also alleges that the Social Security Administration paid all
his debts in 2013. (*Id.*) Defendants now move separately
to dismiss Plaintiff's amended complaint for lack of subject
matter jurisdiction and for failure to state a claim pursuant Fed
R. Civ. P. 12(b)(1) and (6) respectively. (Dkt Nos. 13, 39.)

**II. Legal Standard**

Clark v. Student Loan Finance Corp., Not Reported in Fed. Supp. (2019)

2019 WL 4412571

**\*2** A district court must dismiss a claim for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(1). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings. *Id.*

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when plaintiffs plead facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "must accept as true all well-pleaded factual allegations in the complaint, and 'draw all inferences in the plaintiff's favor.' " *Goonan v. Fed. Reserve Bank of New York*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)) (brackets omitted).

Finally, courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss or motions for summary judgment. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotations omitted). Therefore, courts interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation omitted). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## III. Discussion

### A. Subject Matter Jurisdiction

In his amended complaint, Plaintiff asserts that Defendants violated the ICCPR and Section 1028 in seeking debt payments from Plaintiff that Plaintiff allegedly does not owe. (Am. Compl. at 2.) But where "[a] federal statute that does not create or imply a private right of action[,] [it] does not present a federal question pursuant to 28 U.S.C. § 1331 on behalf of private individuals," depriving federal courts of subject matter jurisdiction. *Biran v. JP Morgan Chase & Co.*, No. 02 Civ. 5506, 2002 WL 31040345, at \*3 (S.D.N.Y. Sept. 12, 2002) (citing *Merrel Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804 (1986)).

The Second Circuit has held that the "ICCPR does not create a private right of action" because "the United States ratified the treaty subject to the understanding it was not self-executing." *Veiga v. World Meteorological Organisation*, 368 F. App'x 189, 190 (2d Cir. 2010). Section 1028 also does not supply a private right of action because the "statute is criminal in nature." *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302 (E.D.N.Y. 2004); *Prince v. City of New York*, 2009 WL 2778262, at \*1 n.3 (S.D.N.Y. Sept. 2, 2009) (dismissing portions of a complaint that alleged causes of action based on Section 1028 because it is a provision "of the federal criminal code that do[es] not provide any private right of action."). As neither statute provides a private right of action and Plaintiff has not demonstrated that Congress intended to make a private remedy available, *see Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (holding that the party who seeks to imply a private right of action bears the burden to show that Congress intended to make one available), the Court lacks subject matter jurisdiction and must dismiss Plaintiff's causes of action under the ICCPR and Section 1028 against both Defendants.

### B. Failure to State a Claim

**\*3** Plaintiff's remaining argument is that Defendants violated his civil rights pursuant to the ADA and the Fourteenth Amendment by attempting to collect on debt obligations that Plaintiff allegedly does not owe. (Am. Compl. at 2; Dkt. No. 22 at 9; Dkt. No. 44 at 4.) The Court considers each claim in turn, liberally construing Plaintiff's amended complaint where necessary to make them applicable to the Defendants. *Erickson*, 551 U.S. at 94.

### 1. ADA

Plaintiff asserts that Title II of the ADA is violated by Defendants' attempt to collect on his debt. (Dkt. No. 22 at 9; Dkt. No. 44 at 4.) Under Title II of the ADA, "no qualified

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 79 of 106

Clark v. Student Loan Finance Corp., Not Reported in Fed. Supp. (2019)

2019 WL 4412571

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to prove a violation, a plaintiff must establish "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) (citing *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003)).

Plaintiff has not pleaded any facts that plausibly indicate that he was denied the benefits or services of a public entity due to a disability. Plaintiff's argument appears to be that the Social Security Administration paid all of Plaintiff's debt, thereby conferring on him a benefit, which is now being denied by Defendants in their attempts to collect debt that Plaintiff alleges he does not owe. (Dkt. No. 22 at 9.) Plaintiff's argument is unavailing. Here, based on the allegations, Plaintiff did not seek a benefit from Defendants which Defendants denied due to his disability. Defendants' attempting to collect on unpaid debt does not constitute a denial of any previous benefit Plaintiff may have received.

But even if the attempt to collect outstanding debt constitutes a denial of benefits, neither SLFC nor the DOE would be liable under Title II of the ADA because they are not public entities under the statute. The ADA defines a public entity as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(A)-(C). SLFC is a federal loan servicer and the DOE is a federal agency. *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000) ("Title II of the ADA is not applicable to the federal government."). Accordingly, Plaintiff's ADA claim must be dismissed as to both Defendants.

A similar result is warranted even if the Court considers the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program

or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. Hence, "to establish a violation of the Rehabilitation Act, Plaintiff must show that he: (1) is an individual with a disability; (2) is otherwise qualified for benefits under the federally funded program; and (3) has been denied those benefits because of his disability." *Mondragon v. Baruch Coll.*, 2018 WL 4689192, at *3 (E.D.N.Y. Sept. 28, 2018). As already discussed, nothing Plaintiff has pleaded or argued has shown that he was denied benefits from a federally funded program because of his disability. Accordingly, his ADA cause of action is dismissed as to both Defendants. *See Atkins v. Cty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (failure of a plaintiff to adequately allege that the plaintiff was denied benefits is a "fundamental defect that may lead to the dismissal" of ADA and Rehabilitation Act claims) (internal quotations omitted).

### 2. Fourteenth Amendment

**\*4** Plaintiff argues that his constitutional rights have been violated by the Defendants because he "was deprived of a certain right of not being able to continue [his] education for further advancement" because his outstanding debt makes him "ineligible to receive financial aid." (Dkt. No. 22. at 9.) Plaintiff claims this deprivation is actionable against SLFC under 42 U.S.C. § 1983 (*Id.*), and under the Fourteenth Amendment broadly against the DOE. (Dkt. No. 44 at 9–10). Plaintiff's arguments are unavailing.

At the outset, SLFC, in attempting to collect on Plaintiff's debt, was neither a state actor nor a private party acting under the color of state law. In *Spear v. West Hartford*, the Second Circuit noted that Section 1983 only addresses "injuries caused by state actors or those acting under color of state law[,]" and held that "[a] private defendant may be held liable only as a willful participant in joint activity with the State or its agents." 954 F.2d 63, 68 (2d Cir. 1992) (citation and internal quotations omitted). There is no plausible allegation that SLFC was a willful participant in a joint activity with the State or its agents such that it could be liable under the Fourteenth Amendment via Section 1983. Therefore, Plaintiff's Fourteenth Amendment claim against SLFC must be dismissed.

Second, the allegations do not establish any deprivation of Plaintiff's liberty or property without due process. As the Fourteenth Amendment applies to states and not the federal government, *see Dusenbery v. United States*, 534 U.S. 161,

Clark v. Student Loan Finance Corp., Not Reported in Fed. Supp. (2019)

2019 WL 4412571

167 (2002), the Court construes Plaintiff's claim against the DOE as a due process claim under the Fifth Amendment. Plaintiff asserts that the DOE garnished his Social Security disability payments, which constituted his property, without due process. This argument lacks merit.

Under "[t]he Debt Collection Act of 1982 ... after pursuing the debt collection channels set out in 31 U.S.C. § 3711(a), an agency head can collect an outstanding debt 'by administrative offset,' " *i.e.*, the practice of withholding federal payment in satisfaction of a debt owed to the federal government. *Lockhart v. United States*, 546 U.S. 142, 144 (2005) (citing 31 U.S.C. § 3716(a)). This includes Social Security disability benefits, though the statute exempts $9000 in benefits per year from offset. 31 U.S.C. § 3716(3)(A)(ii). To offset such benefits, the "creditor agency must certify to [the Department of Treasury] that the debt is eligible for collection by offset and that all due process protections have been met." *Johnson v. U.S. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008) (citing 31 C.F.R. § 285.5(d)(3)(ii), (d)(6)). In these cases, due process requires (1) written notification; (2) an opportunity to inspect and copy the records of the agency with respect to the debt; (3) an opportunity for review within the creditor agency, including the opportunity to present evidence; and (4) an opportunity to enter into a written repayment agreement with the creditor agency. 31 C.F.R. § 285.5(d)(6)(ii)(A)-(D).

Plaintiff's complaint does not plausibly suggest that he was denied due process. Plaintiff does not allege that he was not provided with adequate written notification of garnishment. Rather, Plaintiff asserts that a court order was required for the DOE to collect his debt via administrative offset. As already discussed, however, the statutory scheme does not require a creditor agency to receive a court order prior to the administrative offset; it requires only certification to the Department of Treasury that the debt is eligible for collection and all due process protections have been met. *See Johnson*, 300 F. App'x at 862; 31 C.F.R. § 285.5(d)(3)(ii), (d)(6). Here, the allegations establish that Plaintiff was given adequate process. Plaintiff submitted an application to the DOE for discharge of his debt, which was denied after review in 2015, and, after remand in the Prior Action, was re-reviewed and denied again in January 2019. Finally, the DOE ensured that despite the garnishment Plaintiff received $750 per month (Dkt. No. 36 at 5–6), which totals $9000 per year, the amount required to be preserved under the statute, 31 U.S.C. § 3716(3)(A)(ii). Accordingly, Plaintiff's Fifth Amendment

claim against the DOE must be dismissed as Plaintiff does not plausibly allege any violation of his due process rights.

### C. Leave to Amend

**\*5** The Second Circuit has held that "[d]istrict courts should generally not dismiss a pro se complaint without granting the plaintiff leave to amend.... However, leave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). As Plaintiff filed his amended complaint three months prior to the DOE's final administrative determination regarding Plaintiff's application for discharge, any claims Plaintiff may have had under the APA would not have been ripe at the time he filed the amended complaint. *See generally Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (holding that agency actions are not ripe for review under the APA "until an administrative decision has been formalized and its effects felt in a concrete way...."). And though Plaintiff's opposition to the DOE's motion included his arguments under the APA (Dkt. No. 44 at 10–11), "[t]he complaint cannot ... be amended by the briefs in opposition to a motion to dismiss," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001) (citing *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999)). Accordingly, the Court declines to consider Plaintiff's arguments under the APA until the complaint is amended and the DOE has been afforded an opportunity to fully brief the issue. *See generally Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (where matters outside the pleading are presented in response to a 12(b)(6) motion, a "court may exclude the additional material and decide the motion on the complaint alone."). However, Plaintiff is not granted leave to amend his claims under the ICCPR, Section 1028, the ADA, and the Fourteenth Amendment because amendment would be futile with respect to those claims. *See Ashmore*, 510 F. App'x at 49.

### IV. Conclusion

For the foregoing reasons, SLFC's and DOE's motions to dismiss Plaintiff's Amended Complaint are GRANTED.

Plaintiff is granted leave to file an amended complaint asserting any claims he may have under the Administrative Procedure Act, provided that he must do so on or before October 17, 2019. If no amended complaint is filed on or before October 17, 2019, this action will be dismissed with prejudice.

2019 WL 4412571

The Clerk of Court is directed to close the motions at Docket Numbers 13, 39, and 43, and to terminate Defendant Student Loan Finance Corporation as a party to this action.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4412571

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 11449477

2018 WL 11449477
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Greychen M. Correa CABRERA, Plaintiff,
v.
U.S. DEPARTMENT OF EDUCATION and
Marinello School of Beauty, Defendants.

No. 6:18-cv-06476(MAT)
|
Signed July 5, 2018

**Attorneys and Law Firms**

Greychen M. Correa Cabrera, Rochester, NY, Pro Se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

 *1 Proceeding *pro se*, plaintiff Greychen M. Correa Cabrera ("plaintiff") instituted this action by filing a complaint (Docket No. 1) dated June 27, 2018, against defendants the United States Department of Education (the "DOE") and the Marinello School of Beauty ("MBS") (collectively "defendants"), based on allegations that a student loan in plaintiff's name had been obtained through identity theft. Later that same day, plaintiff filed an amended complaint (Docket No. 3), alleging substantially similar allegations as to defendants. The amended complaint is the operative pleading in this action.

Before the Court is plaintiff's motion to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). The Court finds that Plaintiff's supporting affirmation sufficiently establishes her inability to pay for the prosecution of her case. Accordingly, Plaintiff's motion for *in forma pauperis* status (Docket No. 2) is granted. The Court has also reviewed the complaint as required by 28 U.S.C. § 1915(e)(2) ("Section 1915(e)(2)"). As discussed below, the Court finds that plaintiff's amended complaint is subject to dismissal. The Court further finds that, because there is no indication that plaintiff could state a viable claim as to any defendant, leave to amend should not be granted.

**II. Screening of the Complaint under Section 1915(e)(2)**

**A. Legal Standard**

Under Section 1915(e)(2), the Court must conduct an initial screening of a *pro se* litigant's complaint and must dismiss if it is "frivolous or malicious"; "fails to state a claim upon which relief may be granted"; or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.' " *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

*Pro se* litigants such as plaintiff "are afforded a wide degree of latitude with regard to their submissions, as the Court construes their papers to raise the strongest arguments that they suggest." *Washington v. Reilly*, 226 F.R.D. 170, 171 (E.D.N.Y. 2005) (internal quotation omitted). *Pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," and are therefore not required to provide explicit legal theories of recovery in order to state a viable claim. *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

**B. Factual Allegations**

Plaintiff alleges that in 2011, when she lived in Puerto Rico, an unknown person used her personal information to request student loans to attend MBS in California. Plaintiff is not sure how this individual accessed her information, but he or she used it to falsify plaintiff's signature and obtain federal student loans. The DOE is now demanding that Plaintiff repay the fraudulently obtained loans, and plaintiff's income tax returns were garnished and obtained refunds due to the plaintiff in the years 2015, 2016, and 2017. Plaintiff apparently asked the DOE to forgive the loans on the basis that they were fraudulently obtained, but that request was denied. Plaintiff asks the Court to "clear[ ] [her] name" so that she is not legally responsible for the student loans at issue, to have the garnished portions of her income tax refunds returned to her, and to cause the identity theft to be prosecuted. Docket No. 3 at 4.

**C. Plaintiff Cannot Seek Criminal Prosecution**

 *2 Plaintiff's amended complaint asks the Court to criminally prosecute the individual who stole her identity. However, there is no private cause of action for criminal

prosecution. *See Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another") (internal quotation omitted). The decision whether or not to seek criminal prosecution in a given case lies solely with the prosecuting authorities, and this Court therefore lacks jurisdiction to grant plaintiff's request to institute a criminal prosecution against the unknown individual who allegedly stole her identity. *See Bryant v. Virgin Islands*, No. 1:12-CV-87-JGM, 2012 WL 1910092, at *2 (D. Vt. May 25, 2012) ("[T]his Court has no jurisdiction to order criminal prosecutions. [C]riminal prosecutions are within the exclusive province of the public prosecutor, who has complete discretion over the decision to initiate, continue or cease prosecution.") (internal quotation omitted and second alteration in original).

### D. Plaintiff Fails to State a Claim Against MBS

Plaintiff has failed to state a valid claim against MBS. There is no private federal cause of action for identity theft. *See Hernandez v. Doe*, No. 16-CV-2375 (KAM)(LB), 2016 WL 4995231, at *2 (E.D.N.Y. Sept. 18, 2016) ("[T]he federal identity theft statute ... is purely criminal in nature and creates no private cause of action."). Accordingly, to the extent plaintiff is attempting to allege that MBS participated in the identify theft, she has failed to state a viable claim.

Plaintiff also cannot seek a discharge of the allegedly fraudulently obtained loans from MBS. MBS has no authority to discharge a student loan - that authority resides solely with the DOE. There is no cognizable legal theory on which plaintiff can seek this relief from MBS, and therefore, she has failed to state a claim as to that defendant.

### E. Plaintiff has not Stated a Claim against the DOE

Pursuant to 34 C.F.R. § 682.402(e)(1)(i), an individual may seek a discharge of the obligation to repay a federal student loan where the loan was obtained "as a result of a crime of identity theft." Where such a discharge is granted, the individual is relieved of any past or present obligation to repay the loan or any associated charges, and is entitled to reumbursement of "amounts paid voluntarily or through enforced collection on" the discharged loan. 34 C.F.R. § 682.402(e)(2)(i),(ii).

In order to receive a discharge on the basis of identity theft, an individual must submit a written request and a sworn statement certifying "that the individual did not sign the promissory note, or that any other means of identification used to obtain the loan was used without the authorization of the individual claiming relief" and "that the individual did not receive or benefit from the proceeds of the loan with knowledge that the loan had been made without the authorization of the individual." 34 C.F.R. § 682.402(e)(3)(v)(A),(B). The individual must also provide "a copy of a local, State, or Federal court verdict or judgment that conclusively determines that the individual who is named as the borrower of the loan was the victim of a crime of identity theft by a perpetrator named in the verdict or judgment." 34 C.F.R. § 682.402(e)(3)(v)(C).

Where the DOE denies an individual's application for a loan discharge, that individual may seek judicial review of the determination pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701–706. The Court may set aside the DOE's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or ... unsupported by substantial evidence in a case." *Austin v. U.S. Dep't of Educ.*, No. 08 CV 5559, 2010 WL 1172569, at *3 (N.D. Ill. Mar. 19, 2010) (internal quotation omitted) (reviewing the DOE's denial of loan discharge application under the APA); *see also McGuire v. Duncan*, 138 F. Supp. 3d 1076, 1083 (E.D. Mo. 2015) (same).

**\*3** Here, reading the allegations of the amended complaint in the light most favorable to plaintiff, she arguably alleges that the DOE improperly denied her request to discharge the allegedly fraudulently obtained student loans, on the basis that her certification was insufficient. However, plaintiff's factual allegations make it clear that she does not meet the qualifications for a discharge on the basis of identity theft. As set forth above, in order to obtain such a discharge, plaintiff was required to submit to the DOE "a copy of a local, State, or Federal court verdict or judgment that conclusively determines that the individual who is named as the borrower of the loan was the victim of a crime of identity theft by a perpetrator named in the verdict or judgment." 34 C.F.R. § 682.402(e)(3)(v)(c). Plaintiff's amended complaint indicates that plaintiff does not know who the identity thief was, that plaintiff does not know how the identity theft occurred, and that legal action has not been taken against the identity thief. Without that information (set forth in a court verdict or judgment), plaintiff cannot establish her entitlement to a discharge. Accordingly, plaintiff has failed to state a plausible claim as to the DOE.

### F. Leave to Amend is not Warranted

Generally, the Court will grant a *pro se* litigant the opportunity to amend before dismissing her claims. However, "leave [to amend] need not be granted where even a liberal reading of the complaint fails to give 'any indication that a valid claim might be stated.' " *Carolina v. Rubino,* 644 F. App'x 68, 73 (quoting *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010)). In this case, the flaws in plaintiff's pleading are substantive, and cannot be cured through additional pleading. Accordingly, the Court dismisses plaintiff's claims *sua sponte,* without leave to amend.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for *in pauperis status* (Docket No. 2) is granted, and Plaintiff's amended complaint is dismissed *sua sponte* without leave to amend. The Clerk of the Court is instructed to close the case. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States,* 369 U.S. 438 (1962).

**ALL OF THE ABOVE IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 11449477

---

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2473439
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Muhammad Shahid AKRAM, Plaintiff,

v.

Muhammad AKRAM, Muhammad Imran
Akram, and Iso Steve Sprinkle, Defendants.

Civ. No. 22-02699 (KM) (JRA)
|
Signed July 6, 2022

**Attorneys and Law Firms**

Muhammad Shahid Akram, Parsippany, NJ, Pro Se.

**OPINION**

KEVIN MCNULTY, United States District Judge:

**\*1** Muhammad Shahid Akram has filed a complaint
naming Muhammad Akram, Muhammad Imran Akram and
Immigration Security Officer Steve Sprinkle as defendants.
The Court has granted *in forma pauperis* ("IFP") status. For
the reasons expressed below, this complaint will be dismissed
on initial screening because it fails to state a colorable basis
for this Court's jurisdiction or plead Akram's causes of action.

**I. Background**

Akram filed his complaint against his relatives and ISO
Sprinkle on May 5, 2022. (DE 1.) The complaint itself
is skeletal, consisting of a pro se civil complaint form
in which only the sections for the parties and basis for
jurisdiction is filled out with the rest of the sections left
blank. (*Id.*) Indeed, the form indicates that Akram is claiming
four bases of jurisdiction: federal question, diversity, and
cases in which the U.S. is a plaintiff or defendant. (*Id.*)
Additionally, Akram attached over 70 pages of materials to
this form, including immigration paperwork, correspondence
with immigration officials, copies of personal identification,
and documentation related to Akram's claims to the IRS,
Federal Trade Commission, and Parsippany-Troy Hills Police
Department that his identity had been stolen by his brother or
other family members. Attached to this complaint was also
Akram's application to proceed IFP without payment of fees

under 28 U.S.C. § 1915, which I granted on May 10, 2022.
(DE 1, 3.)

Since that time, Akram has filed three letters, none of which
shed much light on the substance of his complaint. On May
19, 2022, Akram filed a document in this case entitled "Legal
Services Agreement" that is dated December 5, 2019, and
appears to be a contract between Akram and a New York-
based attorney "to investigate potential allegations of child
abuse in Newark, NJ" for a fee of $4500. (DE 19 at 1.)
This document does not specify the person alleged to have
committed child abuse and does not further detail the purpose
of this agreement. (*Id.*) On June 30, 2022, Akram filed
two separate letters stating that he has received numerous
messages on his phone instructing him to appear in Essex
County Superior Court regarding a criminal case. (DE 7, 8.)
Without citing any basis for his belief, Akram claims that
these messages are part of his brother's attempts at "harassing
[him] regularly" and he requests that I investigative the person
sending him these messages. (DE 7.)

**II. Discussion**

**a. Standard of Review**

To be heard in federal district court, a case must fall within
the court's subject matter jurisdiction; indeed, the court must
raise the jurisdictional issue *sua sponte* where appropriate.
*See Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742,
750 (3d Cir. 1995); Fed. R. Civ. P. 12(h)(3).

In addition, because the Court has granted IFP status, I am
obligated to screen the allegations of Akram's complaint to
determine whether it:

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is
immune from such relief.

**\*2** 28 U.S.C. § 1915(e)(2)(B). That screening provision
applies to the complaints of all individuals who are
proceeding *in forma pauperis. See, e.g., Grayson v. Mayview
State Hosp.*, 293 F.3d 103, 114 n.19 (3d Cir. 2002) (non-
prisoner indigent plaintiffs are "clearly within the scope of §
1915(e)(2)").

2022 WL 2473439

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana,* 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir. 2000)). *See also Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). A complaint must contain "a short and plain statement" both "of the grounds for the court's jurisdiction" and of "the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a).

The court will be more forgiving of complaints filed *pro se* and will construe their allegations liberally. *Haines v. Kerner,* 404 U.S. 219 (1972). *Pro se* complaints are nonetheless bound to the "essential obligation" of facial plausibility. *Garrett v. Wexford Health,* 938 F.3d 69, 92 (3d Cir. 2019); *see also Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (noting that a pro se complaint is "construed liberally 'to raise the strongest arguments [it] suggest[s]," but must still "state a plausible claim for relief" (citations omitted)).

**b. Analysis**

Even under the forgiving standard afforded pro se plaintiffs, Akram's complaint is clearly deficient, even if his filings suggest he was the victim of identity theft. Akram has failed to complete nearly all of the civil complaint form. He has not identified any federal claim or stated the facts on which it would be based. It fails to state a claim in the literal sense of the phrase. What Akram has done is attach 70 pages of correspondence and other documents, and has, in letters, asked the court to "investigate." It is the plaintiff, not the court, who must investigate. He must then state, in short and plain language, the essential facts underlying his claim and identify the federal law under which he sues or some other basis for a federal court claim.

The attachments submitted with the complaint center, to some degree, on the alleged theft of Akram's identity. They do not on their own suggest a cause of action over which this Court would have jurisdiction.

No federal law claim is identified. *See generally* 28 U.S.C. § 1331. While certain kinds of identity theft may be punishable as crimes, *see, e.g.,* 18 U.S.C. § 1028 et seq., there is no private federal law cause of action for identity theft as such. [1]

[1]  The only apparent (albeit tenuous) link to federal law is the naming of an INS officer as a defendant. According to a police report attached to Akram's complaint, ISO Sprinkle informed Akram that someone may have stolen his identity after Sprinkle received a letter falsely signed in Akram's name that asked for Akram's citizenship application to be withdrawn. (DE 1 at 63.) No basis appears to name Sprinkle, who apparently was only trying to be helpful, as a defendant.

**\*3**  To the extent plaintiff may intend to rely on state law, diversity jurisdiction has not been pled. All the parties to this case appear to be New Jersey citizens. *See generally* 28 U.S.C. § 1332.

In short, the complaint fails to clearly plead jurisdiction or a cause of action, to the extent it pleads them at all, rendering the complaint fatally deficient. While Akram may indeed have a valid claim, and his filings certainly indicate he finds himself in troubling circumstances, more is needed to proceed with a suit in federal court.

**III. Conclusion**

For the reasons stated above, the complaint is **DISMISSED** upon initial screening pursuant to 28 U.S.C. § 1915(e). The dismissal is without prejudice to any case or claim over which this Court may possess jurisdiction.

**All Citations**

Slip Copy, 2022 WL 2473439

---

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1670193
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Roanoke Division.

Wakeel ABDUL-SABUR, Plaintiff,

v.

WELLS FARGO BANK, N.A., Defendant.

Civil Action No.: 7:19-CV-674
|
Signed 02/10/2020

**Attorneys and Law Firms**

Wakeel Abdul-Sabur, Pound, VA, pro se.

### REPORT AND RECOMMENDATION

Robert S. Ballou, United States Magistrate Judge

 **\*1** Plaintiff Wakeel Abdul-Sabur ("Abdul-Sabur"), proceeding *pro se*, filed this case against defendant Wells Fargo Bank, N.A. ("Wells Fargo"), alleging that Wells Fargo opened an account in his name without his knowledge or permission. Dkt. 2. Abdul-Sabur seeks to proceed in this action *in forma pauperis*. Dkt. 1. Based upon the information contained in Abdul-Sabur's financial affidavit, I recommend granting Abdul-Sabur's request to proceed *in forma pauperis* and directing the Clerk to file Abdul-Sabur's Complaint. However, upon a frivolity review pursuant to 28 U.S.C. § 1915(e)(2), I further find that Abdul-Sabur's Complaint fails to state a plausible claim of entitlement to relief and should be dismissed.

Given that Abdul-Sabur is proceeding *in forma pauperis*, the court must review the complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). In its frivolity review, the court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989). A plaintiff fails to state a claim when it appears certain that the plaintiff cannot prove any set of facts which would entitle him or her to relief. The court must accept all well-pled allegations and review the complaint in a light most favorable to plaintiff, however, facts must be alleged with specificity. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Pleadings of self-represented litigants are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990).

Abdul-Sabur alleges claims of mail fraud, identity theft, unauthorized account, unsound practices in violation of the unfair practices prong of section 5 of the Federal Trade Commission Act, and due process and equal protection under the Fourteenth Amendment. Dkt. 2, p. 3. Specifically, Abdul-Sabur alleges that he attempted to open an account with Wachovia Bank [1] by mailing a $50.00 money order with his application. Compl. at p. 4, Dkt. 2. He was subsequently advised by customer service that the application had expired and customer service returned his money. Id. A few weeks later, Abdul-Sabur received an account statement in his name reflecting over $250,000.00 in the account. Id. These events occurred between 2011–2012. Id. Abdul-Sabur alleges that Wells Fargo used the personal information he provided on the expired account application to open an active account without his authorization. Id. at p. 5. Abdul-Sabur made several attempts to resolve the issue over the years, including filing complaints with the Office of the Comptroller of the Currency, and Wells Fargo customer correspondence department. Id. at p. 7. Abdul-Sabur seeks punitive and exemplary damages in the amount of $250,000 for each claim, compensatory damages of $10,000, and recovery of the $400 filing fee. Id. at p. 9.

[1]     Wachovia Bank was purchased by Wells Fargo & Company in 2008. See https://www.wellsfargo.com/about/corporate/wachovia.

 **\*2** On January 29, 2020, Abdul-Sabur filed a motion to amend complaint, seeking to add four specific named employees of Wells-Fargo as additional defendants in his original complaint, alleging "since the filing of the complaint the plaintiff has determined the name(s) of the Wells Fargo executives who paid monetary incentives to its employees to commit fraud, and identity theft against the plaintiff outlined in the original complaint." Dkt. 12.

Having reviewed Abdul-Sabur's Complaint in the light most favorable to Abdul-Sabur and with liberal construction, I find that it fails to state a claim for which relief can be granted, and should be dismissed pursuant to 28 U.S.C. § 1915(e)(2). [2]

[2]   Notably, plaintiffs have made similar allegations against Wells Fargo for opening accounts with a customer's permission and filed suits in other districts nationwide. See Mitchell v. Wells Fargo Bank, 355 F. Supp. 3d 1136, 1144 (D. Utah 2018); In re Wells Fargo Fraudulent Account Opening Litig., 282 F.Supp.3d 1360, 1361 (U.S. Jud. Pan. Mult. Lit. 2017). Wells Fargo's conduct has been the subject of investigations by Congress and wide-spread scrutiny by the media and other investigations. However, here, Abdul-Sabur's Complaint states theories of recovery that are not permitted by the law and/or claims that are time barred.

Specifically, Abdul-Sabur's claims for identity theft and "unsound practices in violation of the unfair practices prong of Section (5) of the FTC Act" cannot proceed because no private cause of action exists for those claims. The court presumes that by "FTC Act," Abdul-Sabur intends to refer to the Federal Trade Commission Act. Section 5 of the Federal Trade Commission Act is codified at 15 U.S.C. § 45 and does not provide for a private right of action. Rather, it authorizes the Federal Trade Commission to commence civil actions to prevent the use of unfair methods of competition and unfair or deceptive acts or practices in and affecting commerce. See 15 U.S.C. § 45(m); Mountcastle v. Premier Auto Brokers, Inc., No. 2:15cv170, 2015 WL 13049847, at *2 (E.D. Va. Oct. 15, 2015); see also, A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 675 (4th Cir. 1986) (noting that "courts have declined to imply any private right of action [in the Federal Trade Commission Act] and have relied upon the regulatory scheme to police the industry.").

Likewise, there is no federal civil action for identity theft. Blackstock v. Walgreens, No. 4:17cv2097, 2017 WL 4174767, at *2 (D.S.C. Sept. 1, 2017); see also Rahmani v. Resorts Int'l Hotel Inc., 20 F. Supp. 2d 932, 937 (E.D. Va. 1998), aff'd, 182 F. 3d 909 (4th Cir. 1999). The same is true for the state identity theft statute, Va. Code § 18.2-186.3. Maines v. Guillot, No. 5:16cv09, 2016 WL 3556258, at *4 (W.D. Va. June 16, 2016).

Abdul-Sabur's claims for due process and equal protection under the Fourteenth Amendment of the Constitution fail because the defendant is a private entity, rather than the government. "[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to the acts of the states, not to acts of private persons or entities." Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982) (citing Civil Rights Cases, 109 U.S. 3, 11 (1883)).

Abdul-Sabur's remaining claims are barred on their face by the applicable statutes of limitations. The Fourth Circuit has recognized that the statute of limitations may be addressed *sua sponte* when such a defense appears on the face of a complaint filed *in forma pauperis*, pursuant to 28 U.S.C. § 1915. See Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953–54 (4th Cir. 1995); Riddick v. Dept. of Corr., No. 7:17cv268, 2017 WL 6599007, at *3 (W.D. Va. Dec. 26, 2017).

**\*3**   The court construes Abdul-Sabur's claim of "mail fraud" as a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), because the federal mail fraud statute, 18 U.S.C. § 1341, does not provide a private cause of action. Smith v. Bank of America, No. 2:14cv4, 2014 WL 12543910, at *2 (E.D. Va. May 5, 2014). RICO claims are governed by a four-year statute of limitations that begins to run when the plaintiff knows or should have known of the injury. Dickson v. FBI Newport News Field Office, No. 4:15cv124, 2016 WL 8261800, at *2 (E.D. Va. March 2, 2016); Sloan v. Smith, No. 6:09cv5, 2009 WL 453298, at *4 (W.D. Va. Feb. 24, 2009). Abdul-Sabur states that the events in the complaint took place between 2011–2012. Dkt. 2 p. 4. Accordingly, Abdul-Sabur's RICO claim is barred by the applicable statute of limitations and should be dismissed. [3]

[3]   Abdul-Sabur also failed to set forth facts establishing the elements of a viable RICO claim, namely: 1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity; and failed to meet the enhanced pleading standards required for fraud under Fed. R. Civ. P. 9(b). See Dickson, 2016 WL 8261800 at *1; Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007).

Likewise, Abdul-Sabur's claim for "unauthorized account," which the court liberally construes as a claim under the Electronic Funds Transfers Act ("EFTA") 15 U.S.C. § 1693,

2020 WL 1670193

provides for a one-year statute of limitation from the date of the occurrence of the violation. 15 U.S.C. § 1693m(g); Repay v. Bank of America, N.A., No. 12cv10228, 2013 WL 6224641, at *3 (N.D. Ill. Nov. 27, 2013) (EFTA's one-year statute of limitations begins to run when the first recurring transfer takes place.) The EFTA provides that no person may issue to a consumer any card, code or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than in response to a request from the consumer or as a renewal of or in substitution of an accepted card or other means of access. 15 U.S.C. § 1693i. The EFTA creates a civil cause of action for consumers, who may recover actual and statutory damages in individual or class actions. See 15 U.S.C. § 1693m.

The facts as set forth by Abdul-Sabur establish that the alleged violation occurred between the years 2011 and 2012. Abdul-Sabur also states that "the fraud ... continued for years up to present." Dkt. 2. p. 5. However, the only transaction described or referenced in the Complaint is the initial opening of an account between the years of 2011–2012. Id. Thus, there is no continuing violation that would extend the statute of limitations. See Everette v. Mitchem, No. CCB-15-1261, 2016 WL 470840, at *2 (D. Md. Feb. 8, 2016) (a plaintiff could bring a § 1693 claim for unauthorized transfers that took place within one year of filing the complaint, but prior transfers were barred by the statute of limitations).

I have carefully considered Abdul-Sabur's claims. Each is either barred as a matter of law or by the applicable statute of limitations. It does not appear that any additional facts could cure the defects identified in Abdul-Sabur's Complaint. As such, I do not recommend allowing Abdul-Sabur to file an amended complaint. Rather, I **RECOMMEND DISMISSING** this action without prejudice.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

**All Citations**

Slip Copy, 2020 WL 1670193

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 90 of 106

Abdul-Sabur v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2020)

2020 WL 1665313

2020 WL 1665313
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Roanoke Division.

Wakeel ABDUL-SABUR, Plaintiff,
v.
WELLS FARGO BANK, N.A., Defendant

Case No. 7:19-cv-674
|
Signed 04/02/2020
|
Filed 04/03/2020

**Attorneys and Law Firms**

Wakeel Abdul-Sabur, Pound, VA, pro se.

### MEMORANDUM OPINION

Michael F. Urbanski, Chief United States District Judge

**\*1** Plaintiff Wakeel Abdul-Sabur, proceeding pro se, filed a complaint and motion to proceed in forma pauperis ("IFP") on October 7, 2019. ECF Nos. 1, 2. In his complaint, he alleges that Wells Fargo Bank, N.A., (Wells Fargo) opened an unauthorized account in his name. Abdul-Sabur filed a motion to amend or correct his complaint on January 29, 2020. ECF No. 12. The motion to proceed IFP was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on February 2, 2019, recommending that Abdul-Sabur be granted IFP status, and also recommending that his complaint be dismissed for failure to state a claim and because some of his claims are time-barred. ECF No. 13. Abdul-Sabur filed objections to the R&R on February 24, 2020, ECF No. 14, and this matter is ripe for disposition. For the reasons stated below, the court will **OVERRULE** Abdul-Sabur's objections, **ADOPT** the report and recommendation in its entirety, **GRANT** Abdul-Sabur IFP status, and **DISMISS** his complaint.

### I.

Abdul-Sabur alleges that at some point in or prior to 2011, he attempted to open an account with Wachovia Bank by mailing a $50.00 money order to the bank along with an application form. Subsequently, customer service advised him that he had submitted an expired application and returned his application and money order. A few weeks later, he received an account statement in his name that showed he had more than $250,000 in his account. ECF No. 2 at 4. Abdul-Sabur alleges that Wells Fargo [1] used the personal information he submitted to Wachovia Bank to open a deposit account in his name and transfer funds into it without authorization. He claims that the unauthorized account was opened in his name by employees trying to meet aggressive sales goals because they were paid monetary incentives to open accounts. In his motion to file an amended complaint, ECF No. 12, he seeks to add individual defendants who he claims paid monetary incentives to employees to commit fraud and identity theft against him.

[1]    Wells Fargo & Company bought Wachovia Bank in 2008.  See https://www.wellsfargo.com/about/corporate/wachovia/ (last viewed March 31, 2020.)

Based on these facts, he alleges that Wells Fargo (1) committed mail fraud by mailing him a fraudulent account statement indicating that he had an account with more than $250,000 in it between 2011 and 2012; (2) opened an unauthorized account in his name; (3) violated the Unfair Practices prong of Section 5 of the Federal Trade Commission Act by using fraud and unsound practices; (4) committed identity theft; and (5) violated his rights to due process and equal protection.

Abdul-Sabur has made several attempts to resolve the issues over the years, including the recent filing of complaints with the Office of the Comptroller of the Currency ("OCC") customer assistance group, and by corresponding with Wells Fargo. However, he has been unable to obtain relief. Abdul-Sabur seeks compensatory, punitive, and exemplary damages, as well as costs.

**\*2** In the R&R filed on February 10, 2020, the magistrate judge concluded that Abdul-Sabur was entitled to IFP status, but recommended that his complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim. [2] The magistrate judge made the following findings:

(1) Abdul-Sabur's claim for identity theft and "unsound practices in violation of the unfair practices prong of

Abdul-Sabur v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2020)

2020 WL 1665313

Section 5 of the FTC Act" cannot proceed because no private cause of action exists for those claims under the Federal Trade Commission Act;

(2) There is no federal civil cause of action for identity theft;

(3) His Fourteenth Amendment claims fail because the defendant is a private entity rather than the government; and

(4) His remaining claims of mail fraud and opening of an unauthorized account, construed as a claim under the Electronic Funds Transfers Act, are time-barred.

2
    **(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
    **(A)** the allegation of poverty is untrue; or
    **(B)** the action or appeal--
    **(i)** is frivolous or malicious;
    **(ii)** fails to state a claim on which relief may be granted; or
    **(iii)** seeks monetary relief against a defendant who is immune from such relief.
    28 U.S.C.A. § 1915(e) (West).

## II.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then

have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985(3)) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

**\*3** Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney, 539 F. Supp. 2d at 845. As the court noted in Veney, 539 F. Supp. 2d at 846:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505], 509 [(6th Cir. 1991)].

A party who reiterates his previously raised arguments will not be given "the second bite at the apple [ ] he seeks." Id.

2020 WL 1665313

Instead, the re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.

**III.**

Although Abdul-Sabur filed objections, he did not respond to the magistrate judge's conclusions with regard to each of his claims. Instead, he refers to a class-action settlement involving Wells Fargo, which he identifies as the "Jabbari class action." He asserts that a $142 million settlement was reached with a payout to individuals, but that the "settlement claims [were] put on freeze pending appeal to the U.S. Supreme Court." ECF No. 14 at 1. He requests "to be added to the class action settlement to protect his rights." Id. He also asks for appointment of legal counsel, or, in the alternative, to be provided with the same counsel who represents the class of plaintiffs in the class-action lawsuit. With regard to the finding by the magistrate judge that some of his claims are time-barred, Abdul-Sabur asserts that he misunderstood the customer assistance group of the OCC's recommendation which advised him to protect his legal rights. Id.

An internet search of the term "Jabbari class action" shows that a class action styled Jabbari, et al. v. Wells Fargo &

Co., No. 3:15-CV-02159-VC, was filed in the United States District Court for the Northern District of California in 2015. However, this court has no authority to add Abdul-Sabur as a plaintiff in that case. Nor is Abdul-Sabur entitled to appointment of counsel for this civil claim. "Litigants in a civil action are not constitutionally entitled to counsel." Banin v. Byerson, 620 F. App'x. 166, 167 (4th Cir. 2015) (citing Williams v. Ozmint, 716 F.3d 801, 811 (4th Cir. 2013)).

Having reviewed the R&R and Abdul-Sabur's objections thereto, the court finds that the conclusions of the magistrate judge are well supported by relevant statutes and case law. Therefore, the court **OVERRULES** Abdul-Sabur's objections, **ADOPTS** the R&R in its entirety, **GRANTS** Abdul-Sabur IFP statutes, and **DISMISSES** his lawsuit without prejudice. All remaining motions are **DENIED** as moot.

An appropriate order will be entered.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1665313

---

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01067-TJM-TWD   Document 4   Filed 11/07/22   Page 93 of 106

Blackstock v. Walgreens, Not Reported in Fed. Supp. (2017)

2017 WL 4174767

2017 WL 4174767
Only the Westlaw citation is currently available.
United States District Court, D. South Carolina.

Sepia Vonnetta BLACKSTOCK, Plaintiff,

v.

WALGREENS, Defendant.

C/A No. 4:17-cv-02097-RBH-KDW

|

Signed 09/01/2017

**Attorneys and Law Firms**

Sepia Vonnetta Blackstock, Hartsville, SC, pro se.

REPORT AND RECOMMENDATION

Kaymani D. West, United States Magistrate Judge

**\*1**  This is a civil action filed by a pro se litigant requesting to proceed *in forma pauperis.* Pursuant to 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the district court.

I. Factual Background

Sepia Vonnetta Blackstock ("Plaintiff"), sues Defendant Walgreens, a "Drug Store Chain" in Hartsville, South Carolina, alleging that Defendant participated in identity theft when it used her personal information and her e-mail account with her mother's "balance rewards account." Compl. 2, 5, ECF No. 1. She states that her claim is covered by this court's federal-question jurisdiction and states that she is suing under the federal Identity Theft and Assumption Deterrence Act. *Id.* at 3. [1]  Plaintiff seeks injunctive relief and $30.00 in actual and $5000.00 in punitive damages. *Id.* at 5.

1        18 U.S.C. § 1028.

II. Standard of Review

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915. The review has been conducted in light of the following precedents: *Neitzke v. Williams,* 490 U.S. 319, 324-25 (1989);

*Estelle v. Gamble,* 429 U.S. 97 (1976); *Haines v. Kerner,* 404 U.S. 519 (1972); *Gordon v. Leeke,* 574 F.2d 1147 (4th Cir. 1978).

The Complaint in this case was filed under 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(I), (ii). Hence, under 28 U.S.C. § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte. *Neitzke v. Williams,* 490 U.S. 319 (1989).

This court is required to liberally construe pro se pleadings, *Estelle v. Gamble,* 429 U.S. at 97, holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe,* 449 U.S. 5 (1980). The mandated liberal construction afforded pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a pleading to "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 390-91 (4th Cir. 1990). Even under this less stringent standard, however, the pro se Complaint under review in this case is subject to summary dismissal.

III. Discussion

**\*2**  Plaintiff's Complaint should be summarily dismissed because there is no right of civil action under 18 U.S.C. § 1028, the criminal act on which Plaintiff relies for federal jurisdiction. *See, e.g., Garay v. U.S. Bancorp,* 303 F. Supp. 2d 299 (E.D.N.Y. 2004) (18 U.S.C. § 1028 does not provide a civil right of action); *Razzi v. Nimler,* No. 5:14-cv-447-Oc-22PRL, 2014 WL 5038337 (M.D. Fla. Sept. 12, 2014) ("The federal identity theft statute, the Identity Theft and Assumption Deterrence Act of 1998, 18 U.S.C. § 1028, is criminal in nature and provides no civil cause of action or civil remedy."); *Lucas-Cooper v. Palmetto GBA,* No. 1:05-cv-00959, 2006 WL 2583407 (N.D. Ohio 2006) (same); *Booth v. Equifax Credit Information Services, Inc.,* No. Civ. 01-39-JO, 2001 WL 34736212 (D. Or. 2001) (same). There

is no federal civil action for identity theft. *See Burroughs v. Burroughs*, No. 3:11-2133-JFA-PJG, 2011 WL 5024180, at *2 (Sept. 30, 2011), *report and recommendation adopted*, 2011 WL 5024169 (D.S.C. Oct. 20, 2011).

Plaintiff does not include any allegations concerning diversity jurisdiction to which any of South Carolina's identity theft statutes apply. *See* S.C. Code Ann. § 16-13-510 through 530. In any event, any such allegations would not state a plausible diversity action because "no private civil action for 'identity theft' appears to be made available in any of those statutes." *Burroughs v. Burroughs*, No. CA 3:11-2133-JFA-PJG, 2011 WL 5024180, at *2 n.2 (D.S.C. Sept. 30, 2011) (citing *Huggins v. Citibank, N.A.,* 585 S.E.2d 275 (S.C. 2003)), *report and recommendation adopted,* No. CA 3:11-2133-JFA-PJG, 2011 WL 5024169 (D.S.C. Oct. 20, 2011).

IV. Recommendation
Accordingly, it is recommended that the district court dismiss the Complaint in this case *without prejudice. See United Mine Workers v. Gibbs,* 383 U.S. 715 (1966); *see also Neitzke v. Williams*, 490 U.S. at 324-25.

IT IS SO RECOMMENDED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4174767

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Blackstock v. Walgreens, Not Reported in Fed. Supp. (2017)

2017 WL 4156445

2017 WL 4156445
Only the Westlaw citation is currently available.
United States District Court, D.
South Carolina, Florence Division.

Sepia Vonnetta BLACKSTOCK, Plaintiff,

v.

WALGREENS, Defendant.

Civil Action No.: 4:17-cv-02097-RBH
|
Signed 09/19/2017

**Attorneys and Law Firms**

Sepia Vonnetta Blackstock, Hartsville, SC, pro se.

## ORDER

R. Bryan Harwell, United States District Judge

**\*1** This matter is before the Court for review of the Report and Recommendation (R & R) of United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). *See* R & R [ECF No. 9]. The Magistrate Judge recommends that the Court summarily dismiss Plaintiff's pro se complaint without prejudice. *Id.* at 4.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a de novo determination of those portions of the R & R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

Plaintiff has not filed objections to the R & R, and the time for doing so has expired. [1] In the absence of objections to the R & R, the Court is not required to give any explanation for adopting the Magistrate Judge's recommendations. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983). The Court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation' " (quoting Fed. R. Civ. P. 72 advisory committee's note)).

[1]     Plaintiff's objections were due by September 18, 2017. *See* ECF Nos. 9 & 10.

After a thorough review of the record in this case, the Court finds no clear error and therefore adopts and incorporates by reference the R & R [ECF No. 9] of the Magistrate Judge. Accordingly, the Court **DISMISSES** Plaintiff's complaint *without prejudice and without issuance and service of process.*

**IT IS SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2017 WL 4156445

---

**End of Document**                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2981573
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Alexander MCARTHUR, Plaintiff,

v.

C-TOWN SUPER MARKET, et al., Defendants.

No. 3:21-cv-972 (SRU)
|
Signed July 28, 2022

**Attorneys and Law Firms**

Alexander McArthur, New Haven, CT, Pro Se.

MarcAnthony Bonanno, McCarter & English, LLP, New York, NY, Timothy R. Scannell, Boyle, Shaughnessy & Campo, P.C., Hartford, CT, for Defendant C-Town Super Market.

### RULING ON MOTION TO DISMISS and ORDER

Stefan R. Underhill, United States District Judge

**\*1** Alexander McArthur ("McArthur"), proceeding *pro se*, brings suit against defendants C-Town Super Market ("C-Town"), Fairfield County Protective Agency, and Community Outreach in connection with an incident in which he was accused of shoplifting merchandise. *See* Compl., Doc. No. 1. C-Town has moved to dismiss the complaint. For the reasons that follow, I **grant** C-Town's motion.

### I. Background

On the evening of January 3, 2021, McArthur went shopping at C-Town supermarket in New Haven, Connecticut. Compl., Doc. No. 1, at 3. While there, he carried a tote bag containing a package of cookies previously purchased at another establishment. *Id.* at 5. When McArthur went to pay for his C-Town merchandise, the store manager accused him of shoplifting the cookies. *Id.* at 5. She questioned him; searched the tote bag; and, in connection with the questioning and search, repeatedly touched McArthur's arms. *Id.* at 5-6. McArthur refused to cede the cookies.

When McArthur tried to exit the store, he was thwarted by security guards who "blocked [his] path" and "pushed [him] backwards." *Id.* at 5-6, 8, 11. In the process, a security guard's

genitals "rubb[ed] against" McArthur's genitals through their respective clothes. *Id.* at 12-13. After holding McArthur "hostage" and "captive" for an unspecified amount of time, the store manager and security guards eventually permitted him to leave the premises. *Id.* at 8, 14.

On July 15, 2021, McArthur filed the instant complaint ("the Complaint"). Compl., Doc. No. 1. McArthur asserts that the defendants' conduct constituted (1) racial discrimination, in violation of "Title 42, Chapter 21"; (2) unfair and deceptive acts and practices, in violation of 15 U.S.C. § 45c; (3) defamation, in violation of 28 U.S.C. § 4101 or 47 U.S.C. § 230; (4) "public humiliation"; (5) harassment, in violation of the "Code of Civil Procedure Chapter 3 Injunction 527.6"; (6) sexual assault, in violation of 10 U.S.C. § 920; (7) intimidation, coercion, and interference, in violation of 42 U.S.C. § 3617; and (7) a violation of the Tom Bane Civil Rights Act, Civil Code section 52.1.

On October 6, 2021, C-Town filed the instant Motion to Dismiss. Doc. No. 17. C-Town argues that this Court lacks subject matter jurisdiction over McArthur's claims and that McArthur fails to state a claim upon which relief may be granted. *Id.* On October 25, 2021, McArthur opposed the Motion to Dismiss. Doc. No. 18. C-Town did not file a Reply. The motion to dismiss is now before me.

### II. Standard of Review

#### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A party that moves to dismiss for lack of subject matter jurisdiction "may refer to evidence outside the pleadings." *Id.* To survive a motion brought under Rule 12(b)(1), a plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Id.*

#### B. Rule 12(b)(6)

**\*2** A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and the complaint must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570. The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## III. Discussion

### A. C-Town's Meritorious Motion to Dismiss

C-Town moves to dismiss the claims in the Complaint for failure to state a claim and for lack of jurisdiction. After reviewing McArthur's claims, I agree that there is no basis for this Court's jurisdiction. Accordingly, I must dismiss the Complaint in full.

*First,* there is no basis for diversity jurisdiction. A district court only has diversity jurisdiction in civil actions between citizens of different states and where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Here, the pleadings provide no information regarding the parties' citizenship. However, McArthur has previously pleaded in other lawsuits filed in this Court that he is a resident of New Haven, Connecticut. *E.g., McArthur v. Property Mgmt., et al.*, Dkt. No. 3:20-cv-1007 (D. Conn. July 17, 2020), Doc. No. 1. Therefore, I take judicial notice of the fact that McArthur is a citizen of Connecticut. Fed. R. Evid. 201. On the other side, C-Town indicates that it is also a citizen of Connecticut. Doc. No. 17-1, at 6. Because the plaintiff and defendant are both citizens of

Connecticut, they are not completely diverse. Accordingly, there is no basis for diversity jurisdiction.

*Second,* McArthur's lawsuit does not plausibly present a federal question. Section 1331 declares that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule set forth in *Louisville & Nashville R. Co. v. Mottley*, a suit generally "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." 211 U.S. 149, 152 (1908). McArthur asserts several claims that he contends arise under federal law, but I must dismiss all for failure to state a claim. The remaining claims provide no basis for federal question jurisdiction.

**\*3** In Count One, McArthur pleads a claim of discrimination in violation of "Title 42, Chapter 21." Construing McArthur's complaint liberally, I interpret that he attempts to state a claim for discrimination in a place of public accommodation in violation of 42 U.S.C. § 2000a. But there are at least two problems with such a claim. One, it is not obvious that C-Town is covered by the statute. Two, McArthur does not allege that he satisfied the administrative requirements necessary for this Court to have jurisdiction over such a claim.

Section 2000a prohibits discrimination in certain places of public accommodations, specifically in facilities principally engaged in selling food for consumption on the premises. 42 U.S.C. § 2000a; *see also Daniel v. Paul*, 395 U.S. 298, 307-08 (1969). The statute expressly covers restaurants and hotels. 42 U.S.C. § 2000a(b). On the other hand, it does not expressly include grocery stores. Accordingly, courts have excluded grocery stores from the statute's protections where they are retail establishments that do not serve food for on-premises consumption. *See, e.g., Dunn v. Albertsons*, 2017 WL 3470573, at *4 (D. Nev. Aug. 10, 2017) (a retail grocery store was not a covered establishment); *Jackson v. Walgreens Co.*, 2016 WL 4212258, at *2 (D. Minn. Aug. 10, 2016) (a retail pharmacy selling packaged food was not a covered establishment); *Gigliotti v. Wawa Inc.*, 2000 WL 133755, at *2 (E.D. Pa. Feb. 2, 2000) (a convenience store that was not "principally engaged in selling for consumption on the premises" was not a covered establishment). *But see Brown v. Whole Foods Mkt. Grp., Inc.*, 965 F. Supp. 2d 132, 138 (D.D.C. 2013) (concluding that a grocery store with a "fully functioning restaurant" was a covered establishment), *rev'd in part on other grounds*, 789 F.3d 146 (D.C. Cir. 2015); *and*

*Thomas v. Tops Friendly Markets, Inc.*, 1997 WL 627553 (N.D.N.Y. 1997) at *3 (a retail grocery store with a food counter was a covered establishment).

Here, McArthur principally alleges facts suggesting that C-Town is a supermarket selling food on a retail basis for off-premises consumption. The Complaint alleges that he was attempting to purchase merchandise from C-Town to bring home, and McArthur alleges no facts indicating that C-Town serves food for on-premises consumption. Accordingly, I conclude that C-Town, as alleged, is a retail establishment not covered by section 2000a.

Furthermore, even assuming *arguendo* that C-Town is a covered establishment, McArthur insufficiently pleads that he satisfied the notice requirements necessary for this Court to have jurisdiction over his claim. Section 2000a-3(c) provides that where a state or local law prohibits a discriminatory practice, "no civil action may be brought ... before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority...." 42 U.S.C. § 2000a–3(c). Connecticut state law prohibits discrimination in a place of public accommodation on the basis of protected class status. Conn. Gen. Stat. § 46a–64. The State of Connecticut has vested the Connecticut Commission on Human Rights and Opportunities ("CHRO") with the authority to address discrimination on the basis of race in public accommodations, providing for the filing of grievances with the CHRO. Conn. Gen. Stat. § 46a–82. Accordingly, if notice is not provided to the CHRO as required, then this Court will lack jurisdiction over a section 2000a claim. *Chance v. Reed*, 538 F. Supp. 2d 500, 510 (D. Conn. 2008) (explaining this requirement in the context of public accommodations).

**\*4** However, McArthur does not make the required showing of notice to state or local authorities. For example, McArthur does not allege that he filed a complaint with the CHRO, nor does he append a CHRO complaint or Right to Sue letter with the Complaint in this lawsuit. On that basis, McArthur cannot establish that he gave notice to the appropriate state authority, as required for review in this Court. Accordingly, I must dismiss the claim arising under Title 42, Chapter 21 without prejudice for lack of jurisdiction.

In the alternative, liberally construing the Complaint, McArthur may intend to state a claim arising under 42 U.S.C. § 1981. Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as

is enjoyed by white citizens." 42 U.S.C. § 1981; *see also Khedr v. IHOP Restaurants, LLC*, 197 F. Supp. 3d 384 (D. Conn. 2016) (applying § 1981 in a public accommodations discrimination claim); *Macedonia Church v. Lancaster Hotel Ltd. Partnership*, 560 F. Supp. 2d 175 (D. Conn. 2008) (same). To state a claim arising under section 1981, a plaintiff "bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). If a plaintiff does not plead facts sufficient to carry this burden, dismissal is appropriate. *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022).

Here, McArthur does not allege that race was a but-for cause of the treatment by C-Town. Indeed, the Complaint contains no factual allegations demonstrating that C-Town questioned and detained McArthur because of his race. The only reference to race is within a list of legal bases on which McArthur brings the claim. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Iqbal*, 556 U.S. at 679, the Complaint does not even identify McArthur's race. Therefore, McArthur fails to state a claim of racial discrimination arising under 42 U.S.C. § 1981. I dismiss the claim without prejudice.

In Count Two, McArthur alleges that C-Town's conduct constituted unfair and deceptive acts and practices, pursuant to 15 U.S.C. § 45c. That statute renders efforts to circumvent technology to exceed limits or other rules regarding online ticket purchases unlawful. *Id.* There are several problems with this claim.

As a threshold matter, McArthur's allegations principally concern accusations of shopping and detention in a grocery store. The Complaint alleges no facts even remotely related to online ticketing. Section 45c appears to be entirely inapposite. Moreover, repleading would be futile because a section 45c claim is not cognizable. "[P]rivate rights of action to enforce federal law must be created by Congress;" when a congressional enactment does not "display[ ] an intent to create ... a private remedy, ... a cause of action does not exist and courts may not create one." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). There is no indication that Congress intended for section 45c to provide a cause of action. For one, the statute does not explicitly provide a private right of action or employ any other rights-creating language. In addition, the statute evinces Congressional intent to preclude a private cause of action, because section 45c is expressly enforceable by the Federal Trade Commission, state attorneys

general, or state consumer protection agencies. Generally, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. Therefore, section 45c creates a strong presumption that Congress did not intend to create a private right of action—a presumption McArthur does not rebut. *See also Shostack v. Diller*, 2015 WL 5535808, at *9 (S.D.N.Y. Sept. 16, 2015), *report and recommendation adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) (concluding that a related provision of the Federal Trade Commission Act, 18 U.S.C. § 45a, does not provide a private right of action). Because I conclude that a claim under section 45c is not cognizable, I dismiss the claim with prejudice.

 **\*5** In Count Three, McArthur alleges defamation, pursuant to 28 U.S.C. § 4101 or 47 U.S.C. § 230. Title 28 addresses "Judiciary and Judicial Proceedings," and section 4101 is a definition section that applies to the Recognition of Foreign Judgments, including foreign defamation judgments. McArthur provides no allegations regarding any foreign defamation judgments in his complaint; therefore, I must dismiss the claim. *See Kalola v. Int'l Bus. Machines Corp.*, 2019 WL 6879307, at *3 (S.D.N.Y. Dec. 16, 2019) (holding same).

Furthermore, repleading would be futile. Section 4101 does not provide a cause of action for defamation. *See* 28 U.S.C. §§ 4101(1), 4102. For that reason, courts have declined to hold that similarly-situated plaintiffs alleging a cause of action under 28 U.S.C. § 4101 have established a basis for federal question jurisdiction. *E.g., White v. White*, 2022 WL 60336, at *2 (S.D. Ohio Jan. 6, 2022), *report and recommendation adopted*, 2022 WL 788250 (S.D. Ohio Mar. 14, 2022) (holding same). Instead, "[d]efamation ... is an issue of state law" rather than federal law. *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). Because a claim for defamation arising under section 4101 is not cognizable, it cannot present a federal question. Accordingly, I dismiss the section 4101 claim with prejudice.

McArthur also appears to invoke 47 U.S.C. § 230, which provides "protection for private blocking and screening of offensive material." But section 230, which provides immunity to internet platforms with respect to content created and published by third parties, is inapposite. McArthur does not allege any facts related to any internet platform. On the facts alleged in the Complaint, it is not evident that he could. I dismiss the section 230 claim with prejudice.

In Count Six, McArthur pleads a claim of sexual assault, in violation of 10 U.S.C. § 920. As I have previously explained, that statute—entitled "Rape and sexual assault generally"—is a provision of the Uniform Code of Military Justice. *See McArthur v. Yale New Haven Hosp.*, 2021 WL 3725996, at *4 (D. Conn. Aug. 31, 2021) (addressing same). Here, McArthur pleads no facts related to the military suggesting that the statute is relevant.

Once again, repleading would be futile, because section 920 does not incorporate a private right of action. *See Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) ("Federal criminal statutes do not provide private rights of action."); *cf. Rouhi v. Kettler*, 2020 WL 3451871, at *3 (D. Md. June 24, 2020) (dismissing pro se plaintiff's complaint for lack of subject matter jurisdiction when based, in part, on 10 U.S.C. § 921, a provision of the Uniform Code of Military Justice punishing larceny that "does not incorporate a private right of action, and military justice has no application to a dispute between a tenant and her property management company"). I dismiss the claim with prejudice.

In Count Seven, McArthur pleads a claim of intimidation, coercion, and interference, in violation of 42 U.S.C. § 3617. That statute provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided and or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. By its terms, section 3617 "safeguards members of [a] protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights" and additionally "protects third parties ... who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act rights." *Frazier v. Rominger*, 27 F.3d 828, 833 (2d Cir. 1994). The Complaint includes no facts relating to housing or other real estate-related transactions. Accordingly, the Complaint fails to state a claim under section 3617.

 **\*6** Additionally, repleading would be futile. The underlying allegations in the Complaint involve events taking place at a grocery store, and they have no connection with housing. Accordingly, I dismiss the section 3617 claim with prejudice.

2022 WL 2981573

McArthur's remaining claims fail to provide a basis for federal question jurisdiction, because they arise under state law. In Count Four, McArthur pleads a claim of "public humiliation," which I construe to state a claim of intentional infliction of emotional distress or to bring a claim under a state statute providing a private right of action for civil damages for violations of state criminal harassment laws, Conn. Gen. Stat. § 52-571c. In Count Five, McArthur pleads a claim of harassment, in violation of the "Code of Civil Procedure Chapter 3 Injunction 527.6." I understand this claim to arise from a provision of the California Code of Civil Procedure providing for civil restraining orders. Cal. Civ. Proc. Code § 527.6 ("A person who has suffered harassment ... may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."). In Count Seven, he pleads a violation of the Tom Bane Civil Rights Act, Civil Code section 52.1. The Tom Bane Civil Rights Act is a California statute that "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." Reese v. Cty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018) (cleaned up). Setting aside the fact that McArthur never provides any basis upon which a California statute should apply to the facts alleged in his complaints, the provisions of California state law cannot provide a basis for this Court's jurisdiction.

Moreover, to any extent that I might liberally construe the Complaint to raise claims for a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA"); common law defamation; common law battery; intentional infliction of emotional distress; or a state statute providing a private right of action for civil damages for violations of state criminal harassment laws, Conn. Gen. Stat. § 52-571c, such claims also arise under state law and cannot provide a basis for federal question jurisdiction.

Third, because there are no federal law claims remaining and there is no diversity jurisdiction based on the citizenship of the parties, I decline to exercise supplemental jurisdiction over McArthur's claims arising under state law. See 28 U.S.C. § 1367(c)(3); Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC, 414 F. App'x 334, 337 (2d Cir. 2011) (advising that "where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims").

Accordingly, I dismiss the remaining claims without prejudice for lack of jurisdiction. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").

B. Claims Against Fairfield County Protective Agency and Community Outreach

*7 The remaining defendants in this case are Fairfield County Protective Agency and Community Outreach. Neither has appeared in this action. In my view, their failure to appear is explainable and justifiable because these parties were not properly served and have not received notice of their status as a party in this lawsuit.

A court may dismiss a civil action for insufficient service of process. Fed. R. Civ. P. 4(m). McArthur filed the Complaint on July 15, 2021. Doc. No. 1. From that date, McArthur had ninety days to serve Fairfield County Protective Agency and Community Outreach. Id. There is no showing that McArthur complied with that obligation. Although McArthur's noncompliance is likely the result of an honest mistake, it remains true that service was not properly effected on Fairfield County Protective Agency and Community Outreach.

As a result, I will dismiss the claims against Fairfield County Protective Agency and Community Outreach without prejudice pursuant to Rule 4(m) for insufficient service of process unless McArthur effects service on those defendants within 45 days from this order.

IV. Conclusion

For the foregoing reasons, I grant C-Town's motion to dismiss McArthur's claims. Specifically:

(1) To the extent that McArthur's racial discrimination claim arises under 42 U.S.C. § 2000a, the claim is **dismissed without prejudice** to McArthur's demonstration that he properly complied with notice to the CHRO. To the extent that McArthur's racial discrimination claim arises under 28 U.S.C. § 1981, it is **dismissed without prejudice**.

(2) McArthur's unfair and deceptive acts and practices claim arising under 15 U.S.C. § 45c is **dismissed with prejudice**.

(3) To the extent that McArthur's defamation claim arises under 28 U.S.C. § 4101, the claim is **dismissed with prejudice**. To the extent that McArthur's defamation claim arises under 47 U.S.C. § 230, the claim is also **dismissed with prejudice**.

(4) McArthur's sexual assault claim arising under 10 U.S.C. § 920 is **dismissed with prejudice**.

(5) McArthur's claim of intimidation, coercion, and interference, in violation of 42 U.S.C. § 3617 is **dismissed with prejudice**.

(6) McArthur's claims for harassment, in violation of the "Code of Civil Procedure Chapter 3 Injunction 527.6" and for violation of the Tom Bane Civil Rights Act, Civil Code section 52.1 are **dismissed without prejudice**.

(7) To any extent that McArthur raises state law claims for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"); common law defamation; common law battery; intentional infliction of emotional distress; or the Connecticut state statute providing a private right of action for civil damages for violations of state criminal harassment laws, Conn. Gen. Stat. § 52-571c, those claims are **dismissed without prejudice**.

McArthur may file an amended complaint against C-Town **within thirty days** of the date of this Order. The dismissals of federal claims without prejudice will become dismissals with prejudice unless McArthur files an amended complaint curing the noted pleading deficiencies.

In addition, to the extent that he wishes to pursue claims against them in this court, I order McArthur to effect service against Fairfield County Protective Agency and Community Outreach within **forty-five days** of the date of this order.

 **\*8**  So ordered.

**All Citations**

Slip Copy, 2022 WL 2981573

---

**End of Document**                                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6686568
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Chevaneese CLARKE, Plaintiff,
v.
The LEADING HOTELS OF
THE WORLD, LTD., Defendant.

No. 15–CV–0008 (JMF).
|
Signed Oct. 29, 2015.

*MEMORANDUM OPINION AND ORDER*

JESSE M. FURMAN, District Judge.

**\*1** Plaintiff Chevaneese Clarke, proceeding *pro se,* brings a litany of discrimination and other claims against her former employer, the Leading Hotels of the World, Ltd. Defendant moves to dismiss, pursuant to Rules 8 and 12(b) (6) of the Federal Rules of Civil Procedure, and, in the alternative, for a more definite statement pursuant to Rule 12(e). Because Plaintiff fails to allege any plausible federal claim, Defendant's motion to dismiss is GRANTED.

**BACKGROUND**

Plaintiff was employed by Defendant from September 2000 until her termination on or about August 26, 2014. (Am. Compl. (Docket No. 13) 2–3). Her Complaint is far from a model of clarity, but it includes a slew of allegations concerning Defendant's actions over the course of her employment. For example, she appears to allege that she was notified of promotions that never materialized. (*See id.* at 2, 10). She alleges that she asked for information on promotions and that Defendant "intentionally denied Plaintiff of her rights to access of her electronic signature or one in penmanship that would validate and reference the promotional title." (*See id.* at 3). Asserting a claim of "intimidation," she reports that a co-worker told her that she was "happy to learn [Plaintiff was] pregnant; now I can really take your job." (*Id.* at 7). Plaintiff also alleges that she was subjected to "contentious Performance Reviews" and that "Defendant brought on board consultants who would

maliciously crash [her] computer." (*Id.* at 8–9). Plaintiff alleges that, in 2009, she was told she would not receive a raise for performing additional work and that she could either continue to perform the work or have it reassigned to a colleague. (*See id.* at 9). She describes a variety of tasks she was asked to perform as part of her job and meetings she requested with superiors that were denied. (*See id.* at 4–5, 8, 9–11). Finally, Plaintiff alleges that Defendant's "real reason" for firing her "was not for 'insubordination' but based on a cover up. Defendant fabricated the story, a promotional pay in 2012 and Plaintiff's refusal to do the work of an Associate Sales Manager, knowing his strategy in having Plaintiff identified under such a title would some kind of relief from damages." (*Id.* at 3). At bottom, Plaintiff's principal complaints appear to be that she was promised promotions and pay raises that never came through—but for which she took on additional duties—and was ultimately unfairly terminated from her position.

**LEGAL STANDARDS**

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g ., Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir.2008). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.,* and cannot rely on mere "labels and conclusions" to support a claim, *Twombly,* 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Finally, because Plaintiff is proceeding *pro se,* her Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U .S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nonetheless, a *pro se* litigant must still state a plausible claim for relief. *See, e.g., Walker v. Schult,* 717 F.3d 119, 124 (2d Cir.2013). Put another way, the Court's " ' "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.' " *Geldzahler v. N.Y. Med. Coll.,* 663

2015 WL 6686568

F.Supp.2d 379, 387 (S.D.N.Y.2009) (alteration in original) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12–61).

## PLAINTIFF'S EMPLOYMENT DISCRIMINATION CLAIMS

**\*2**  The most substantial allegations in Plaintiff's Complaint ("substantial" being a relative term) sound in the realm of employment discrimination. Read liberally, the Complaint could be read to allege disparate treatment, hostile work environment, disparate impact, retaliation, and failure to promote claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (*See* Am. Compl. 2–5, 9–11). As Defendant notes (*see* Def.'s Mem. Law Supp. Mot. To Dismiss & , Alternatively, More Definite Statement (Docket No. 17) ("Def.'s Mem.") 11–12), there are significant statute of limitations issues with many of Plaintiff's claims, some of which date back to the beginning of her employment with Defendant in 2000. Nevertheless, the Court need not parse the timeliness of Plaintiff's claims because they fail as a matter of law regardless.

First, Plaintiff's claim of disparate treatment is evaluated under the well-known burdenshifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny. *Twombly* and *Iqbal* notwithstanding, the Supreme Court has held that, to survive a motion to dismiss, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in [*McDonnell Douglas* ]." *Twombly,* 550 U.S. at 569 (first alteration in original) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002)). Significantly, the Second Circuit recently clarified the applicability of *Iqbal's* plausibility requirement in light of *Swierkiewicz. See Littlejohn v. City of N.Y.,* 795 F.3d 297 (2d Cir.2015). The Court of Appeals held that "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation." *Id* . at 311. Under that standard, a plaintiff can survive a motion to dismiss if she alleges "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Id.* "The fact that a plaintiff was replaced by someone outside

the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage." *Id.* at 313.

Plaintiff fails to meet even that minimal burden, as there is nothing in the Complaint that even remotely, let alone plausibly, suggests discriminatory motivation. Plaintiff does allege that she was a member of a protected class—namely, that she was the "only dark skinned Black with National Origin from Jamaica to work in the Sales Office located in the company's Headquarters." (Am.Compl.2). And her termination plainly qualifies as an "adverse employment action." But Plaintiff makes no allegations about who, if anyone, replaced her and whether her replacement was from outside the protected class. Further, other than stating at the outset that Plaintiff is a member of a protected class, the Complaint does not include a single allegation that could implicate discrimination on the basis of race, sex, or national origin. *See Moore v. Greyhound Bus Lines,* 15–CV–5512 (JG), 2015 WL 6128874, at \*2 (E.D.N.Y. Oct. 16, 2015); *Frederick v. Capital One Bank (USA), N.A .,* No. 14–CV–5460 (AJN), 2015 WL 5521769, at \*4 (S.D.N.Y. Sept. 17, 2015); *see also, e.g., Johnson v. Morrison & Foerster LLP,* No. 14–CV–428 (JMF), 2015 WL 845723, at \*6 (S.D.N.Y. Feb. 26, 2015) ("The mere fact that Plaintiff is a member of [a protected group] is necessary to state a claim under Title VII ..., but it is plainly insufficient by itself to support an inference of discrimination *because of* those protected characteristics."). To the contrary: The Complaint itself says that the "real reason" for Plaintiff's termination was "a cover up"—and fails to allege what Defendant was trying to hide, let alone connect the "cover up" to discrimination in violation of Title VII. (Am.Compl.3).

**\*3**  Plaintiff's hostile work environment claim fails for similar reasons. To prevail on such a claim, a plaintiff must show that she was subjected to offensive conduct that bears "a linkage or correlation to the claimed ground of discrimination." *Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir.2002); *see Johnson,* 2015 WL 845723, at \*4–5 ("[A] plaintiff alleging a hostile work environment claim must also establish that the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of race or another protected category." (internal quotation marks and alterations omitted)). Here, Plaintiff offers no facts to suggest that she was subjected to offensive conduct—much less that the offensive conduct was motivated by discrimination on the

Clarke v. Leading Hotels of the World, Ltd., Not Reported in F.Supp.3d (2015)

2015 WL 6686568

basis of race, sex, or national origin. At most, she quotes a co-worker who told Plaintiff that she wanted to take her job. (*See* Am. Compl. 7). That neither rises to the level of "severe or pervasive" conduct, *see O'Dell v. Trans World Entm't Carp.,* 153 F.Supp.2d 378, 386 (S.D.N.Y.2001), nor suggests discriminatory animus, *see Sanders v. Grenadier Realty, Inc.,* 367 F. App'x 173, 175 (2d Cir.2010) (summary order).

Finally, Plaintiff's disparate impact, retaliation, and failure to promote claims fail as a matter of law. To survive a motion to dismiss, a disparate impact claim must identify a specific employment practice that causes a disparate impact. *See Swierkiewicz,* 534 U.S. at 512; *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir.1998). But Plaintiff neither identifies a specific practice nor any disparate impact on a protected group. (*See* Am. Com pl. 4–5). For a successful Title VII claim based on a failure to promote, the plaintiff must "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Brown,* 163 F.3d at 710. Plaintiff makes no such allegations here. She alleges numerous times that a superior indicated the company would "change her title" and that she asked for information generally on promotions, but she never states that she applied for a particular position. (*See* Am. Compl. 2, 3, 10). And while Plaintiff alleges that she "made several claims to Defendant about retaliation" (*see id.* at 7), any retaliation claim under Title VII fails because she does not contend that the retaliation was in return "for [her] opposition to discriminatory practices" prohibited by Title VII. *Reed v. A.W. Lawrence & Co., Inc.,* 95 F .3d 1170, 1177 (2d Cir.1996); *see* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate ... because [an employee] has opposed any practice made an unlawful employment practice by this subchapter."). Plaintiff's Title VII claims, therefore, must be and are dismissed.[1]

---

[1] Plaintiff also references the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). (*See* Am. Compl. 4). Any claim under the EPA, however, would fail for the same reason—namely, that Plaintiff fails to allege any disparity in Defendant's employees' pay on the basis of sex. *See, e.g., Ryduchowski v. Port Auth. of N.Y. & N.J.,* 203 F.3d 135, 142 (2d Cir.2000) ("To establish a prima facie violation of the EPA, a plaintiff must demonstrate that (i) the employer pays different wages to employees of the opposite

sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions." (internal quotation marks omitted)). And while Plaintiff invokes the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") (*see* Compl. 1, 4–5), she does not provide any specifics about the alleged uncompensated overtime—including the number of hours and days worked, breaks taken, and the like. *See, e.g., Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 201 (2d Cir.2013) ( "To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."); *DeSilva v. North Shore–Long Island Jewish Health Sys., Inc.,* 770 F.Supp.2d 497, 509 (E.D.N.Y.2011) ("[P]laintiffs must provide at least some approximation of the overtime hours that defendants required them to work and a time frame for when those hours were worked." (citing cases)). Accordingly, those claims, too, must fail.

## PLAINTIFF'S OTHER FEDERAL CLAIMS

**\*4** Plaintiff's other potential federal claims—brought under Title 18, United States Code, Section 1028; Title 31, United States Code, Section 5317; and the First, Fifth, Sixth, Ninth, Eleventh, Thirteenth, and Fourteenth Amendments—can be swiftly dismissed.

First, as Defendant notes (*see* Def.'s Mem. 8), Plaintiff's statutory claims fail because neither statute includes a private right of action. *See Garay v. U.S. Bancorp,* 303 F.Supp.2d 299, 302 (E.D.N.Y.2004) (holding that Section 1028 "is criminal in nature and provides no private right of action"); *Rahmani v. Resorts Int'l Hotel, Inc.,* 20 F.Supp.2d 932, 937 (E.D.Va.1998) (same); 31 U.S.C. § 5317 (granting authority only to the Secretary of the Treasury to apply for a warrant under the statute, to customs officers for searches, and providing for criminal and civil forfeitures); *see also Suter v. Artist M.,* 503 U.S. 347, 365 (1992) (noting that the burden is on a plaintiff to show that there is a private right of action under a federal statute). Second, Plaintiff's First, Fifth, Sixth, and Fourteenth Amendment claims fail because, among other things, Defendant is a private entity and there is no allegation of state action. *See United States v. Stein,* 541 F.3d 130,

2015 WL 6686568

146–47 (2d Cir.2008) (discussing state action as a necessary predicate to a Sixth Amendment violation); *Horvath v. Westport Library Ass'n,* 362 F.3d 147, 151 (2d. Cir.2004) ("The right to due process established by the Fourteenth amendment applies only to government entities."); *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.,* 279 F.3d 155, 161 (2d Cir.2002) ("To establish a Fifth Amendment violation, a plaintiff must demonstrate that in denying the plaintiff's constitutional rights, the defendant's conduct constituted state action." (internal quotation marks omitted)); *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.,* 252 F.3d 545, 551–552 (2d Cir.2001) ("The First Amendment applies only to state actors." (internal quotation marks omitted)). Next, Plaintiff's Ninth and Eleventh Amendment claims cannot proceed because the former is only a "rule of construction," and "not an independent source of individual rights," *Jenkins v. Comm'r of IRS,* 483 F.3d 90, 92 (2d Cir.2007), and the latter relates only to suits in federal court "against non-consenting *states," Leitner v. Westchester Cmty. Coll.,* 779 F.3d 130, 134 (2d Cir.2015) (emphasis added). Finally, the Complaint does not even come close to alleging the kind of "involuntary servitude enforced by the use or threatened use of physical or legal coercion" that would support a claim under the Thirteenth Amendment. *United States v. Kozminski,* 487 U.S. 931, 944 (1988).

### PLAINTIFF'S STATE–LAW CLAIMS

Finally, to the extent Plaintiff appears to assert state-law claims—for wage theft under New York Labor Law § 195 (*see* Am. Compl. 2), defamation (*see* Am. Compl. 3–4), "bullying," "sabotage" (*see* Am. Compl. 8), and breach of contract (*see* Am. Compl. 11), among others—the Court declines to exercise supplemental jurisdiction pursuant to Title 28, United States Code, Section 1367. Under that provision, a district court has discretion over whether to exercise jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.' " *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir.1998) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). Here, there is no reason to depart from that general rule. Given the relatively early state of the case, the traditional "values of judicial economy, convenience,

fairness, and comity" that the Court must consider, *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988), do not counsel in favor of exercising jurisdiction. Accordingly, Plaintiff's remaining claims are dismissed.

### CONCLUSION

**\*5** For the reasons stated above, Defendant's motion to dismiss is GRANTED, and the Complaint is dismissed in its entirety. [2] The only remaining question is whether Plaintiff should be granted leave to amend her Complaint. Although leave to amend a complaint should be freely given "when justice so requires," Fed.R.Civ.P. 15(a) (2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v.. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007). Here, the Court declines to grant leave to amend *sua sponte* . First, a district court may deny leave to amend when, as here, amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Second, Plaintiff was previously granted leave to amend to cure deficiencies raised in Defendant's first motion for a more definite statement, and was explicitly cautioned that she "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion." (Docket No. 12). Notably, Plaintiff filed an amended complaint that is even less illuminating than her initial complaint. (*Compare* Docket Nos. 2 and 13). She then failed to respond to Defendant's motion to dismiss, and—when ordered to show cause why the motion should not be treated as unopposed —filed a two-page letter that largely resorts to *ad hominem* attacks on Defendant and its counsel. (*See* June 17, 2015 Ltr. (Docket No. 21)). Finally, Plaintiff "has not requested permission to file a Second Amended Complaint, nor has [s]he given any indication that [s]he is in possession of facts that would cure the problems identified in this opinion." *Clark v. Kitt,* No. 12–CV–8061 (CS), 2014 WL 4054284, at \*15 (S.D.N.Y. Aug. 15, 2014).

2
    In light of that conclusion, the Court need not, and does not, reach Defendant's argument for dismissal pursuant to Rule 8 or its motion in the alternative

2015 WL 6686568

for a more definite statement pursuant to Rule 12(e). (*See* Def.'s Mem. 4–9).

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to terminate Docket No. 16, to mail a copy of this Memorandum Opinion and Order to Plaintiff, and to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6686568

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.